UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HISTORY ASSOCIATES INCORPORATED,

Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORPO-
RATION,

Defendant.

Case No. 1:24-cv-1857-ACR

### NOTICE OF ANTICIPATED CROSS-MOTION & REQUEST FOR PRE-MOTION CONFERENCE

Pursuant to this Court's Standing Order and its August 21, 2024, Minute Order, Plaintiff History Associates Incorporated ("History Associates") submits the following Notice of Anticipated Cross-Motion and respectfully requests a pre-motion conference.

### 1. Background

Plaintiff History Associates brought this action against Defendant Federal Deposit Insurance Corporation ("FDIC") to challenge the FDIC's denial of a request for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. FOIA actions are typically resolved on summary judgment, and the parties here agree that summary judgment is the appropriate course, with the FDIC filing a summary judgment motion and History Associates then filing a cross-motion.

In October 2023, the FDIC's Office of Inspector General ("OIG") reported that the FDIC had sent letters ("Pause Letters") to an unspecified number of financial institutions instructing them to "pause all crypto asset-related activities" pending "supervisory feedback." *See* ECF 1 ¶¶ 37-38. OIG's report criticized the FDIC for failing to provide such "feedback," thereby creating "uncertainty" that "limit[ed] … innovation and growth in the crypto space." *Id.* ¶¶ 40-41.

1

Limiting innovation and growth in crypto was in fact the point of the Pause Letters. The FDIC has a history of pressuring financial institutions to cut a disfavored industry off from the banking system. A decade ago, it and other agencies carried out "Operation Choke Point"—an attempt to bully banks into terminating relationships with payday lenders, which ended only when brought to light by public and congressional inquiries. *See* ECF 1, ¶¶ 16-23. The Pause Letters are part of Operation Choke Point 2.0—a multi-agency effort to de-bank the digital-asset industry.

Coinbase, Inc.—the largest digital-asset trading platform in the United States—retained History Associates to submit a FOIA request seeking copies of the Pause Letters. ECF 1, ¶¶ 30-35. The FDIC denied that request, asserting (after appeal) that the Pause Letters were categorically exempt from disclosure under FOIA Exemption 8 (matters contained in or related to an agency's "examination, operating, or condition reports" about financial institutions it regulates), such that the FDIC need not try to segregate and disclose non-exempt portions. *See id.* ¶¶ 52-53, 57-58.

The parties agree that the FDIC's denial of History Associates' FOIA request is final and reviewable. ECF 14, at 2. The FDIC identified records responsive to the request but refuses to produce them in whole or in part because it claims they are categorically subject to Exemption 8. The FDIC's withholding of the Pause Letters did not comply with FOIA, as detailed below.

### 2. Basis Of Plaintiff's Anticipated Cross-Motion

FOIA requires agencies to disclose requested public records unless they "fall within one of nine enumerated statutory exemptions," *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009), which "have been consistently given a narrow compass" given FOIA's "goal of broad disclosure," *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989). Even if an exemption may apply to a particular record, FOIA requires that an agency identify and produce any "reasonably segregable" non-exempt portions of the withheld record. 5 U.S.C. § 552(b); *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984). And, as amended in 2016, FOIA now

"requires that an agency 'release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law.'" *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 105–06 (D.D.C. 2019) (citation omitted); *see* 5 U.S.C. § 552(a)(8)(A)(i).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011). The court deciding such a motion "conducts a de novo review of the record" and "must analyze all underlying facts and inferences in the light most favorable to the FOIA requester." *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 55 (D.D.C. 2014) (citing 5 U.S.C. § 552(a)(4)(B)). "[T]he responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA," *id.*, and consequently the agency often files the initial motion for summary judgment.

The FDIC intends to move for summary judgment. ECF 16, at 1. History Associates then intends to file a cross-motion for summary judgment and anticipates arguing that the FDIC's withholding of the Pause Letters did not comply with FOIA for the following reasons (*inter alia*):

*First*, Exemption 8—the only exemption the FDIC relied on in the administrative appeal—does not apply to the Pause Letters. Exemption 8 applies only to records that are "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8). It "address[es] the concern that release of bank examination and operating reports could endanger the fiscal well-being of subject banks." *Pub. Invs. Arb. Bar Ass'n v. SEC*, 771 F.3d 1, 5 (D.C. Cir. 2014) (alterations and quotation marks omitted). But the Pause Letters do not "relate[]" to any FDIC "examination, operating, or condition" report. Instead, History Associates understands them to be largely or entirely form letters sent to execute a top-down, programmatic

FDIC directive, which reveal little or nothing about the examination, condition, or operation of any particular bank. Moreover, the FDIC sent the Pause Letters not to *regulate or supervise* financial institutions, but rather as part of a broader effort to cripple the digital-asset industry.

*Second*, even if Exemption 8 applies to certain portions of the Pause Letters, the FDIC cannot categorically withhold each of them in their entirety. Instead, the FDIC must review each Pause Letter and produce any "reasonably segregable," non-exempt portions of them. Because the Pause Letters were sent to multiple banks, History Associates anticipates arguing that, at minimum, formulaic portions of the letters sent to multiple banks are not subject to Exemption 8, along with the portions of the letters quoted in the OIG Report.

*Third*, if and to the extent the Pause Letters in whole or in part do fall within the ambit of Exemption 8, they still must be disclosed because disclosure "is not prohibited by law" and "would not reasonably harm an exemption-protected interest." *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 105–06. To date, the FDIC has not articulated any reason why disclosure would be harmful, instead relying only on conclusory assertions. That is insufficient to meet its burden. And the FDIC cannot meet its burden because, at minimum, releasing copies of the Pause Letters with bank-specific information redacted would not harm the interests protected by Exemption 8.

Date: September 4, 2024                    Respectfully submitted,

*/s/ Jonathan C. Bond*
Eugene Scalia (escalia@gibsondunn.com)
Jonathan C. Bond (jbond@gibsondunn.com)
Nick Harper (nharper@gibsondunn.com)
Aaron Hauptman (ahauptman@gibsondunn.com)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Plaintiff*