Exhibit A

```
 1                    IN THE UNITED STATES DISTRICT COURT
                            DISTRICT OF COLUMBIA
 2

 3   HISTORY ASSOCIATES INCORPORATED ) CIVIL NO.:
                                      ) 24-1858-ACR
 4            Plaintiff,              )
          vs.                        )
 5                                   )
     FEDERAL DEPOSIT INSURANCE        )
 6   CORPORATION,                     )
                                      ) September 18, 2024
 7            Defendant.              ) Washington, D.C.
     _____) 3:15 p.m.
 8

 9                 Transcript of Pre-motion Conference
                   Before the Honorable Ana C. Reyes
10                      United States District Judge

11   APPEARANCES:

12
     For the Plaintiff:   Denis Nicholas Harper, Esquire
13                        Jonathan C. Bond, Esquire
                          Aaron Hauptman, Esquire
14                        Gibson, Dunn & Crutcher
                          1700 M Street, NW
15                        Washington, DC 20036

16
     For the Defendant:   Lina Soni, Esquire
17                        Daniel H. Kurtenbach, Esquire
                          Federal Deposit Insurance Corporation
18                        Legal Division
                          3501 Fairfax Drive
19                        Arlington, VA 22226

20

21
     Reported by:   Christine T. Asif, RPR, FCRR
22                  Federal Official Court Reporter
                    333 Constitution Avenue, NW
23                  Washington, D.C. 20001
                    (202) 354-3247
24

25   Proceedings recorded by machine shorthand; transcript produced
     by computer-aided transcription
```

```
 1                    P R O C E E D I N G S
 2            THE COURT:  Mr. Hopkins, could you please call the
 3  case.
 4            THE CLERK:  Absolutely, Your Honor.  We're in civil
 5  action 24-1857, History Associates Incorporated versus Federal
 6  Deposit Insurance Corporation.
 7            If I can have counsel approach the podium, state
 8  your names for the record, starting with the plaintiff.
 9            MR. HARPER:  Good afternoon, Your Honor.  Nick
10  Harper for plaintiff History Associates Incorporated.  With me
11  at counsel's table are my colleagues from Gibson Dunn,
12  Jonathan Bond and Aaron Hauptman.
13            THE COURT:  All right.  Good afternoon, everyone.
14            MS. SONI:  Good afternoon, Your Honor.  My name is
15  Lina Soni.  I'm here with my colleague, Daniel Kurtenbach.
16  And we represent the FDIC.
17            THE COURT:  Hello, Ms. Soni.
18            All right.  So I've gotten your FOIA pre-motion
19  notices.  I will tell you that I am hugely interested in every
20  financial crisis that has ever existed.  So any financial book
21  about any financial crisis I have read.  I know because I keep
22  seeing others that I haven't read.  And actually yesterday
23  someone recommended to me *The Man Who Knew*, which is the
24  biography of Alan Greenspan.  One of the biographies of Alan
25  Greenspan, and I've been tearing through it.  So if you have
```

1    anything you want to read involving the economy and you have

2    read everything else, I highly recommend *The Man Who Knew*.

3              But for that reason I'm also pretty up to speed on

4    all of the ways that the government does and does not regulate

5    businesses and how that does and does not lead to catastrophic

6    issues.  But is there just basically -- is it basically the

7    simple issue here whether or not the pause letters fit

8    Exception 8?  And if they don't, whether some parts of them

9    do?

10             MR. HARPER:  Want me to come up to the podium?

11             THE COURT:  Yeah.

12             MR. HARPER:  Yes, that's right, Your Honor.

13             THE COURT:  So how does -- I mean, the reason I have

14   these pre-motion conferences, I don't think you -- I don't

15   think you all -- I don't think Gibson Dunn has been in front

16   of me on this before.  The reason I have them is in some

17   cases, actually in most, like over 50 percent of the cases,

18   I'm actually able to get rid of the motion without having to

19   have briefing or a hearing.  You've seen this.  Because I tell

20   the parties what I'm thinking and I make them go and mediate

21   and settle, as she has sat through.  And that gets through a

22   lot of my -- especially the cases against D.C. and the

23   employment and discrimination cases.  I get rid of a lot of

24   those.  And sometimes I actually also am able to narrow the

25   issues before we have to have full briefing.

1          In one case, like the two parties -- like the party

2     who wanted to bring a summary judgment motion literally didn't

3     understand what another party had done.  And when the other

4     party explained it and gave a letter they were like, oh, I

5     guess we don't have a motion.  So it happens.  I don't know if

6     it will happen here.

7          Another reason I have these is because when we talk

8     through things you'll have a better understanding of where my

9     head is.  So, therefore, it's easier, I think, hopefully, for

10    people to write their briefs.  In fact, I just had a long

11    argument today where a pre-motion conference had led the --

12    both parties to sort of brief the thing knowing what my

13    concerns were.  So my concerns were being addressed in the

14    briefing.

