**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HISTORY ASSOCIATES INCORPORATED, | |
| Plaintiff, | |
| v. | Case No. 1:24-cv-1857-ACR |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | |
| Defendant. | |

**STATUS REPORT**

Plaintiff History Associates Incorporated hereby submits the following status report.

In this FOIA case, this Court has twice ordered the FDIC to make thoughtful, good-faith redactions to the "pause letters" that the FDIC sent to financial institutions instructing them to pause crypto-related activities.  The FDIC's most recent production on January 3 contains 25 pause letters with revisions to the FDIC's prior redactions, but those revised redactions appear (once again) not to comply with FOIA and this Court's directions.  History Associates intends to request in due course the in camera review of those letters that this Court offered to conduct.

More pressingly, however, History Associates has become deeply concerned that the FDIC's production may have omitted additional pause letters entirely—based on the FDIC's recent acknowledgment that it never conducted a search for all pause letters the FDIC sent to financial institutions, due to its cramped (and never-before-disclosed) reading of History Associates' FOIA request.  In addition, public whistleblower allegations have surfaced in recent weeks that the FDIC systematically thwarts FOIA requests through various policies and practices—including by refus-ing to search certain databases and improperly labeling documents—and that those policies and practices have resulted in the FDIC failing to produce at least 150 documents responsive to History

1

Associates' FOIA request.  History Associates asked the FDIC's counsel to address whether such alleged failings had affected its productions relevant to this case, but the FDIC offered no answer. Meanwhile, public reporting has intensified.  Just yesterday, a U.S. Senator sent a letter to the FDIC Chair stating that whistleblowers had informed her that the FDIC is destroying digital-asset-related documents and retaliating against staff to prevent them from speaking out.  *See* Exhibit G. Thus, before History Associates seeks in camera review of the FDIC's redactions of the pause letters produced to date, History Associates intends to move for leave to amend its complaint to raise claims challenging both the adequacy of the FDIC's search here and the FDIC's publicly reported unlawful FOIA policies and practices more generally.

I.      **The FDIC Produces Highly Redacted Letters Only In Response To A Court Order**

1.      In this case, History Associates seeks "pause letters" that the FDIC sent to financial institutions related to their digital-asset activities.  Specifically, History Associates sought "[c]opies of all 'pause letters' described in" an OIG report discussing them.  Exhibit A.  The FDIC denied the request, asserting that the pause letters categorically are protected by Exemption 8, such that "there was no need for the FDIC to make any attempt to segregate exempt from non-exempt portions of the Pause Letters."  ECF 1 at 13.

2.      At a September 18 pre-motion conference, this Court ordered the FDIC to produce a Vaughn index and to determine whether the agency could produce redacted letters, subject to in camera review by the Court.  The FDIC produced a Vaughn index and, following a further Court order directing it to do so, produced redacted pause letters on November 22.  Unsatisfied with the FDIC's production, History Associates requested in camera review of four letters.  *See* ECF 26.

3.      On December 12, following its in camera review, the Court issued a minute order expressing "concern[] with what appears to be FDICs lack of good-faith effort in making nuanced

redactions. Defendant cannot simply blanket redact everything that is not an article or preposition." Dec. 12, 2024 Minute Order. The Court ordered the FDIC to "re-review the documents, make more thoughtful redactions, and provide the new redactions to Plaintiff by January 3, 2025." *Id.*

**II.     The FDIC Belatedly Finds New Letters And Reveals Its Search Was Incomplete**

4.      On January 3, the FDIC produced revised redacted versions of the pause letters to History Associates. Exhibit B. The revised production contains 25 pause letters—two more than the FDIC's initial production. *See* Exhibit B at 76-80. According to the FDIC, the late-breaking letters were identified after the agency conducted a "second search" for additional pause letters. Exhibit C at 10. The FDIC stated that the 25 produced letters were "all the letters *shared with* the OIG and thereby responsive to" History Associates' FOIA request. *Id.* (emphasis added).

5.      The FDIC's discovery of additional letters and the agency's description of the set of letters—those "shared with the OIG"—prompted History Associates to inquire on January 7 whether any pause letters were *not* shared with the OIG (and thus omitted from the FDIC's search and production). Any such letters would be responsive to History Associates' request for copies of any pause letters "described in" the OIG report, whether or not the agency provided every letter to the OIG. History Associates' FOIA request concerns the FDIC's efforts to strong-arm the banking industry through pause letters—not the thoroughness of its OIG's investigations. In response, however, the FDIC simply restated the language of History Associates' FOIA request and asserted without explanation that the FDIC had provided History Associates "with all documents responsive to [its] request." Exhibit C at 5.

6.      On January 14, History Associates asked the FDIC to provide a direct answer to its question whether the FDIC had searched for *all* pause letters or merely those shared with the OIG.

The FDIC responded that it has never searched for pause letters beyond those it shared with the OIG.  The agency reasoned that it had "reasonably interpreted" the original FOIA request as seeking only "the collection of [pause letters] reviewed by the FDIC OIG in preparing its report," and that any other documents are "outside the scope of" the request.  Exhibit C at 2.  The FDIC stated that it would treat the request for other pause letters as a "new FOIA request," *id.*, and later expedited that request.  But in History Associates' experience, even expedited processing (at this late stage) would substantially delay production.  The FDIC had never before informed History Associates that the agency interpreted the request in that narrow manner or that it knowingly failed to conduct a search for *all* pause letters issued by the FDIC.

