UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HISTORY ASSOCIATES INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>Defendant. | Case No. 1:24-cv-1857-ACR |

## FDIC STATUS REPORT

The Federal Deposit Insurance Corporation ("FDIC") hereby submits the following status report:

1. Plaintiff History Associates Incorporated's ("History Associates") operative FOIA request seeks "copies of all 'pause letters' described in the attached October 2023 FDIC Office of Inspector General report titled "FDIC Strategies Related to Crypto-Asset Risks" (Attachment 1) [("OIG Report")]." D.E. 27, Ex. A.  The FDIC reasonably construed History Associates' FOIA request and produced all twenty-five pause letters that the agency provided to the OIG in connection with the October 2023 report.  The FDIC will expeditiously process History Associates' *new* FOIA request for all pause letters authored by the agency, but that was not the request before the agency or the basis of this complaint.  Because History Associates sought "all pause letters described in" the OIG Report, and because the FDIC produced all twenty-five pause

1

letters that it provided to the OIG in preparation for that report, the FDIC conducted a reasonable search in view of the FOIA request before it.[1]

2.      Likewise, the FDIC's revised redactions to the twenty-five produced pause letters comply with the Court's orders. While FOIA Exemption 8 broadly covers supervisory communications, the FDIC has exercised its discretion to make public most of the letters' content. D.E. 27, Ex. B. The small amount of remaining redactions apply to three categories of information covered by Exemption 8: (1) personally identifiable information, institutions' names or information from which the institution's identity could reasonably be ascertained; (2) confidential commercial information; and (3) information from submissions by banks. The FDIC does not oppose an in camera review of either a sample of the letters or all of the letters. Should the Court conduct an in camera review, the FDIC will be prepared to discuss and "defend each new redaction in an *ex parte* discussion with the Judge" per the Court's December 12 minute order. It is the FDIC's position that after the January 3 revised redactions, this case should be dismissed or, alternatively, proceed to summary judgment briefing.[2]

### Adequacy of the Search

3.      The FDIC reasonably construed History Associates' FOIA request and provided all documents responsive to it. The request sought "copies of all 'pause letters' described in the attached October 2023 FDIC Office of Inspector General report titled 'FDIC Strategies Related

---

[1] History Associates also states that it will seek leave to file an amended complaint alleging that the FDIC has engaged in "widespread FOIA misconduct." D.E. 27 ¶¶ 7-10, 12. Should the Court grant History Associates' anticipated motion, the FDIC is prepared to defend its FOIA policies and practices and will respond to any properly pled allegations at the appropriate time.

[2] FDIC counsel respectfully requests that any *ex parte* discussion or hearing take place after February 5, 2025. Two of the FDIC attorneys of record have upcoming medical surgeries, and the third FDIC attorney of record will be out of the country.

to Crypto-Asset Risks' (Attachment 1) [("OIG Report")]." D.E. 27, Ex. A.  To that end, the FDIC initially produced twenty-three pause letters to History Associates, all of which were sent in 2022 and produced to the FDIC Office of Inspector General ("OIG").  History Associates later inquired about letters sent in the first five months of 2023 because the OIG Report coverage extended until May 2023.  The FDIC located two other letters sent during that timeframe and provided them to History Associates when it produced the re-redacted documents on January 3, 2025.

These twenty-five letters cover all "pause letters" provided to the OIG and "described in" the OIG Report.  The term "describe" can "take[] on different meanings in different contexts." *Luna Torres v. Lynch*, 578 U.S. 452, 459 (2016).  In this context, the online version of the OIG Report repeatedly defines "pause letters" as "letters sent to [redacted number of] supervised institutions" between "March 2022 and May 2023" in which the FDIC asked recipient institutions to "pause from proceeding with planned activities or expanding existing" crypto-asset related activities and to "provide additional information."[3]  The "critical parts" of this definition comprise a noun (the "pause letters"), adjectival clauses (the date range, "pause . . . from proceeding," "provide additional information"), and a noun modifier (the referenced number of supervised institutions).  *See Nielsen v. Preap*, 586 U.S. 392, 406 (2019).  "[N]o one can deny that the adjectival clauses modify (and in that sense 'describ[e]') the noun" "pause letters." *Id.* (second alteration in original).  Similarly, a noun modifier—here, the referenced number of super-

---

[3] *See* OIG Report at ii, 5, 11, available at https://www.fdicoig.gov/sites/default/files/reports/2023-10/EVAL-24-01-Redacted.pdf.  Although the number of institutions that received the "pause letters" as defined in the OIG Report was redacted, the FDIC represents that the redacted number matches the number of institutions covered in the pause letters produced to Plaintiff.  The FDIC will provide the unredacted copy of the OIG report via in camera submission on the Court's request.

vised institutions—necessarily modifies (and therefore also "describes") the noun that comes after it: "pause letters." *See Convenient Food Mart, Inc. v. 6-Twelve Convenient Mart, Inc.*, 690 F. Supp. 1457, 1462-63 (D. Md. 1988) (describing effect of "noun modifiers" and "noun adjectives"). Thus, the FDIC's interpretation of History Associates' request is "the most reasonable under the circumstances." *Am. Oversight v. DOJ*, 401 F. Supp. 3d 16, 36 (D.D.C. 2019).

4. Moreover, History Associates' expansive view of their request—that the term "described in" necessarily covers *other* letters not provided to OIG, not sent to the supervised institutions identified in the OIG Report, and not sent during the March 2022-May 2023 timeframe—conflicts with FOIA's operating principles and goals. *See, e.g.*, *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984) (instructing agencies to read FOIA requests as drafted, "not as either [an] agency official or [requester] might wish it was drafted"). While agencies have a "duty to construe . . . FOIA request[s] liberally," they are not required to expand their search beyond "the four corners of the request." *Am Chemistry Council, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013) (quotation omitted). Nor are they "required to divine a requester's intent." *Id.* (quotation omitted). Yet History Associates believes the FDIC should have done both here, swapping the FDIC's context-based construction of its request for one that rewrites both the request and the OIG Report.

