## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HISTORY ASSOCIATES INCORPORATED,

                Plaintiff,

   v.

                                   Case No. 1:24-cv-1857-ACR

FEDERAL DEPOSIT INSURANCE
CORPORATION,

                Defendant.

### JOINT STATUS REPORT

Pursuant to this Court's Minute Order of February 11, 2025, Plaintiff, History Associates Incorporated, and Defendant, the Federal Deposit Insurance Corporation ("FDIC"), hereby submit this joint status report.

1.      On November 8, 2023, History Associates filed a Freedom of Information Act ("FOIA") request for the FDIC to produce supervisory letters ("pause letters") that the FDIC sent to certain banks asking them to "pause all crypto-asset-related activity" and "not [to] proceed with planned activities, pending supervisory feedback." ECF 1, ¶ 38. The "pause letters" are described in an October 2023 FDIC Office of Inspector General report, OIG, FDIC Strategies Related to Crypto-Asset Risks (Oct. 2023), https://www.fdicoig.gov/sites/default/files/reports/2023-10/EVAL-24-01-Redacted.pdf. History Associates appealed the FDIC's denial of the FOIA request, and after the appeal was denied, History Associates initiated this lawsuit on June 27, 2024 by filing a Complaint alleging violation of FOIA, 5 U.S.C. § 552.

2.      On February 12, with leave of the Court, History Associates filed an amended complaint alleging that the FDIC has unlawful FOIA policies or practices. ECF 37.

3.     The Court stayed the FDIC's deadline to answer the amended complaint and re-
quired the parties to file status reports every two weeks regarding the FDIC's progress in providing
the requested information.  ECF 38-1, at 15, 17; *see also* February 11, 2025 Minute Order.  In lieu
of the FDIC's answering the complaint immediately, the Court suggested that the FDIC and His-
tory Associates "work cooperatively" on resolving the policy-or-practice claims.  ECF 38-1 at 15.
The Court stated that if "during the course of that cooperation" History Associates is "not satisfied
that [it is] getting the full story, then certainly come back to me and I'm happy to order a 30(b)(6)
[deposition] very quickly.  But, I just don't think a bunch of litigation is the most efficient use of
anyone's time, especially since you now have a cooperative agency that's highly motivated to help
you out." *Id.*

4.     This is the parties' second joint status report since the February 11 status confer-
ence.  This status report covers:  (1) the FDIC's most recent production made in response to History
Associates' FOIA request, and (2) History Associates' most recent information requests and the
FDIC's responses to them.  The parties met and conferred on March 4 to discuss these issues.

### FDIC's Statement Regarding Progress

5.     On February 21, the FDIC produced eight additional records totaling 87 pages in
response to History Associates' FOIA request.  *See* Exhibit A.  Those records were among the
9,000 documents that the FDIC previously identified as non-text searchable within its RADD da-
tabase.

6.     The FDIC has expended significant time and resources to ensure a complete and
accurate production of documents in response to History Associates' FOIA requests and the
Court's order.  As a result of these efforts and despite recent reductions in workforce, the FDIC
anticipates making its final production in response to the FOIA requests by next Friday, March 14.

7.      Since filing its joint status report two weeks ago, the FDIC has completed its quality control measure of re-reviewing documents in the RADD Correspondence Folders that hit on crypto-related search terms – but did not necessarily contain the word "pause" or similar language – for all FDIC-supervised institutions that were not in the FDIC's tracking system.  As noted in the February 22, 2025 joint status report, this time-consuming measure was a demonstration of FDIC's commitment to enhanced transparency, beyond what is required by FOIA and an attempt to fulfill the spirit of the FOIA requests.  This effort located only a few additional documents that are either potentially responsive to the FOIA requests and the Court's order or should be produced as a matter of policy, transparency, and/or discretion.  The agency expects to be able to publish these documents to the FDIC's reading room by next Friday, March 14.  The FDIC will notify Plaintiff's counsel when the documents are published.

