March 11, 2025

Michael Williams
LITIGANT IN PERSON

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**History Associates Incorporated**;

       Plaintiff;

       And

**Michael Williams**;

       Movant & Proposed
       Plaintiff-Intervenor;

   v.

**Federal Deposit Insurance Corporation**;

       Defendant.

Case No 1:24-cv-1857-ACR

APPLICANT'S:

**(1) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MICHAEL WILLIAMS' MOTION TO INTERVENE**

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MICHAEL WILLIAMS' MOTION TO INTERVENE

# I  TABLE OF CONTENTS

I     Table of Contents ...................................................................................................2

II    Table of Authorities .............................................................................................2

III   Relief Requested ...................................................................................................4

IV    Background ...........................................................................................................4

V     Basis for Intervention Under Federal Rule of Civil Procedure Rule 24.................7

   A     Intervention as of Right (Rule 24(a)) ..............................................................7

      1     Direct and Substantial Interest .................................................................7

      2     Impairment of Interests ..........................................................................11

      3     Inadequate Representation ......................................................................13

   B     Permissive Intervention (Rule 24(b)) ............................................................16

      1     Common Questions of Law and Fact .....................................................16

      2     Judicial Economy ...................................................................................18

      3     Proactive Permission by the Court .........................................................19

   C     Timeliness and Absence of Prejudice ............................................................19

      1     Timeliness ...............................................................................................19

      2     No Prejudice to Existing Parties ............................................................20

VI    Conclusion ..........................................................................................................21

# II  TABLE OF AUTHORITIES

**Cases**

*Auto Workers v. Scofield*, 382 U.S. 205, 86 S. Ct. 373 (1965) ....................................16, 18

*Carroll v. Princess Anne*, 393 U.S. 175, 89 S. Ct. 347 (1968) ..........................................11

*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 87 S. Ct. 932 (1967)..12, 19

*Department of Homeland Security v. MacLean*, 574 U.S. 383 (2015) ................................8

*Dept. of Air Force v. Rose*, 425 U.S. 352, 96 S. Ct. 1592 (1976) ......................................12

*Diamond v. Charles*, 476 U.S. 54, 106 S. Ct. 1697 (1986) ...............................................14

*Dimond v. District of Columbia*, 792 F.2d 179 (D.C. Cir. 1986) ...............................14, 15

*Donaldson v. United States*, 400 U.S. 517, 91 S. Ct. 534 (1971) .................................8, 14

*Environmental Defense v. Leavitt*, 329 F. Supp. 2d 55 (D.D.C. 2004)................................8

*Equal Employment Opportunity Commission v. National Children's Center, Inc.*, 146 F.3d 1042 (D.C. Cir. 1998) ..............................................................................................13, 17

*Forest Conserv. Council v. U.S. Forest Serv*, 66 F.3d 1489 (9th Cir. 1995) ...................17

*Foster v. Gueory*, 655 F.2d 1319 (D.C. Cir. 1981) ...........................................................14

*Friends of Earth, Inc. v. E.P.A*, 446 F.3d 140 (D.C. Cir. 2006) .......................................17

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003)................................7, 15

*Garrison v. Louisiana*, 379 U.S. 64, 85 S. Ct. 209 (1964) ...............................................11

*Georgia v. Ashcroft*, 195 F. Supp. 2d 25 (D.D.C. 2002) ..................................................19

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S. Ct. 2997 (1974) ....................................10

*Hardin v. Jackson*, 600 F. Supp. 2d 13 (D.D.C. 2009).....................................................15

*Hodgson v. United Mine Workers of America*, 473 F.2d 118 (D.C. Cir. 1972)................18

