Exhibit E   Michael Williams <█>

# FDIC Response Letter to M. Williams July 20 Demand for the Preservation of Evidence (07.25.2023).pdf

**Michael Williams** <█>  Wed, Jul 26, 2023 at 3:41 AM
To: "Smith, Herbert" <█>
Cc: "Dober, Andrew J." <█>

Mr. Smith & Mr. Dober -

Please review the attached correspondence regarding your July 25, 2023 response to my July 20, 2023 demand for the preservation of evidence.

Regards,

Michael

On Tue, Jul 25, 2023 at 3:27 PM Smith, Herbert <█> wrote:

> Mr. Williams –
>
> Please see attached correspondence regarding your July 20, 2023 Demand for the Preservation of Evidence.
>
> Regards,
>
> _____
>
> **Herbert G. Smith II**
> Counsel, Corporate Litigation Unit
> **Federal Deposit Insurance Corporation**
> Cell: █
> fdic.gov
>
> **FDIC**

📎 2023-07-26 - Letter to FDIC RE Williams Response to FDICs Position on Litigation Hold - Signed.pdf
231K

July 26, 2023

*Via email* ▮▮▮▮▮▮▮▮▮▮, ▮▮▮▮▮▮▮▮▮▮

Mr. Andrew J Dober and Mr. Herbert G. Smith II

**RE:   FDIC Response Letter to M. Williams July 20 Demand for the Preservation of Evidence (07.25.2023)**

Dear Mr. Dober and Mr. Smith:

**Introduction**
Thank you for getting back to me. Your response contains a factual inaccuracy that I sent multiple emails across several days to multiple groups and employees.

To be clear, I sent two emails on the same day, July 20, 2023, at 2:39 AM and 3:19 PM Eastern Time. These emails were sent to the following email addresses, consisting of five shared mailboxes and one individual: legal@fdic.gov, amthompson@fdic.gov, efoia@fdic.gov, ethics@fdic.gov, ITCIP-INFO@fdic.gov.

The first email contained a litigation hold, while the second email contained important instructions requesting the retention of Microsoft Team meetings and contemporaneous notes of the FDIC Insider Threat and Counterintelligence Program (ITCIP) Working Group (ITCIPWG).

Your response purports to treat my request for the preservation of materials as something that must conform to the Federal Rules of Civil Procedure (FRCP), specifically section 8(a)(2). I believe the cause of action alluded to and set out in the letter is more than an unadorned, the-defendant-unlawfully-harmed-me accusation and offers more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

With that said and given the FDIC claiming the initial legal hold has fatal defects, further details would benefit all parties involved and help the Corporation identify the appropriate individuals to whom the hold should be directed, and which materials should be preserved.

While I appreciate the Corporation's perspective that there may be a substantial amount of materials covered by this litigation hold, the cost to the Corporation to advise all parties of their obligations and responsibilities around this hold and the materials that should be covered is minimal. As you are aware, the Corporation has a robust legal hold system in place that further mitigates any costs.

**Disclaimer**
I write this response to provide further context to the demand for the preservation of evidence and nothing contained herein should constitute or be taken as an enumeration of all causes of action or relevant details, nor a waiver of any rights, all of which I expressly reserve.

**Background**
Since July 12, 2023, the Corporation has been using the ITCIPWG to engage in a political witch-hunt under the guise of an investigation into my alleged failure to disclose non-operational intellectual property-holding subsidiary companies on my ethics forms and other unrelated nonsense.

During the meetings of the ITCIPWG, specifically, the meetings that occurred from July 12 to July 14, 2023, at least two individuals, Rami Dillon ("DILLON"), Deputy Director, Office of the Chief Information Security Officer, and Amy Thompson ("THOMPSON"), Director of the Office of Communications, for whom I have filed complaints due to alleged unethical or potentially criminal conduct led the charge demanding I be placed on administrative leave.

For convivence, I refer to these individuals using their last name: no disrespect is intended.

At least these two individuals made bombastic, categorically false, and prejudicial claims that had already been adjudicated by the Corporation in an attempt to tarnish my reputation due to my engagement in protected whistleblowing activities against actions they have taken as I enumerated in OIG complaints, I filed against them.

These individuals went so far as to call me a liar in front of a group of people, saying in effect that anything I tell the FDIC is only to benefit my own interests and that I am trying to "preempt" any matters. These individuals repeated statements they read online as factual truth, including abhorrent and categorically false statements that I was engaged in online sexual extortion. They knew the statements were false or if they did not, they failed to use reasonable care to determine the truth or falsity of the statements.

These individuals should have recused themselves from any decisions around my placement on administrative leave rather than engage in a conspiratorial campaign against me. This is especially the case given the clear conflict of interest and tangible benefit Dillon and Thompson have received with me now having to divert time and resources to fight for my job and defend my reputation instead of providing further evidence to my whistleblowing complaints and first-amendment protected journalistic publication of ethical dilemmas at the FDIC.

**Adverse Action: Administrative Leave**
While I understand the FDIC is likely to contend that the placement of an employee on paid administrative leave does not constitute an adverse action, I argue the opposite.