15         Which is all to say, Mr. Harper, that I'm going to

16    ask you this question, which is going to sound like -- because

17    it is a merits question, but I'm not putting you on the

18    spot -- if you guys want to file your motions I'll let you --

19    I'm just trying to see what your initial answers are if you

20    have them.  Does that make sense?

21              MR. HARPER:  Sure.  Yes.

22              THE COURT:  Okay.  So explain to me -- I mean, I'm

23    just -- the pause letter -- do you guys agree what the pause

24    letter was even?  I mean, you're saying it's basically just a

25    letter that says, stop doing stuff until we figure things

1    out.

2         MR. HARPER:  So that's our understanding of the

3    letters.  And we're basing this largely on what we've seen

4    from the FDIC's Office of Inspector General report from 2023,

5    we obviously haven't seen the letters.

6         THE COURT:  Okay.  Ms. Soni, you can come up.  Is

7    that what the letters show, I mean, are they basically form

8    letters?

9         MS. SONI:  No.  They're not form letters.  And the

10   OIG report doesn't indicate that they're form letters.  In

11   fact, the letters differ with respect to content, length,

12   author, and send date.  They are absolutely supervisory

13   letters.  They've referenced specific --

14        THE COURT:  You need to slow down.

15        MS. SONI:  They reference specific conversations

16   between financial institution's staff and the FDIC, specific

17   products related to that institution, ongoing or upcoming

18   examinations, as well as institution specific banking and

19   marketing plans.  In other words, they're not form letters.

20        THE COURT:  Okay.  Are there any parts of them that

21   are form?  Are they like the first two paragraphs are in every

22   letter, but everything else is different.

23        MS. SONI:  These letters are tailored to the

24   institutions that receive them.  And they were part of FDIC's

25   overarching exercise of supervising these financial

1   institutions.  They meet the definition of what is required

2   under Exemption 8.  Exemption 8 exempts any information that

3   is contained in or related to an examination, operating, or

4   condition report prepared by, on behalf of, or for the use of

5   an agency supervising or regulating a financial institution.

6   That's exactly what we have here.

7           THE COURT:  Okay.  All right.

8           Mr. Harper.  Putting aside whether or not you agree

9   or disagree with what she has just said, if what she just said

10  is accurate, would you agree those are covered by Exemption 8?

11          MR. HARPER:  So I don't think so, Your Honor.  I

12  think what my friend just said is that these letters have sort

13  of bank specific information in them.  But I think what

14  Exemption 8 requires is that this information is either

15  contained in or related to an examination, condition, or

16  operating report.  And at least so far the FDIC hasn't said

17  that this information is related to any such report.  And,

18  indeed, the OIG report suggested that there was no supervisory

19  feedback given to at least many of these -- in response to

20  many of these letters --

21          THE COURT:  Well, but hold on.  When were these

22  communications issued?

23          MR. HARPER:  They were I believe between 2022 and

24  2023.

25          THE COURT:  Okay.  I mean, that's not a tremendously

1    long period of time for a government agency to not have

2    responded yet.  Is it true you haven't responded to these

3    pause letters, that everything is still on pause?

4         MR. KURTENBACH:  May I?  Thank you, Your Honor.  The

5    OIG report itself has information about what the FDIC had been

6    doing, including, you know, they received information from so

7    many institutions.  They've responded to so many institutions.

8    They responded to institutions that were not sent letters.  So

9    there's -- apparently the FDIC was doing things, but the OIG

10   felt they should have had a better plan and should have been

11   more efficient about it.

12        THE COURT:  Well, I mean either of you, I don't care

13   who answers this question, whoever's best able the answer it.

14   Was part of the letter we want you guys to calm down for a bit

15   with crypto until we figure out how we're going to regulate

16   this?  Like at the end of the day are they right about that,

17   can you say?

18        MS. SONI:  Your Honor, the contents of the

19   supervisory letters are exempt from disclosure.  And to the

20   extent that any portion of those letters were made public by

21   the OIG report, the portions that History Associates is citing

22   to is already available to them.

23            But as to your question about whether or not these

24   meet the requirements of Exemption 8, this circuit has

25   described Exemption 8 no fewer than 15 times as particularly

1    broad and all inclusive.  This court in 1980, in *Atkinson* held

2    that documents that, quote, "represent the foundation of the

3    examination process, the findings of such an examination, or

4    its follow-up, are exempt under 8."

5          THE COURT:  Yeah, so is this -- I mean, was this

6    part of an examination?

7          MS. SONI:  Absolutely -- yes, Your Honor.  These are

8    documents that are contained in or related to an examination.