**III.    Whistleblowers Publicly Allege Widespread FOIA-Related Misconduct At The FDIC**

7.    While History Associates was seeking clarity from the FDIC about the completeness of the agency's search and production, an anonymous whistleblower publicly alleged in widely reported statements that the FDIC has engaged in widespread FOIA misconduct and is "hiding responsive documents to" History Associates' FOIA request.  *See* Oliver Dale, *FDIC Staff Expose Internal Document Withholding Practices*, Blockonomi, (Jan.  9,  2025), https://bit.ly/4hfHcI1; *see also* Exhibit D.  The whistleblower alleged, for example, that the FDIC does not "run a complete search" of its databases in response to FOIA requests and that it does not search within "collaboration platforms such as Microsoft Teams."  Ex. D.  The whistleblower also alleged that FDIC employees: deliberately "read[] FOIA requests in the strictest fashion … even if they knew other responsive systems or derivative terms would hold the records the requestor truly sought," Exhibit E; "intentionally mislabel[] documents or includ[e] 'mixed language' that would allow FOIA suppression," *id.*; mislabel documents as deliberative process or attorney-client privileged, Exhibit D; and have been assigned to investigate individuals critical of the FDIC—

including the Chief Legal Officer at Coinbase, Exhibit F.  The whistleblower further alleged that, based on a query run by a contact at the FDIC, at least 150 documents responsive to History Associates' request were not produced by the FDIC.  Exhibit D.  The whistleblower also claimed to have recordings supporting some or all of these allegations.  Exhibit E.

8.      In light of these allegations, History Associates asked counsel for the FDIC to respond to the allegations and to confirm whether, in responding to History Associates' FOIA request, the FDIC conducted a complete text search of all FDIC databases, produced all responsive documents, properly labeled documents, and refrained from monitoring or investigating critics (such as Coinbase).  Exhibit C at 7.  Although it responded regarding other issues, the FDIC did not address History Associates' inquiry about the alleged misconduct, including alleged misconduct that public reports had linked to the FOIA request in this very case.

9.      And on January 16, Senator Cynthia Lummis sent a letter to the FDIC Chair stating that she has been informed by FDIC "whistleblowers": that "destruction of materials is occurring with respect to the digital asset activities of your agency"; that "staff access to these materials is being closely monitored by management to prevent them from being supplied to the Senate before they can be destroyed"; and "that certain staff have been threatened with legal action to prevent them from speaking out."  Letter from Sen. Cynthia M. Lummis to Hon. Marty Gruenberg (Jan. 16, 2025), https://bit.ly/40Cglkb (Exhibit G).  Senator Lummis directed the Chair to "cease and desist destruction of all materials and end all retaliatory actions immediately" and to "preserve all existing materials, including documents, communications, electronic information and metadata, relating to the FDIC's digital asset activities since January 1, 2022." *Id.*

10.     The FDIC's conduct—including its initial complete withholding of the pause letters, its failure to produce redacted letters to History Associates despite this Court's direction, its

lack of good-faith effort in making its original redactions (as its revised redactions confirm), the failure of its original search to uncover two additional pause letters, and its most recent acknowledgment that it artificially cabined its searches in an arbitrary, Simon-says fashion—raises serious concerns.  Especially viewed in light of public allegations of more widespread FOIA misconduct, which the FDIC declined to address directly, that conduct may be symptomatic of fundamental breakdowns in its FOIA process, in this case and others.

**IV.    History Associates Intends To Amend Its Complaint To Challenge The Adequacy Of The FDIC's Search And The FDIC's Alleged Unlawful FOIA Policies And Practices**

11.    History Associates reserves the right to request in camera review of all the pause letters that the FDIC has produced and may produce in response to History Associates' request. But that review would be premature until the FDIC has searched for and produced the full universe of pause letters.

12.    To ensure that the FDIC does so, History Associates intends to move for leave to amend its complaint to challenge the adequacy of the FDIC's search for the pause letters, including the agency's crabbed interpretation of History Associates' FOIA request.  In addition, History Associates' amended complaint will challenge the alleged unlawful FDIC "polic[ies] or practice[s]" discussed above, which may have infected the agency's treatment of History Associates' FOIA request in this case, as well as other FOIA requests that History Associates has filed and intends to file with the FDIC. *Jud. Watch, Inc. v. United States Dep't of Homeland Sec.*, 895 F.3d 770, 774 (D.C. Cir. 2018).

6

Date: January 17, 2025                                    Respectfully submitted,

                                                          /s/ Jonathan C. Bond
                                                          Eugene Scalia
                                                          Jonathan C. Bond
                                                          Nick Harper
                                                          Aaron Hauptman
                                                          GIBSON, DUNN & CRUTCHER LLP
                                                          1050 Connecticut Avenue, N.W.
                                                          Washington, D.C. 20036
                                                          Telephone: 202.955.8500
                                                          Facsimile: 202.467.0539
                                                          escalia@gibsondunn.com
                                                          jbond@gibsondunn.com
                                                          nharper@gibsondunn.com
                                                          ahauptman@gibsondunn.com

                                                          *Attorneys for Plaintiff*