5. For these reasons, the FDIC informed History Associates that it had no reasonable basis to construe its current FOIA request as encompassing documents outside the collection of letters reviewed by the OIG when preparing its report. Instead, the FDIC notified History Associates that it will treat their bid for "*all* pause letters, regardless [of] whether the FDIC provided them to the OIG," as a separate FOIA request that it would review on an expedited basis. FDIC is diligently working on this request and conducting the requisite searches.

6. History Associates' January 17 Status Report raises a whistleblower's purported claims and allegations of FOIA-related misconduct, but despite representations of recordings and documents, offers no evidence of such. History Associates intends to move for leave to amend its complaint to raise claims challenging the completeness of FDIC's search and allegations of purported misconduct made in anonymous social media posts. The agency answered History Associates' complaint on August 7, 2024. Accordingly, History Associates will need to seek leave to amend the complaint from the Court. Fed. R. Civ. P. 15(a)(2). FDIC intends to address these baseless allegations in our opposition to History Associates' motion to amend.

**Exemption 8**

7. FOIA Exemption 8 broadly protects matters that are "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8). The D.C. Circuit has repeatedly held that the scope of Exemption 8 is "particularly broad." *Pub. Invs. Arb. Bar Ass'n v. SEC*, 771 F.3d 1, 4 (D.C. Cir. 2014) (noting that this "court has explained time and again that Exemption 8's scope is 'particularly broad'"); *Consumers Union of the U.S., Inc. v. Heimann*, 589 F.2d 531, 533 (D.C. Cir. 1978).

8. Courts have recognized two primary purposes underlying Exemption 8. *Id.* at 534. The first purpose is to "ensure the security of financial institutions," which could be undermined by "unwarranted runs on banks" caused by the disclosure of "candid evaluations of financial institutions." *Nat'l Cmty. Reinvest. Coal. v. Nat'l Credit Union Admin.*, 290 F. Supp. 2d 124, 135-36 (D.D.C. 2003). The second purpose is "to safeguard the relationship between the banks and their supervising agencies" by assuring confidentiality and thereby promoting full cooperation with the regulatory agencies. *Consumers Union*, 589 F.2d at 534. Banks would be less likely to

fully cooperate with federal examiners "[i]f details of the bank examinations were made freely available to the public and to banking competitors." *Id.* The information in the letters is "contained in or related to examination, operating, or condition reports" prepared by the FDIC, a regulator responsible for the supervision of banks. *See Pub. Inv'r Arbitration Bar Ass'n v. SEC*, 930 F. Supp. 2d 55, 62 (D.D.C. 2013) ("[T]he 'related to' language casts a wide net of non-disclosure over any documents that are logically connected to an 'examination, operating, or condition report[].'").

9. Exemption 8 broadly protects information submitted by banks to their regulators as part of the supervisory process ("on behalf or for the use of"). Although the information would be covered by FOIA Exemption 4 under the circumstances presented here—namely, because it is confidential third-party business information identifying bank customers or potential bank customers and lines of business—Exemption 8 is far broader because regulators maintain daily oversight of banks and have access to all books and records of a financial institution. *See United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 329 (1963) ("the agencies maintain virtually a day-to-day surveillance of the American banking system;" "banks are required to furnish detailed periodic reports of their operations to the supervisory agencies."). Thus, Exemption 8 recognizes that this type of sensitive information—information the FDIC uses to monitor supervised institutions' financial conditions and risk exposures, *see Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13, 38 (D.D.C. 2011)—is not subject to FOIA.[4]

---

[4] It should also be noted that FOIA is not about a litigant's need for the information. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 n.14 (D.C. Cir. 1977) ("[I]n a FOIA suit, the court does not consider the needs of the requestor."); *see Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 955 F. Supp. 2d 4, 16 (D.D.C. 2013) ("needs of a particular plaintiff are irrelevant to a court's determination of whether a particular communication is exempt from disclosure under Exemption 5.") (citations omitted).

**The Agency's Redactions**

10.     The FDIC's revised redactions for the pause letters it produced fully comply with the Court's orders. While FOIA Exemption 8 broadly covers supervisory communications, the FDIC has exercised its discretion to make public most of the letters' content. ECF 27, Ex. B.[5] The few redactions that remain apply to three categories of information covered by Exemption 8: (1) personally identifiable information, institutions' names or information from which the institution's identity could reasonably be ascertained; (2) confidential commercial information; and (3) information from submissions by banks.

11.     The FDIC does not oppose an in camera review of either a sample of the letters or all the letters. Should the Court conduct an in camera review, the FDIC will be prepared to discuss and "defend each new redaction in an *ex parte* discussion with the Judge" per the Court's December 12 minute order. If History Associates amends its complaint to challenge the FDIC's search and production of the pause letters, the FDIC submits that the matter should be resolved on summary judgment.

---

[5] 5 U.S.C. § 552(a)(8)(A)(ii)(I).

Date: January 17, 2025

Respectfully submitted,

<u>Andrew J. Dober (DC Bar # 489638)</u>
<u>Senior Counsel</u>

*/s/ Daniel H. Kurtenbach*
Daniel H. Kurtenbach
Lina Soni
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive
Arlington, VA 22226
Telephone: 571.286.0401
dkurtenbach@fdic.gov

*Attorneys for Defendant*