8.      Additionally, the FDIC also completed its review of all the archived documents for over 100 banks from November 8, 2023 through January 23, 2025 from RADD's Correspondence Folder.  Importantly, the FDIC's review found no responsive documents.  Identifying and extracting these documents from the RADD archive was laborious and time intensive.  Nevertheless, the FDIC undertook such good faith efforts absent a Court order (Dkt. 38-1, 15:24-16:1) and absent credible evidence of document destruction (*id.* at 16:1) to assuage Plaintiff's counsel's unsubstantiated concerns about document destruction.

9.      It is the FDIC's view that Count I of History Associates' Amended Complaint will be rendered moot when the FDIC makes its final production on or around March 14, 2025.  During the parties' March 4 meet and confer, the FDIC suggested that the parties set up a meeting to reassess the status of the litigation after Plaintiff's counsel has an opportunity to review the production with their client.

*FDIC's Response to History Associates Redaction Objections*

10.    History Associates recently raised objections to the redactions applied to docu-
ments comprising the FDIC's February 21 release to the FOIA Reading Room.  Plaintiff's objec-
tions are without merit.  As FDIC explained during the parties' March 4 meet and confer, approx-
imately 20 of the 87 pages released on February 21 were authored by the FDIC.  Limited redactions
were applied to those pages pursuant to FOIA Exemptions 4, 6, and/or 8 (*see* FOIA Reading Room
February 21, 2025 Release *titled "Additional Correspondence Related to Crypto-Related Activi-
ties"* at pgs. 3-10; 21-24; 49-51; 73-81) (Exhibit A).  The remaining pages are communications
from the banks to the FDIC, which contain proprietary, confidential business information, or per-
sonally identifiable information that frequently pertain to a targeted review, bank exam, or ongoing
enforcement action.  Importantly, nearly 20 of the full-page redactions obscured pages containing
non-responsive text laid over an image that is publicly used by the bank in its other media.  On
other pages, the FDIC employed larger redactions to obscure formatting or design elements pub-
licly used by the bank in its other media.  In short, the redacted information is (1) exempted from
disclosure under a relevant FOIA exemption; (2) is not relevant to History Associates' requests;
and (3) could potentially identify the banks at issue.  Notwithstanding the care the FDIC has taken
with its redactions, the agency is reasonably concerned that the identities of financial institutions
are being revealed, and reflect why the redactions are important.  *See* Exhibit B.

11.    History Associates, however, has requested the FDIC to unredact information even
when offered an explanation for why the information is not responsive to their request.  For exam-
ple, during the March 4 meet and confer, Plaintiff's counsel requested that the FDIC unredact the
numerical percentage of an insured depository institution's internal deposit limits referenced in the
February 21 Release at pages 50, 66, 80, 90, and 91 of the production.  Exhibit A.  However, as

evidenced by the unredacted portions of those pages, the deposit limit is confidential and proprietary business information belonging to the bank. Based on the unredacted text, it appears it was the bank who imposed such deposit limits, not the FDIC. *See* Exhibit A at pp. 50, 66, 80 and 91. And it was the bank that shared their confidential and proprietary business information with the FDIC in a bank-authored communication. *Id.* It is unclear how a bank-imposed metric in a bank-authored document is responsive to a FOIA requests seeking pause letters from the FDIC to financial institutions.

*FDIC's Response to History Associates Multiple "Information Requests"*

12.     FDIC has approached the conferral process with a collaborative spirit and an effort to resolve this matter without further litigation. To that end, the FDIC requested bi-weekly meet and confers prior to exchanging drafts of the JSR, to which Plaintiff's counsel has agreed. However, the FDIC is becoming increasingly concerned with History Associates' use of this purportedly collaborative process to propound discovery-like requests upon the FDIC without any of the reasonableness guardrails imposed on parties in litigation by the Federal Rules of Civil Procedure. By way of example, History Associates' Request No. 10 provides:

> We do not believe that you have answered our question [Request No. 5] about the details of the due diligence the agency undertook to determine whether documents have been intentionally or unintentionally destroyed when the agency represented to the Court that it had done so at the February 11 hearing. Please specify who the FDIC spoke to, what information those individuals provided, what materials the FDIC reviewed, what if any forensic techniques the FDIC employed, and any other concrete actions taken to investigate this matter both before and after the February 11 hearing that constitute the due diligence the agency described to the Court. Please also let us know if you keep audit logs or other records of actions taken within FDIC databases and, if so, whether you reviewed those audit logs or other records.