*In re Endangered Species Act Section 4 Deadline Litig.*, 270 F.R.D. 1, 4–5 (D.D.C. 2010) ...........15
*Kleissler v. United States Forest Service*, 157 F.3d 964 (3d Cir. 1998) ...............................................9
*Lane v. Franks*, 573 U.S. 228, 134 S. Ct. 2369, 189 L. Ed. 2d 312, 24 Fla. L. Weekly Supp. 875
    (2014).............................................................................................................................8, 13
*Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990) ........................................................20
*Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893 (1976) ...........................................................12
*Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998) ....................................7
*Murray v UBS Securities LLC*, 601 US 22 (2024).........................................................................9
*Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S. Ct. 2311 (1978).......9
*National Wildlife Federation v. Burford*, 878 F.2d 422 (D.C. Cir. 1989) .....................................20
*Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 96 S. Ct. 2791 (1976)...........................................8
*Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967) ..........................................................8, 13, 18
*Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) ...........................................9
*Pickering v. Board of Education*, 391 U.S. 563 (1968) .................................................................9
*Rosenblatt v. Baer*, 383 U.S. 75, 86 S. Ct. 669 (1966) ...............................................................10
*Smoke v. Norton*, 252 F.3d 468 (D.C. Cir. 2001)........................................................................20
*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) ...............................10
*Taylor v. Federal Deposit Insurance*, 132 F.3d 753, 328 U.S. App. D.C. 52 (D.C. Cir. 1997) .........8
*Trbovich v. Mine Workers*, 404 U.S. 528, 92 S. Ct. 630 (1972) ..............................................13, 14
*United States v. Am. Tel. & Tel. Co. (AT&T), 642 F.2d 1285, 1293 (D.C. Cir. 1980)* .........14, 19, 20
*United States v. National Treasury Employees Union*, 513 U.S. 454 (1995) .....................................9
*United States v. Popa*, 187 F.3d 672 (D.C. Cir. 1999) ................................................................11
*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 102 S. Ct. 1798 (1982)...........................................16
*Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 78 Fed. R. Serv. 3d 72 (D.D.C. 2010)...................19

**Rules**

Fed. R. Civ. P. 24(a)................................................................................................................4
Fed. R. Civ. P. 24(a)(2).............................................................................................7, 8, 11, 13
Fed. R. Civ. P. 24(b) .....................................................................................................4, 16, 21
Fed. R. Civ. P. 59(e)...............................................................................................................4
Fed. R. Civ. P. 60(b) ..............................................................................................................4

March 11, 2025

### III  RELIEF REQUESTED

1.         Mr. Williams respectfully requests that this Court grant the following relief.

(a)      Grant Intervention as of Right under Federal Rule of Civil Procedure Rule 24(a) or, in the alternative, Permissive Intervention under Rule 24(b);

(b)      Allow Mr. Williams to challenge the jurisdictional, procedural, and legal deficiencies of the ex parte order entered against him (namely through a motion to quash, Rules 59(e) and 60(b) motion to vacate the order for lack of personal jurisdiction, insufficient service of process, improper venue, and mistakes of fact and law); and

(c)      Grant any further relief the Court deems just and proper.

### IV  BACKGROUND

2.         Michael Williams is an active whistleblower against the Federal Deposit Insurance Corporation (FDIC), the defendant in this matter, having made hundreds of protected disclosures over the past eleven (11) years. Mr. Andrew Dober, counsel in the instant matter, per his own request, has been copied on every one of these disclosures. For over one and a half (1.5) years, Mr. Williams has been awaiting responses to numerous Freedom of Information Act (FOIA) requests filed with the FDIC, nine of which have been outstanding for over two years. FDIC has regularly denied Williams' FOIA requests in full using expansive exemptions, claiming they do not even need to search for documents. In his recent communications, he sent two follow-up emails to FDIC attorneys requesting the resolution of these long-pending requests. Exh B.

3.         In doing so, Mr. Williams referenced the unrelated litigation History Associates Inc. v. FDIC, urging the re-evaluation of his FOIA requests in light of Her Honors findings and alleged misconduct exposed through this case. These emails also contained a hyperlink to the X account

March 11, 2025

@FDIC_Exposed, which has been actively reporting alleged misconduct by FDIC attorneys.

4.    Mr. Williams is not involved in History Associates Inc. v. FDIC. His communications were solely related to his own FOIA requests and bore no direct connection to the litigation at issue. Nevertheless, FDIC attorneys petitioned this Court ex parte, securing an order prohibiting Mr. Williams from contacting any FDIC attorneys. This order was obtained without notice to Mr. Williams, without an opportunity for him to respond, and without any substantive evidentiary support. The FDIC attorneys claim that Mr. Williams sent threatening text messages to counsel and their family members. However, Mr. Williams was not served with any evidence to substantiate these allegations, and he categorically denies them. In fact, Mr. Williams asserts that FDIC attorneys made or caused the messages to be fabricated or were negligent in determining their true origin.