As you are aware, my duty station is San Francisco, California. The 9th Circuit has held that being placed on paid administrative leave can constitute an adverse employment action for purposes of a constitutionally protected activity retaliation claim[1].

---

[1] Loss of opportunities to gain job experience and exclusion from career-building work, including when such loss of opportunity results from a paid suspension, amounts to an adverse employment action. *Dahlia v. Rodriquez*, 735 F.3d 1060, 1078 (9th Cir. 2013); "Although administrative leave with pay may be welcomed by some, the threat of forced leave could reasonably deter employees who prefer working from engaging in protected activity." *Dilettoso*

The statements made by Dillion and Thompson were likely defamatory, painted me in a false light, and were made with actual malice due to my protected first amendment and whistleblowing activities violating the First and Fourteenth amendments of the US Constitution. Ms. Thompson threatened, in effect, that if the ITCIPWG did not place me on administrative leave she "would go to the chairman" and blame the members of the group who were arguing against my placement on administrative leave.

Given that these individuals took pretextual actions to chill my protected activities under the guise of a justified action by an insider threat panel, this is clearly an adverse action. If my argument holds, then I should have been entitled to due process protections prior to the action being taken. Based on continued information being provided, Dillion and Thompson have continued to propagate these statements within the FDIC. Despite others on the panel suggesting their suggestions extreme, they have acted relentlessly, with Dillion suggesting that the FDIC should examine every email and network login until they find some reason to remove me.

Should the Corporation have a justified and reasonable concern, there were many other less intrusive options available, including directing me to telework and restricting my network access. At the bequest of Dillon and Thompson, the group considered none of these options and failed to employ a balancing test.

I do not dispute that the Corporation has the right if not the obligation to investigate allegations of wrongdoing. However, any investigation should be done an in impartial manner by a neutral and unbiased factfinder. Allowing at least two individuals who have a clear conflict of interest to abuse the interest of this panel and weaponize administrative leave to suppress and chill my first amendment rights is almost certainly illegal and not in line with the spirit of due process.

The adverse action has had a serious impact on my mental health, and I contend taken with the knowledge that these actions would expose me to contempt and ridicule among my coworkers and inflict significant emotional harm upon me. I told the Corporation that I had been going through a very tough time in my personal life as someone close to me passed away resulting in me taking a week of leave. With this knowledge, I believe some at the FDIC, especially Dillon and Thompson acted negligently to further induce stress upon me creating significant emotional harm.

Moreover, should the Corporation seek to take further adverse actions against me, I intend to raise equitable causes of actions and defenses including, but not limited to, promissory estoppel. The FDIC knew my outside businesses and engagements promised me I would be able to

---

*v. Potter*, No. CV 04-0566-PHX-NVW, 2006 WL 197146, at *8 (D. Ariz. Jan. 25, 2006); "Suspension, regardless of whether it is paid, is adverse to the employee in and of itself. It is punitive in nature and at a minimum becomes part of one's permanent employment record, affecting one's ability for advancement, or to find other future employment, or gaining valuable job experience." *Mosunic v. Nestle Prepared Foods Co.*, No. 15-cv-380, 2017 WL 3531465, at *3 (D.R.I. Aug. 16, 2017).

continue with them, and now uses this very promise as at least one basis for seeking adverse actions against me.

**Communications with FDIC Employees**
I understand your demand not to talk with any FDIC employee about these legal claims. I am not a lawyer, and I do not have a duty to exclude represented parties from communications or to refrain from communicating with them directly. I would appreciate it if you made this a kind request rather than a command.

Because of the tone in your letter, I do not explicitly agree to exclude any party from communication and will act in accordance with my best interests. However, as a gesture of goodwill, I will do my best to make sure communication, when possible, is directed to you instead of directly to an individual; however, this should not be taken as an agreement, commitment, or otherwise binding.

I am also pursuing actions against Dillon, Thompson, and potential others in their individual capacities (Bivens action) as I believe their actions under the color of federal authority violate my clearly established constitutional rights (first, fourteenth Amendment) and thus their actions are not entitled to qualified immunity.

Therefore, I ask, are you also representing parties in their individual capacity?

**Summary**
In summary, taken in the most favorable light to me, the FDIC has *already* taken actions that give rise to the likelihood of litigation, and thus it is the duty of the parties to preserve evidence. The recitals contained herein alone would survive an FRCP Rule 12(b) motion to dismiss.

There is a significant incentive for various individuals to conceal, delete, or otherwise spoil evidence, something that has seemingly happened at the FDIC before. Therefore, given the additional information contained within this letter, I reincorporate my demand for the preservation of evidence as written and set out in its original form.

The scope of the litigation hold is commensurate with the seriousness of the allegations I raise and narrowly tailored materials at the center of the controversy.

With all this in mind, please <u>DO NOT DELAY</u> in enacting a proper legal hold, especially the Microsoft Teams recordings for the ITCIPWG and all contemporaneous notes made by participants. This evidence is central to my claims and is likely to be lost should the Corporation not act expeditiously.

Sincerely,

*/s/ Michael Williams*

Michael Williams