9    The FDIC --

10         THE COURT:  How can you prove that to him or to me?

11         MS. SONI:  Well, I mean, we have stated in our

12   filings that how -- how these are not form letters, we have

13   described in detail the type of information that is available

14   here.  We can also do that through a Vaughn index.

15         THE COURT:  Well, that's what I was about to say.

16         MS. SONI:  Absolutely.

17         THE COURT:  Would you guys be happy if they just

18   submitted a declaration to you guys sort of putting whatever

19   she just said to me on paper and, you know, another thing that

20   we could do -- because she's going to have to do that whether

21   you file summary judgment.  I mean, if you file summary

22   judgment, if anyone files summary judgment, that's going to

23   have to happen.

24         MS. SONI:  Right.  And if you would like to -- if

25   the Court would like us to narrow the issues before those

1    motions are filed, we're certainly happy to do that.

2              THE COURT:  It seems to me that there's only one

3    issue.

4              MS. SONI:  Yeah.

5              THE COURT:  Like whether these pause letters fit or

6    don't.

7              What if we did this:  What if she gets you the

8    Vaughn index in a reasonable amount of time and we can set the

9    time.  And if you guys need to talk about it, that's fine.  If

10   at that point you're satisfied, you guys tell me and you guys

11   all go to your greener pastures.  If you're not satisfied at

12   that point what I can do is look at three, four, five of the

13   letters in the declaration -- or in camera.  And we can all

14   come back and I can say to you everything they said was

15   accurate.

16             I mean, if we did it that way -- I find it hard to

17   believe that there's nothing in the letters that can't be

18   shown if you have redactions.  I mean, certainly if there was

19   something that was quoted or referenced in the OIG report, you

20   could certainly send that in unredacted.  I mean that part in

21   unredacted.

22             MS. SONI:  The contents of these letters are

23   tailored to the financial institutions that receive them.  And

24   as such they meet the definition of Exemption 8 and the

25   disclosure of this information would either -- could harm the

1    stability of the institution or the very delicate relationship

2    between the regulated and the regulator.

3            THE COURT:  I get the big overall picture, but --

4    let me put it to you this way:  If we go forward and if they

5    tell me that your Vaughn index declaration, where you put in

6    paper that this is part of an examination and it was, you

7    know, everything you said here essentially, and anything else

8    that's relevant.  And they're like we actually want the judge

9    to double check this.  And so I look at these in camera.  If I

10   look at them in camera and there are portions that I feel

11   could easily have been sent in -- if there are redactions that

12   could have been made such that some of the letter should go to

13   them, then I'm going to be pretty annoyed, because what I'm --

14   so let me put it to you this way:  When we leave here, along

15   with the declaration, I'm going to ask that you and someone

16   from the FDIC go through the letters, at least three or four

17   of them, and determine whether any part of the letter can be

18   sent over with the rest of it redacted.

19           MS. SONI:  Of course.

20           THE COURT:  Okay.  And when you're doing that

21   review, keep in mind that I'm going to be the one looking at

22   whether or not you made proper redactions.  And that my

23   patience for people making me do these things is very thin.

24           MS. SONI:  Okay.

25           THE COURT:  Okay.  How does that sound to you guys?

1    MR. HARPER:  I think that would work.  One thing

2  that I would suggest is that the letters provided to you

3  after, if the Vaughn indices are not satisfactory, be a random

4  sample of the letters.

5    THE COURT:  Yeah, so Ms. Soni, if we do have to do

6  this sampling to me, they should be a totally random sample,

7  just literally, I don't know, throw them all into a big pile

8  and take like four off the floor.  I don't know how you want

9  to do it.  I would ask for five and -- how many letters are

10  there total?

11    MS. SONI:  23.

12    THE COURT:  Five would be more than sufficient then.

13  And random.

14    Okay.  How long do you think it would take you to

15  get together the Vaughn index and go through to see if you can

16  make any redactions?

17    MS. SONI:  Three weeks, Your Honor.

18    THE COURT:  Okay.  Why don't we give her a month.

19  And why don't you guys give me a joint status report.

20    I will give you a month to get the declarations to

21  him.  You guys send me a joint status report within 30 days of

22  you having sent it to him.  Okay.  And if the joint status

23  report is we're all happy.  We can all go home.  It will be

24  another one of my things that work, you can tell your

25  colleagues, because I know they get annoyed, saving everyone

1    the need to file a draft of summary judgment motion.

2              And if you need me to look at them, I promise you I

3    will get to them probably within 15 days.  Okay?  And then

4    we'll all get back if we need to.

5              Okay.  All right.  Thank you, everyone.

6              (The proceedings were concluded at 3:28 p.m.)

7

8              I, Christine Asif, RPR, FCRR, do hereby certify that
     the foregoing is a correct transcript from the stenographic
     record of proceedings in the above-entitled matter.

9
                    _____/s/_____
10                       Christine T. Asif
                         Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25