This request is unreasonable and beyond the scope of discovery in this FOIA case, and the FDIC objects to it. By way of further example, History Associate's Request No. 12, states "Please pro-

vide a list of the FDIC's databases and document repositories.  For each database, please let us know if you keep audit logs or other records of actions taken within the database" is similarly unreasonable, overbroad, and seeks information beyond what is appropriate under the Federal Rules.  As such, FDIC also objects to this "information request."  Again, the FDIC has undertaken a search in the RADD, which is the database reasonably expected to have records responsive to the FOIA request.

13.    Its objections to History Associates' discovery notwithstanding, the FDIC has worked to provide fulsome responses to many of History Associates' requests.  It did so while simultaneously reviewing and redacting documents and conducting quality control efforts on its earlier searches—all within a little over a week of the discovery-like requests being propounded.

14.    The FDIC answered History Associates' Requests Nos. 7 & 8.  *See supra*, ¶¶ 8-9.

15.    In History Associates' first set of "information requests," History Associates asked the FDIC to provide all copies of written policies regarding how FOIA officers or other employees responsible for responding to FOIA requests:  (1) apply Exemption 8; (2) construe FOIA requests; (3) search for records responsive to FOIA requests; and (4) ensure the preservation of documents responsive to FOIA requests both upon filing of the request and a lawsuit challenging the FDIC's decision on the request.  In response, the FDIC previously produced FDIC Directive 1023.01 "Freedom of Information Act Requests" in its entirety.

16.    In History Associates' second set of "information requests," Request No. 9 asked for the FDIC to "confirm whether the FDIC has any other written policies" regarding the above four issues and if so to produce the document(s).  In response, the FDIC reviewed FDIC Directives that refer to either "Freedom of Information Act" or "FOIA."  The FDIC located two additional Directives that may be responsive:  Directive 1300.4 (Information Technology Acceptable Use)

and Directive 1210.01 (Records and Information Management Program).  Because the majority of the text in these Directives do not pertain to FOIA, the documents will be heavily redacted and only the cover page and sections that refer to FOIA will be produced.  FDIC offered to produce unredacted versions of the two Directives to History Associates if they would be willing to enter into a Protective Order.  History Associates indicated that it would consider FDIC's suggestion of a Protective Order, but requested FDIC produce the heavily redacted versions first.

17.     In addition to identifying and reviewing FDIC Directives that refer to either FOIA or Freedom of Information Act, the FOIA & Privacy Act Group identified two additional documents that may be responsive: (1) a written retention schedule, *see* ADM3010, (2) Record Custodian Search Instructions; and (3) the publicly available United States Department of Justice's Guide to the Freedom of Information Act.  We are producing both documents in their entirety and a link to the DOJ Guide.  FDIC will continue to search and, should FDIC find additional relevant, non-privileged written FOIA policies, it will notify Plaintiff's counsel and produce any such documents.

18.     Although History Associates has yet to provide any evidence of document destruction, the FDIC is continuing to investigate the answer to Request No. 11.  Upon our initial review, which is ongoing, RADD users (which comprise the overwhelmingly vast majority of those with RADD access) do not have the ability to delete (much less permanently delete) documents from the RADD archive.  Needing a reasonable amount of time to ascertain a complete and correct answer does not reflect an unwillingness to cooperate.  Moreover, History Associates allegations that the FDIC will not speak to its "due diligence" is incorrect.  As the FDIC relayed to the Court, the RADD has an archive and the archive is backed up every 24 hours.  History Associates now

7

asks the FDIC, without any evidence that a single document was destroyed, to explain what backs up the archive.

19.    In Request No. 13, History Associates asked about how the RADD database was searched and, specifically, whether it was the full text of the entries in the database or only metadata.  The FDIC can confirm that it was both:  full text and metadata.