5.    Mr. Williams has been specifically whistleblowing about misconduct by the attorneys involved in this matter, including Senior Counsel Mr. Andrew Jared Dober and his wife, Ms. Rachel Shachter Dober. The issuance of this ex parte order is clearly retaliatory against Mr. Williams's whistleblowing activities. It is strategically designed to divert his time, energy, and resources away from his whistleblowing efforts and force him to contest baseless allegations rather than focusing on exposing FDIC misconduct. Moreover, Mr. Williams believes seeking this order is a shot across the bow: stop investigating the Dobers, or even the FDIC or more messages will materialize, thus putting Williams in breach of a purported court order and then fighting off possible sanctions.

6.    Mr. Dober has plenty of reason to fabricate evidence against Mr. Williams, and his past conduct illustrates concerning behavior. Mr. Dober knows @FDIC_Exposed, of whom Mr. Williams serves as a member, and intends to release ample evidence against Mr. Dober that will

March 11, 2025

likely result in his disbarment.

7.     As this case has discovered, Mr. Andrew J. Dober has a history of intentionally skirting the law, including failing to enact a legal hold despite being provided a clear request to do so, allowing evidence to spoil. For example, on July 20, 2023, Mr. Williams sent a legal hold to the FDIC. Exh C. Mr. Williams sought specifically to preserve records, some of which the Corporation only retains for at most seven (7) days. On July 25, 2023, Mr. Dober wrote back, stating the FDIC would not honor the legal hold and would not retain the records. Exh D. That same day, several hours later, Mr. Williams writes back, explaining he does have a legal basis to request the records to be held and asks the FDIC to do so without delay. Exh E. Upon the advice of Mr. Dober, the FDIC still failed to enact a hold. On July 27, 2023, Mr. Williams renews his request for a legal hold. Exh F. Mr. Dober again advised the FDIC not to initiate a legal hold. On August 1, 2023, Mr. Williams emailed the entire FDIC board of directors, including General Counsel Pettway and deputy General Counsel Christensen. At that point, Mr. Pettway overrules Mr. Dober and finally enacts a legal hold which was dispatched to responsive FDIC employees. Exh G. Unfortunately, Mr. Dober succeeded in allowing for the spoliation of vital evidence, which the Agency wiped on the morning of July 28, 2023.

8.     Mr. Williams has personally heard Mr. Dober boast in meetings about how to beat FOIA requests, explicitly instructing those concerned about FOIA to include a bank name in the document as an "example," thus giving the FDIC the ability to withhold the entire document as the FDIC would then classify the whole document as supervisory related and withhold such document. Mr. Williams has seen evidence that Mr. Dober is profiting from insider information gained through his employment.

9.     Mr. Dober was aware his conduct in the present matter would draw the ire of the

March 11, 2025

court, especially if Mr. Williams released evidence proving the above and Mr. Williams' asserted these threatening messages were a backstory to gain sympathy from Her Honor as the transcripts clearly reflect.

10.     The individuals allegedly affected by Mr. Williams' conduct live and work in Virginia. The FDIC attorneys already have numerous legal remedies available if they genuinely believe they are being threatened, including:

> (a)     Filing a police report;
>
> (b)     Requesting a law enforcement investigation;
>
> (c)     Seeking an appropriate protective order in state court.

11.     The ex parte order in question circumvents these traditional and legally sound avenues, instead violating due process and imposing unconstitutional restrictions on Mr. Williams without affording him any procedural safeguards. Moreover, Mr. Dober likely knows any forensics investigation would show these purported messages did not come from Mr. Williams and were, in fact, even invented by himself.

## V   BASIS FOR INTERVENTION UNDER FEDERAL RULE OF CIVIL PROCEDURE RULE 24

### A   *Intervention as of Right (Rule 24(a))*

12.     Intervention as of right is warranted under **Rule 24(a)** because:

#### 1   *Direct and Substantial Interest*

13.     The D.C. Circuit has held that constitutional standing alone is sufficient to establish that a proposed intervenor has "an interest relating to the property or transaction which is the subject of the action." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003)  at 735 (citing Fed. R. Civ. P. 24(a)(2)); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) ("[A

March 11, 2025

proposed intervenor] need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposes of Rule 24(a).”); *Env't Def. v. Leavitt*, 329 F. Supp. 2d 55, 66 n.7 (D.D.C. 2004) (noting that “a person who satisfies constitutional standing requirements fulfills [] the second of the four Rule 24(a) requirements”). Accordingly, Mr. Williams has direct and substantial interest far beyond simple constitutional standing.