20.    History Associates' complaints, below, about the FDIC's efforts in this case since the parties were first instructed by the Court to work together and file joint status reports are over-blown, and wrong.  The FDIC has made enormous progress producing records responsive to the FOIA request, to the point where on or before March 14, the FDIC expects to be in a position to conclude its production.  The agency has stated time and again that it has focused its resources on reviewing thousands of pages of documents, including archived documents, and that providing responses to History Associates' plethora of discovery requests will require time.  Even though the FDIC finds some of History Associates' requests objectionable, the agency nonetheless re-sponded on a fast track to many of the requests in an effort to show its good faith: the agency identified why the RADD was the most reasonable place to search; explained how it conducted its search; conducted a re-review of documents in an effort to make additional releases where possi-ble; reviewed archived documents without an order from this Court; produced agency written pol-icies and directives regarding FOIA and agreed to produce others if located; explained in detail why some of the redaction were full page; and, offered to produce some materials unredacted if History Associates would agree to a protective order.  All of this on two week turn arounds.  But as has been obvious from the start, History Associates now does not appear to be willing to con-tinue to work together.  Instead, they have pressed to get on with the litigation, and their Statement about Progress, below, shows just that.  This case does not warrant much of the discovery History

Associates seeks and neither the law nor the facts support it.  The FDIC does not agree with History Associates that the Court should dissolve the stay or move forward with the approach urged by Plaintiff.

21.     The FDIC will continue to work in good faith with History Associates to "resolve this litigation."  February 28, 2025 Minute Order.

**History Associates' Statement Regarding Progress**

22.     The FDIC's recent conduct and its arguments in this joint status report reveal that the agency is not (or no longer) willing to engage in the cooperative information-sharing process the Court put in place on February 11 as an alternative to formal discovery.  Thus, for the reasons explained below, History Associates respectfully suggests that the Court should dissolve the stay in this case, order a targeted 30(b)(6) deposition on specific issues the FDIC has refused to address, and require the agency to respond to History Associates' amended complaint so that litigation of History Associates' claims can proceed expeditiously.  In addition, History Associates has serious concerns with the heavy redactions to the FDIC's February 21 production and may request *in camera* review once the FDIC completes its production on March 14.

*History Associates' Information Requests*

23.     ***The Court Orders Informal Information Sharing so Long as FDIC Cooperates.*** The Court previously contemplated prompt and robust discovery from the FDIC, including a 30(b)(6) deposition, concerning the FDIC's alleged FOIA practices at issue in this case.  *See* ECF 37-1 at 9, 20.  During the February 11 hearing, however, this Court suggested that History Associates then appeared to "have a cooperative agency that's highly motivated to help [it] out" and that it would be more efficient for History Associates and the FDIC to "work cooperatively" to provide History Associates the information it is seeking.  ECF 38-1, at 15.  The Court anticipated

that History Associates would "get a lot more a lot faster that way than [through] the litigation process." *Id.* at 16.  The cooperative sharing of information the Court envisioned expressly encompassed the agency's FOIA-related policies or practices centrally at issue in History Associates' amended complaint.  *Id.* at 15 (Court observing that History Associates "can have conversations with [the FDIC] about what their practices have been and were").  The Court stated that it was "happy to make [the FDIC] move forward quickly" and directed the parties to submit biweekly joint status reports on their progress.  *Id.* at 16; *see also id.* at 17 (ordering status reports "every two weeks").

24.     The Court further made clear that, if the FDIC should prove uncooperative or dilatory, the Court "w[ould] not hesitate to step back in" swiftly.  ECF 38-1, at 16, 18.  The Court stated that, if History Associates is "not satisfied that [it's] getting the full story, then certainly come back to me and I'm happy to order a 30(b)(6) very quickly."  *Id.* at 15; *see also id.* at 18 (Court observing that, "if I find that nothing much is happening and the status report says nothing much is happening and plaintiffs have a problem with that, we're going to all come up here very quickly" and that Court would intervene "the second [History Associates' counsel] tells me it's not happening").  History Associates and the FDIC agreed to engage in this collaborative process.

25.     ***The FDIC Ultimately Reveals Its Unwillingness to Cooperate.***  The FDIC initially indicated a willingness to participate in that cooperative process and made some efforts to supply requested information.  But its more recent communications and conduct and its submissions in its portion of this status report reflect its desire to shut down that process as soon as possible and a return to its earlier resistance to History Associates' requests.