14.     Mr. Williams has a direct and substantial interest in this action because the ex parte order imposes immediate and binding obligations that curtail his First Amendment rights and impede his whistleblowing activities. In the D.C. Circuit, courts take a “liberal approach” to Rule 24(a)(2) when a prospective intervenor asserts a “significantly protectable interest.” See *Donaldson v. United States*, 400 U.S. 517, 531 (1971); *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) at 700–01. The challenged order restricts Mr. Williams's ability to speak out about alleged government misconduct—speech that lies at the core of the First Amendment. See *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (“[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights.”).

15.     By deterring Mr. Williams from revealing alleged misconduct within the FDIC, the Order directly contravenes his statutorily enshrined whistleblower protections under 5 U.S.C. § 2302(b)(8). In *Department of Homeland Security v. MacLean*, 574 U.S. 383 (2015), the Supreme Court reaffirmed that the Whistleblower Protection Act (WPA) exists precisely “to encourage” the disclosure of government wrongdoing, and that punishing employees for exposing such misconduct flouts clear congressional intent. Likewise, in *Lane v. Franks*, 573 U.S. 228 (2014), the Court held that retaliating against a public employee for speaking out on matters of public concern—including corruption and unethical practices—violates core First Amendment principles.

16.     These protections carry particular force in the FDIC setting. As the D.C. Circuit

March 11, 2025

explained in *Taylor v. FDIC*, 132 F.3d 753 (D.C. Cir. 1997), Congress has afforded whistleblowers special protection (beyond that provided by the First Amendment) to ensure wrongdoing can be safely reported, even internally. Courts recognize that chilling such disclosures undercuts the strong public policy favoring transparency and accountability—policies further underscored by decisions such as *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *United States v. National Treasury Employees Union*, 513 U.S. 454 (1995). As the Supreme Court recently emphasized in *Murray v UBS Securities LLC*, 601 US 22 (2024), "[t]he health, safety, or well-being of the public may well depend on whistleblowers feeling empowered to come forward." Any order or practice that hampers Mr. Williams's ability to disclose potential FDIC misconduct, therefore, not only violates his WPA rights but also impinges on fundamental First Amendment values and the overriding public interest in exposing illegality or abuse.

17. The detrimental impact is magnified by the fact that the very FDIC attorneys who secured the ex parte order also oversee Mr. Williams's FOIA requests—several of which have been stalled for over two years. Because the order prevents him from communicating directly with FDIC counsel, Mr. Williams is effectively cut off from following up on or challenging these delayed requests, thereby depriving him of his statutory right to access public records. This obstruction of the FOIA process, albeit this time not directly by the Agency but by a Federal Court, underscores the immediacy and substantiality of Mr. Williams's interests: as courts have long recognized, "excessive delay by the agency in its response is often tantamount to denial" (see *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988)), and such practices conflict with FOIA's fundamental goal of timely disclosure (*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). Cf. *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970 (3d Cir. 1998) (requiring a "legally cognizable" interest potentially "impaired, as a practical matter, by the disposition of the action").

18.     Moreover, the ex parte order rests on unsubstantiated allegations that Mr. Williams categorically denies. If these claims remain uncontested, they threaten to inflict severe reputational harm and undermine Mr. Williams's credibility as a whistleblower. See *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966) ("Society has a pervasive and strong interest in preventing and redressing attacks upon reputation."); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341 (1974) ("The individual's right to the protection of his own good name 'reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty.'"). Preventing Mr. Williams from refuting these allegations impairs his ability to continue engaging in lawful and constitutionally protected activities that serve the public interest.

19.     Further, the order diverts Mr. Williams's time, resources, and attention from valid whistleblowing efforts to defending against a judicially imposed restraint obtained without meaningful notice or opportunity to be heard. Courts acknowledge that such tangible burdens— particularly when compounded by a significant infringement of constitutional rights—demonstrate a "significantly protectable interest" under Rule 24(a). Courts apply a "primarily practical and equitable" inquiry to whether an intervenor has a "significantly protectable interest" under Rule 24(a). *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). And "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Accordingly, an order that diverts a proposed intervenor's resources and infringes core constitutional rights establishes the requisite significantly protectable interest warranting intervention as of right.