26.     Since the February 11 hearing, consistent with the Court's directions, History Associates has sent the FDIC two sets of information requests.  History Associates sent the first set

of information requests on February 12, and the FDIC provided responses on February 19.  The parties filed a joint status report on February 21, in which History Associates expressed its "serious concerns" about the sufficiency of certain aspects of the FDIC's responses.  *See* ECF 38 at 4.  On February 24, in keeping with the biweekly schedule the Court put in place, History Associates emailed the FDIC a second set of information requests.  *See* Exhibit C.  Most of those requests follow up on the FDIC's responses to History Associates' first set of information requests; the others seek information related to the FDIC policies or practices that History Associates has challenged in its amended complaint.  All of those requests are directed at obtaining information "about what [the FDIC's] practices have been and were," per this Court's instructions.  ECF 38-1 at 15.

27.    To History Associates' surprise, the FDIC's responses show that it now (again) seeks to provide as little information as it can and has no real intention of providing History Associates the further information it seeks unless ordered to do so—just as the agency repeatedly did earlier in this litigation.  To take one stark example, one of History Associates' requests concerns the FDIC's representation in a hearing before the Court that the agency had conducted "due diligence" to ensure that no documents were destroyed.  ECF 38-1 at 11.  History Associates asked the FDIC to describe that due diligence, which it did not elaborate upon at the February 12 hearing.  But the FDIC has repeatedly refused to do so, and now takes umbrage at the request to explain the basis of its assertion to the Court.  *Supra* at 5-7.

28.    The FDIC also refuses to provide a list of the agency's document repositories, which is necessary for History Associates to understand the adequacy of the agency's search.  After all, the FDIC has previously adopted aggressively narrow interpretations of History Associates' requests in this case, and it withheld responsive records because in its view History Associates had not employed arbitrary, undisclosed magic words.  *See* ECF 37 ¶¶ 75-80.  History Associates can-

not know if the agency is employing similar tactics here without knowing even what other databases the agency maintains.

29.     In response to History Associates' requests for FDIC guidance or policies on processing FOIA requests—directly relevant to History Associates' policy-or-practice claims—the agency has produced only snippets from a few documents that have little to nothing to do with the specific FOIA policies or practices that History Associates has challenged in its amended complaint.

30.     More broadly, the FDIC now bristles at responding to what it calls "discovery-like requests" on a biweekly basis. *Supra* at 5-6. But the informal, iterative information requests History Associates has made constitute *precisely* the process the Court put in place and the agency agreed to—which the Court had hoped would be a more efficient and more productive avenue than the formal, swift discovery the Court had previously indicated was appropriate.

31.     ***The FDIC's Lack of Cooperation Warrants the Court's Intervention.*** The FDIC's resistance evokes its earlier intransigence in this case and has caused this collaborative process to break down. The FDIC has now made clear that, for purposes of this litigation, History Associates has received all that the agency believes it is due and that the FDIC will not be "cooperative" and is not "highly motivated to help [History Associates] out" in resolving its FOIA claims. ECF 38-1, at 15. Instead, the FDIC apparently prefers litigation and evidently will withhold even basic information unless compelled to provide it by the Court.

32.     The Court expressly stated that it would "order a 30(b)(6) very quickly" under these circumstances. *Id.* History Associates respectfully requests that the Court do so now. At a minimum, a 30(b)(6) deposition is needed to get the agency to explain definitively and under oath the due diligence the agency undertook to ensure that no responsive documents were destroyed. Dur-

ing the February 11 hearing, the Court directly asked the agency: "Has the FDIC done an investigation into whether any documents have been destroyed?" ECF 38-1 at 11. The agency responded that it "has done some due diligence into whether or not any such destruction took place," without elaboration. *Id.* History Associates simply seeks to know the basis of that factual representation to the Court. But the FDIC has repeatedly declined to provide it. The agency now dismisses that unremarkable request as "unreasonable" and overly broad. *Supra* at 5-6. But the agency should have no difficulty explaining to History Associates what diligence (if any) it actually conducted—as the FDIC undoubtedly would have done and would do if asked the same question by the Court. The FDIC's apparent inability to confirm that its RADD archives cannot be permanently deleted—nearly two months after allegations of document destruction arose—only confirms the need for a prompt investigation into the diligence the agency undertook.