20.     Because Mr. Williams's First Amendment rights, statutory whistleblower protections, and FOIA interests are jeopardized by the ex parte order, resolving this action without his participation would, as a practical matter, impair his ability to safeguard these core interests.

March 11, 2025

Allowing Mr. Williams to intervene will ensure that his direct and substantial interests are protected and that any restriction on his speech or whistleblowing activities is subjected to the searching scrutiny required by the Constitution.

### 2    *Impairment of Interests*

21.      Williams is "so situated that the disposition of the action may as a practical matter impair or impede [his] ability to protect [his] interest[s]." Fed. R. Civ. P. 24(a)(2).

22.      The continued enforcement of the ex parte order severely impedes Mr. Williams's ability to engage in constitutionally protected whistleblowing activities and to exercise his First Amendment rights. As the Supreme Court has consistently emphasized, "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964). The ongoing enforcement of the ex parte order is tantamount to an impermissible prior restraint that prevents Mr. Williams from engaging in vital whistleblowing efforts and from exercising his First Amendment rights—particularly his ability to communicate with FDIC attorneys overseeing his pending FOIA requests, petition these employees for redress, and to advocate against alleged misconduct. Under Supreme Court precedent, ex parte speech restrictions are highly disfavored when they operate to silence an individual without notice or an opportunity to be heard. See *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 180 (1968) ("[T]here is no place for such ex parte order … where no showing is made that it is impossible to serve or notify [the speaker]."). Even when speech rises to the level of "criminal" harassment, restrictions on speech may be impermissible. *United States v. Popa,* 187 F.3d 672 (D.C. Cir. 1999).[1]

---

[1] No such allegations are made in the instant controversy, and the content of the purported communication is unknown. However, this case, while criminal rather than a civil injunction, deals with restrictions on contacting government officials, a form of prior restraint on petitioning the government. Gheorghe Popa was convicted under a telephone harassment statute for repeatedly calling the U.S. Attorney's Office to complain (in sometimes offensive terms). The statute was

23.      Without the opportunity to intervene, Mr. Williams will be left without a meaningful avenue to contest this order, thereby exacerbating its chilling effect and hampering his ability to function as a whistleblower. The Supreme Court has long recognized that "the fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Although Mathews allows some flexibility in how and when a hearing is provided, its core principle remains that significant deprivations of rights ordinarily require notice and a chance to respond. Here, Mr. Williams received no advance notification of the FDIC attorneys' ex parte petition and was not permitted to rebut the allegations before the order issued. This denial of procedural due process magnifies the infringement of his constitutional rights, subjecting him to an order that restricts both his liberties and his ability to pursue legal remedies.

24.      The ex parte order also directly undermines Mr. Williams's ability to utilize the Freedom of Information Act ("FOIA"), a statutory instrument designed to promote transparency and government accountability. See *Dep't of Air Force v. Rose*, 425 U.S. 352, 360 (1976) (recognizing that FOIA reflects "a general philosophy of full agency disclosure … "). Given that FDIC counsel plays a pivotal role in processing Mr. Williams's FOIA requests, the order effectively prevents him from following up on these long-delayed matters, depriving him of his statutory right to obtain public records. Courts have repeatedly acknowledged that procedural constraints that impede an individual's ability to protect their legal rights constitute a significant impairment, justifying intervention. See *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 135 (1967)

---

applied to bar his annoying calls to a government official. The D.C. Circuit reversed Popa's conviction, holding that applying the harassment law to his calls violated the First Amendment. Even unpleasant or critical speech directed at public officials is protected when it relates to petitioning the government. The court agreed that "the statute, as applied to Popa's conduct, violates the First Amendment."

March 11, 2025

(holding that an order impeding a party's ability to protect its legal interests supports intervention as of right).

25.     Mr. Williams's interests are not merely hypothetical; they are being actively harmed. Courts have consistently held that a party seeking intervention under Rule 24(a) need only show that "disposition of the action may as a practical matter impair or impede the [movant's] ability to protect [their] interest." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) (alterations added). In the absence of intervention, Mr. Williams remains indefinitely constrained in his ability to engage in whistleblowing, pursue legal remedies, and promote transparency—all of which are interests that courts, including the Supreme Court and the D.C. Circuit, have consistently deemed worthy of the highest protection. *Lane v. Franks*, 573 U.S. 228, 236 (2014).