33.    In addition to authorizing a 30(b)(6) deposition, the Court should dissolve the stay and allow History Associates to proceed with its policy-or-practice claims. The FDIC has made clear that it will not informally share with History Associates the information needed to resolve those claims. Thus, there is no longer any basis for staying the FDIC's obligation to respond to the amended complaint or forestalling litigation of History Associates' claims on the merits.

### The FDIC's Redactions to the February 21 Production

34.    ***The FDIC Again Over-Redacts Its Production.*** History Associates appreciates the FDIC's February 21 production of additional records responsive to History Associates' FOIA request. But History Associates remains concerned that the redactions in that production appear similar in extent and overbreadth to the redactions in the FDIC's first production of pause letters in this case, which prompted the Court's "concern[]" in its December 12 order (following *in cam-*

*era* review) "with what appear[ed] to be FDIC's lack of good-faith effort in making nuanced redactions."  Dec. 12, 2024 Minute Order.

35.    The scope of the redactions speak for themselves.  Fifty-three pages are redacted in their entirety.  And many other pages contain heavy redactions rendering the documents unintelligible, much like those in its November 22, 2024 production.  *Compare* Ex. A, at 6-7, 25, 92, *with* ECF 26-1.

36.    ***The FDIC's Attempts to Justify Its Redactions Are Meritless.***  The FDIC suggests that History Associates should be satisfied simply because the agency "offered an explanation" for the redactions.  *See supra* at 4.  But that is not how FOIA works—an agency cannot satisfy FOIA based on its mere say-so. Instead, FOIA provides that Courts can test the agency's explanations against the documents themselves via *in camera* review, as this Court has done in this case.

37.    Regardless, the FDIC's explanations for the redactions are severely wanting on their own terms and appear to reflect its continued disregard for its FOIA obligations.  The FDIC claims that it made only "[l]imited redactions" to documents generated by the agency (as opposed to documents produced by banks).  *Supra* at 4.  Yet the very first document in the production—a letter from the FDIC to a bank—contains redactions that make it impossible to discern what the letter is about or how it relates to crypto.  Ex. A, at 4.

38.    The FDIC also claims that "nearly 20 of the full-page redactions" were necessary to prevent identification of the bank at issue.  *Supra* at 4.  But it offers no explanation for the other 33 fully redacted pages.

39.    Still more documents disclose that one or more banks imposed a cap on the percentage of deposits from crypto companies—which potentially corroborates public reporting that the FDIC informally imposed a 15% crypto deposit cap on banks as part of its anti-crypto cam-

paign.  Veronic Irwin, *Regulators Are Limiting Banks Serving Crypto Clients. Does That Violate the Law?*, Unchained (Oct. 8, 2024), https://bit.ly/41zFvPs.  The FDIC does not dispute that the unredacted portions demonstrate the *existence* of the deposit cap.  Yet it refuses to disclose the *amount* of the cap on the perplexing theory that the cap was implemented by the banks.  That elides the critical question of whether the banks did so at the FDIC's behest, just as it expressly instructed banks to pause crypto activities.

40.    ***In Camera Review May Be Needed Following the March 14 Production.***  To be clear, History Associates is not asking the Court to resolve this dispute over redactions at this juncture.  Although History Associates believes that *in camera* review of the February 21 production might be appropriate to evaluate the FDIC's heavy redactions, for purposes of efficiency History Associates intends to wait to make that request until after it reviews the FDIC's March 14 production.

41.    Following that production, History Associates will negotiate in good faith with the FDIC on that issue and any others that remain open.  But as set forth above, in History Associates' view the parties have reached an impasse on several issues that are now ripe for judicial resolution.

Date: March 7, 2025

Respectfully submitted,

_/s/ Jonathan C. Bond_

Eugene Scalia
Jonathan C. Bond
Nick Harper
Aaron Hauptman
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539
escalia@gibsondunn.com
jbond@gibsondunn.com
nharper@gibsondunn.com
ahauptman@gibsondunn.com

*Attorneys for Plaintiff*

_/s/ Lina Soni_

Andrew J. Dober
    Senior Counsel
Lina Soni
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive
Arlington, VA 22226
Telephone: 571.286.0401
lsoni@fdic.gov

*Attorneys for Defendant*