26.     Given the significant constitutional and statutory concerns at stake, and the absence of any alternative forum through which Mr. Williams may contest the order, the impairment of his rights is both substantial and warrants intervention. This Court has recognized that intervention is essential to prevent irreparable harm when a judicial order restricts an individual's rights to free speech, due process, or access to legal redress. See *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)   (granting intervention where a court order affected statutory rights). Therefore, Mr. Williams's motion to intervene should be granted in order to prevent further infringement upon his constitutionally and statutorily protected interests.

### 3   *Inadequate Representation*

27.     The final factor is whether Williams' interests are "adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). They are not. The Supreme Court has held that this "requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v.*

March 11, 2025

*United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). The D.C. Circuit has described this requirement as "not onerous." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); see also *Foster v. Gueory*, 655 F.2d at 1325; *United States v. Am. Tel. & Tel. Co. (AT&T), 642 F.2d 1285, 1293 (D.C. Cir. 1980)* (stating that a petitioner "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee").

28.      No existing party to this litigation has any incentive, or indeed any obligation, to challenge the jurisdictional, procedural, legal, or factual deficiencies stemming from the ex parte order. In *Trbovich*, the Supreme Court recognized that one of the central purposes of intervention is to allow a party with a distinct interest—one not adequately represented by existing parties—to enter a proceeding. There, the Court emphasized that "the requirement of [Rule 24(a)] is satisfied if the applicant shows that representation of his interest "may be" inadequate; and the burden of making that showing should be treated as minimal." *Id*. at 538 n.10. Here, not only do the Plaintiff and Defendant share no interest in protecting Mr. Williams's constitutional rights, but they have made no effort to address the significant due process concerns arising from the ex parte nature of the injunction.

29.      This principle of minimal burden in demonstrating inadequate representation has been reiterated in numerous Supreme Court decisions. In *Donaldson v. United States*, 400 U.S. 517, 531 (1971), the Court denied intervention but noted intervention is appropriate where the would-be intervenor's interest is not otherwise protected. Likewise, in *Diamond v. Charles*, 476 U.S. 54, 68 (1986), the Court denied intervention to a non-governmental entity only after finding it failed to show it had any interest different from the existing government defendant. By contrast, Mr. Williams's specific constitutional, statutory, and whistleblower interests are manifestly different from, and unrepresented by, both Plaintiff and Defendant, rendering intervention essential under

March 11, 2025

these precedents.

30.    Within the D.C. Circuit, courts have long followed the Supreme Court's teaching that the showing required to meet the inadequacy requirement is minimal. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 n.7 (D.C. Cir. 2003) (citing *Trbovich*, 404 U.S. at 538 n.10). The D.C. Circuit has also explained that a movant need only show that the existing parties' representation of its interests "may be" inadequate. D*imond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986). Here, neither the Plaintiff (History Associates, Inc.) nor the Defendant (Federal Deposit Insurance Corporation) has any reason or incentive to vindicate Mr. Williams's Due Process and First Amendment rights or his whistleblower protections. Rather, the FDIC—through its counsel— actively sought the ex parte order. Thus, the FDIC's interests are diametrically opposed to Mr. Williams's. Nor can the Plaintiff, which presumably seeks only to prosecute its own claims under its contractual or statutory interests, represent or defend Mr. Williams's personal constitutional claims.

31.    District courts within this Circuit likewise recognize that intervention is necessary where the intervenor's interests are not adequately represented. In *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009), the court granted intervention in part because the existing parties' interests did not fully align with those of the proposed intervenors. See also *In re Endangered Species Act Section 4 Deadline Litig.*, 270 F.R.D. 1, 4–5 (D.D.C. 2010) (intervention allowed where a federal agency and an environmental group could not adequately protect the distinct interests of a proposed intervenor). In the present case, the lack of alignment between Mr. Williams's interests and those of the FDIC and History Associates, Inc. is unmistakable: neither existing party is motivated or equipped to protect Mr. Williams's personal due process rights or to reverse an order that it either requested or acquiesced to. In fact, Defendant FDIC is the party who requested the order while

March 11, 2025

Plaintiff History Associates has stayed away from the matter, careful not to prejudice the Court's opinion of themselves.

32.     In short, no existing party advocates for Mr. Williams's constitutionally guaranteed freedoms or whistleblower protections. Both Plaintiff and Defendant are focused on resolving the underlying litigation, and the FDIC, in particular, sought the ex parte order, which is now under challenge. Consequently, the "minimal" burden to show inadequate representation is amply met. Without intervention, there is little chance—if any—that the Court would examine whether the ex parte order is constitutionally or procedurally flawed. Mr. Williams is therefore entitled to intervene to ensure his rights to freedom of speech, due process, and whistleblower protections are adequately presented and protected in this litigation.

### B   Permissive Intervention (Rule 24(b))

33.     Alternatively, permissive intervention is appropriate under Federal Rule of Civil Procedure 24(b) because:

### 1   Common Questions of Law and Fact

34.     The claims and defenses Mr. Williams seeks to advance share substantial common legal and factual issues with the underlying dispute—most notably with respect to the questions of jurisdiction, venue, and procedural propriety. The Supreme Court has recognized that Federal Rule of Civil Procedure 24(b)'s "common question of law or fact" requirement should be construed liberally to promote the efficient adjudication of related claims and defenses. See, e.g., *Int'l Union v. Scofield*, 382 U.S. 205, 217 n.10 (1965) (endorsing the practical benefits of permitting parties with overlapping issues to intervene). Although the Supreme Court has not exhaustively delineated the boundaries of permissive intervention, it has repeatedly affirmed that judicial economy and the avoidance of multiple proceedings are paramount considerations in federal litigation. See

March 11, 2025

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 314 (1982) (emphasizing the federal courts' broad discretion to shape proceedings in ways that foster the just, speedy, and inexpensive determination of every action).

35.     The D.C. Circuit has similarly recognized that a movant's claims need only share "a question of law or fact in common" with the existing litigation to warrant permissive intervention. *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046–47 (D.C. Cir. 1998). There, the D.C. Circuit reversed the district court's denial of intervention, explaining that overlapping legal arguments would facilitate efficient resolution of issues and avoid duplicative proceedings. *Id*. Likewise, Mr. Williams's claims regarding the constitutional validity of the ex parte order, this Court's jurisdiction over him, and the proper venue to address his alleged misconduct all implicate factual and legal questions that substantially overlap with the broader dispute—particularly because the ex parte order arose from the same underlying proceedings. See also *Friends of the Earth, Inc. v. EPA*, 455 F.3d 1, 7 (D.C. Cir. 2006) (noting that allowing intervention serves the purpose of resolving interlinked issues in a single forum).

36.     Further decisions from the D.C. Circuit underscore this broad approach. In *Forest Conserv. Council v. U.S. Forest Serv*, the court emphasized that "A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court. *Greene*, 996 F.2d at 980 (Reinhardt, J., dissenting) (emphasis added).") 66 F.3d 1489, 1496 n.8 (9th Cir. 1995). Permitting intervenors who raise jurisdictional or procedural issues, such as due process, central to the subject matter of the litigation, the court reasoned, helps avoid needless fragmentation and promotes judicial economy.

March 11, 2025

*Natural Resources Defense Council v. Costle*, 561 F.2d 904, 910-11 (D.C. Cir. 1977) ("[I]n the intervention area the "interest" test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."). Here, because Mr. Williams's arguments regarding the ex parte order's constitutional and procedural validity arise from the same factual core—namely, the FDIC's conduct and the Court's issuance of the challenged injunction—allowing him to intervene would likewise consolidate issues that might otherwise be litigated separately. *Id* at 911 ("involvement may lessen the need for future litigation to protect their interests").

37.     In sum, Mr. Williams's defenses and arguments concerning the ex parte order do not exist in isolation; rather, they are intertwined with the legal and factual matrix of the main action, touching on core questions of how this Court obtained authority over him in the first place and whether the order violates fundamental procedural and constitutional principles. Allowing permissive intervention promotes judicial efficiency, avoids redundant litigation, and ensures that overlapping issues are resolved fairly and comprehensively in a single proceeding.

### 2  *Judicial Economy*

38.     Permissive intervention will serve the interests of the judicial economy by allowing Mr. Williams to address his legal challenges in a single lawsuit rather than subjecting the parties to needless duplication of proceedings. See *Automobile Workers v. Scofield*, 382 U.S. 205, 217 (1965) (recognizing the efficiency gains when intervention avoids unnecessary "multiplicity of subsequent suits"). Indeed, permissive intervention under Rule 24(b) is designed to promote judicial efficiency (*Hodgson v. United Mine Workers*, 473 F.2d 118, 130 (D.C. Cir. 1972)) by "disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967).

March 11, 2025

39.      In contrast, denying intervention would require Mr. Williams to pursue an entirely separate lawsuit, thereby unnecessarily burdening judicial resources and risking inconsistent determinations on identical issues. Cf. *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 136 (1967) (approving intervention to ensure all interested parties' claims were resolved in one proceeding). Such piecemeal litigation creates the potential for inconsistent or varying adjudications, which courts strive to avoid. See *Georgia v. Ashcroft*, 195 F. Supp. 2d 25, 33 (D.D.C. 2002) (explaining that intervention enables all interested parties to participate and avoids duplicative or possibly inconsistent judgments). Accordingly, permissive intervention here is favored to streamline the proceedings and allow for comprehensive adjudication of the validity of the ex parte order.

### 3  *Proactive Permission by the Court*

40.      Mr. Williams understands that the Honorable Judge presiding over this case has proactively permitted intervention for the limited purpose of challenging the ex parte order (D.E. #30). Given this explicit acknowledgment, the Court should formally grant permissive intervention to allow for full and fair litigation of the legal issues surrounding the order.

### C  *Timeliness and Absence of Prejudice*

### 1  *Timeliness*

41.      A district court has discretion when considering the timeliness element. See *Fund for Animals*, 322 F.3d at 732. Courts evaluate timeliness based on (a) the time elapsed since the inception of the action, (b) the probability of prejudice to those already party to the proceedings, (c) the purpose for which intervention is sought, and (d) the need for intervention as a means for preserving the putative intervenor's rights. *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 12 (D.D.C. 2010); see also *AT&T*, 642 F.2d at 1295. Williams' addresses the first two factors below whilst relies on his submissions above in the latter two. Timeliness is "judged in consideration of

March 11, 2025

all the circumstances," including "the need for intervention as a means of preserving the applicant's rights." *Id*. In particular, the Court should look to the date that the party seeking to intervene "knew or should have known that any of [his] rights would be directly affected" by the litigation. *Nat'l Wildlife Fed'n v. Burford*, 878 F.2d 422, 434 (D.C. Cir. 1989), rev'd on other grounds sub nom. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990).

42.    Mr. Williams' motion is timely, as he is raising his intervention request promptly after learning of the ex parte order and its implications. Timeliness is a critical factor in evaluating intervention requests, and courts typically allow intervention where there is no undue delay. See *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (holding that timeliness is measured based on when the intervenor became aware of the litigation's potential effect on their rights). Any delays challenging the order are a result of Mr. Williams's current presence overseas, the significant time zone difference of over 13 hours, the seeking of legal advice and counsel, and the associated delays due to the aforementioned reasons and technical difficulties with the ECF process for which he has contacted the Clerk thrice.

43.    The ex parte nature of the order deprived Mr. Williams of notice and an opportunity to contest its validity prior to issuance, further necessitating intervention at the earliest possible stage.

2   *No Prejudice to Existing Parties*

44.    Permitting Mr. Williams to intervene will not unduly prejudice the existing parties. On the contrary, the intervention will ensure that the Court has a full and complete understanding of the facts, procedural defects, and legal implications of the ex parte order before proceeding further. See *AT&T*, 642 F.2d at 1293 (finding that intervention should be granted where it contributes to an informed resolution without delaying proceedings).

March 11, 2025

45.     The FDIC and other parties to this litigation cannot claim any legitimate prejudice from Mr. Williams' intervention, as his challenge concerns the validity of an order directly affecting his rights rather than interfering with the core issues of the underlying case.

## VI  CONCLUSION

46.     For the foregoing reasons, Mr. Williams respectfully requests that this Court grant his motion to intervene as of right under Rule 24(a) or, in the alternative, grant permissive intervention under Rule 24(b). This intervention is essential to safeguarding his constitutional rights and ensuring that the procedural and jurisdictional defects of the ex parte order are properly adjudicated.

Dated: March 11, 2025                                    Respectfully submitted,

                                                         /s/ *Michael Williams*
                                                         Michael Williams
                                                         PRO SE