April 28, 2025

Michael Williams
PRO SE

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

**History Associates Incorporated**;

     Plaintiff;

     And

**Michael Williams**;

     Plaintiff-Intervenor;

v.

**Federal Deposit Insurance Corporation**;

     Defendant.

</td><td>

Case No. 1:24-cv-1857-ACR

**PLAINTIFF-INTERVENOR'S MOTION FOR RELIEF PURSUANT TO**

  (1) **FEDERAL RULES OF CIVIL PROCEDURE RULE 59(E);**

  (2) **FEDERAL RULES OF CIVIL PROCEDURE RULE 60(E);**

  (3) **COURT'S INHERENT AUTHORITY TO GRANT RELIEF, INCLUDING DECLARATORY RELIEF UNDER 28 U.S.C. §§ 2201–2202**

</td></tr>
</table>

## MOTION FOR RELIEF PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 59(E) AND 60(B), AND UNDER THIS COURT'S INHERENT AUTHORITY TO GRANT RELIEF

Pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), and under this Court's inherent authority to grant relief, Michael Williams ("Mr. Williams" or "Movant") respectfully moves this Court for an Order striking, vacating, and otherwise declaring void and unlawful the ex parte Orders entered against Mr. Williams at Dockets 29 and 30 (the "Orders"). A memorandum in support will be submitted shortly thereafter. Due to the length of the memorandum, a summary of key arguments is presented within the motion. In support thereof, Mr. Williams states as follows:

# I  TABLE OF CONTENTS

**II**   **INTRODUCTION** .................................................................................................................. 3

**III**   **STATEMENT OF THE ISSUES** ......................................................................................... 5

**IV**   **FACTUAL AND PROCEDURAL BACKGROUND** ......................................................... 6

   A   OVERVIEW OF MR. WILLIAMS'S PROTECTED WHISTLEBLOWER ACTIVITY ........................ 6
   B   MR. WILLIAMS'S NUMEROUS FOIA REQUESTS AND THE FDIC'S RESPONSES ................... 6
   C   COMMUNICATIONS REFERENCED BY THE FDIC AND THE PURPORTED "THREATS" ............ 7
   D   THE ALLEGED EX PARTE PROCEEDINGS AND ENTRY OF THE ORDERS AT DKT. NOS. 29 & 30 .......... 7
   E   RETALIATION AGAINST MR. WILLIAMS AND CIRCUMVENTION OF PROPER FORUMS ........... 8
   F   THE FABRICATION/NEGLIGENT MISATTRIBUTION OF ALLEGED THREATENING MESSAGES ...... 8
   G   SPOLIATION AND ALLEGATIONS OF FDIC COUNSEL'S MISCONDUCT ................................. 9

**V**   **SUMMARY OF *MEMORANDUM OF POINTS AND AUTHORITIES* POINTS AS APPLICABLE TO THIS MOTION** ............................................................................................ 9

**VI**   **LEGAL STANDARDS** ...................................................................................................... 11

   A   RELIEF UNDER RULE 59(E) ................................................................................................ 11
   B   RELIEF UNDER RULE 60(B) ................................................................................................ 12
   C   DECLARATORY RELIEF AND THE COURT'S INHERENT AUTHORITY ................................... 13

**VII**   **SUMMARY OF ARGUMENT** ......................................................................................... 13

   A   THE COURT LACKED PERSONAL JURISDICTION OVER MR. WILLIAMS ............................... 13
       1   *No General Jurisdiction: Mr. Williams Is Not "At Home" in This District* ................. 14
       2   *No Specific Jurisdiction: No Purposeful Availment or Suit-Related Conduct* ............ 15
       3   *Improper Service of Process and the Jurisdictional Defects* ...................................... 16
   B   THE EX PARTE PROCEDURE VIOLATES DUE PROCESS AND RULE 65 .................................. 17
       1   *No Justification for Dispensing with Notice to Mr. Williams* ..................................... 17
       2   *The Orders Exceed Rule 65(d) and Bind a True Non-Party* ....................................... 18
       3   *Failure to Comply with Fed. R. Civ. P. 65(b)(1)(A)–(B) Requirements* ...................... 18
   C   THE FDIC CANNOT RELY ON THE ALL WRITS ACT TO CONFER JURISDICTION ................. 19
       1   *The All Writs Act Is Not an Independent Source of Jurisdiction* ............................... 19
       2   *No "Necessary or Appropriate" Basis Exists for Extraordinary Writs Here* ............. 19
   D   THE ORDERS VIOLATE THE "GOVERNMENT CONTACTS" EXCEPTION ............................... 20
   E   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE DISPUTE WITH MR. WILLIAMS .......... 20
       1   *No Supplemental Jurisdiction Under 28 U.S.C. § 1367* .............................................. 21
       2   *No Ancillary Jurisdiction Under Kokkonen or Peacock* ............................................. 21
       3   *All Writs Act Does Not Provide a Hook for Subject Matter Jurisdiction* .................. 21
   F   GROUNDS FOR RELIEF UNDER FED. R. CIV. P. 59(E) ......................................................... 22
       1   *Clear Error of Law: Lack of Jurisdiction and Due Process Violations* ...................... 22
       2   *Newly Discovered Evidence of Fabrication or Lack of Any Actual Threat* ................ 23
       3   *The Manifest Injustice of Maintaining Unlawful Ex Parte Orders* ............................ 23
   G   GROUNDS FOR RELIEF UNDER FED. R. CIV. P. 60(B) ......................................................... 23
       1   *Void Judgment Under Rule 60(b)(4)* ........................................................................... 23
       2   *Other Grounds for Relief: Mistake, Misrepresentation, or Misconduct* ..................... 24
       3   *Catch-All Under Rule 60(b)(6) for Extraordinary Circumstances* .............................. 25
   H   DECLARATORY RELIEF IS APPROPRIATE ........................................................................... 25
       1   *Ongoing Adverse Effects* ............................................................................................. 26
       2   *Interest in Clarifying Legal Relations* ........................................................................ 26
       3   *No Other Adequate Remedy* ........................................................................................ 26

**VIII**   **CONCLUSION** .................................................................................................................. 26

**IX**   **REQUEST FOR RELIEF** ................................................................................................. 27

April 28, 2025

## II  INTRODUCTION

Mr. Michael Williams respectfully moves this Court to strike, vacate, and declare void and unlawful the ex parte Orders entered at Docket Numbers 29 and 30 (the "Orders") that purport to enjoin or restrain Mr. Williams.  These Orders were issued against a non-party whistleblower with no notice, no service of process, and no jurisdictional or constitutional basis to support them.  In sum, the Orders violate multiple bedrock principles of due process and jurisdiction: (1) Mr. Williams was never a party to the underlying litigation, was never served, and did not consent to jurisdiction in the District of Columbia; (2) the Court lacked subject matter and personal jurisdiction over Mr. Williams because he has no contacts with this forum and is domiciled elsewhere; (3) the FDIC counsel's arguments relied on an impermissible ex parte application, without providing any plausible justification for bypassing standard notice requirements; (4) the All Writs Act does not supply new jurisdiction or authority to enjoin an out-of-forum non-party who was never properly brought before the Court; and (5) the Orders operate as a retaliatory measure to deter Mr. Williams's ongoing whistleblowing activity, including allegations of misconduct by certain FDIC attorneys.

Mr. Williams's motion proceeds under Federal Rules of Civil Procedure 59(e) and 60(b). Rule 59(e) authorizes a court to reconsider, alter, or amend its judgment (or, by extension, an order tantamount to a final injunction) upon a showing of manifest error, newly discovered evidence, or to prevent manifest injustice.  Here, the entire foundation of the Orders is built on factual misrepresentations and a disregard for fundamental jurisdictional and constitutional requirements, making clear that the Orders rest on manifest errors that must be corrected.

Rule 60(b) likewise allows relief from an order or judgment that is void, based on mistake or newly discovered evidence, or for "any other reason that justifies relief."  Mr. Williams avers that the Orders are void under Rule 60(b)(4) because the Court lacked personal jurisdiction over him, and because the FDIC attorneys obtained the Orders without affording him any due process.  Further,

April 28, 2025

newly revealed evidence suggests that alleged text messages or communications, claimed by FDIC counsel to be "threatening," did not originate from Mr. Williams and may have been fabricated or negligently misattributed.

Finally, because this Court cannot retroactively acquire subject matter or personal jurisdiction that was never validly established, declaratory relief is warranted to confirm that the Orders are invalid. Even if the Court were to attempt to cure the procedural and jurisdictional defects, it cannot salvage an order that was null *ab initio*. The better course is to strike and vacate the Orders in their entirety, thereby restoring the status quo, upholding due process, and allowing Mr. Williams to continue his lawful whistleblowing efforts without the stigma or burdens of an improper court directive.

In support, Mr. Williams incorporates the arguments set forth in the Memorandum of Points and Authorities filed contemporaneously and references the background provided in his motion to intervene (Dkt. No. 45) to show the retaliatory motive behind FDIC counsel's request for these ex parte restraints. The extraordinary circumstances of this case—where a non-party whistleblower is roped into proceedings without notice or service—demand the strongest possible remedy. The Court should vacate, declare the Orders void, and dismiss any further attempt to enjoin Mr. Williams absent proper service, personal jurisdiction, and compliance with due process.

Pursuant to **LCvR 7(m)** concerning meeting and conferring, Michael Williams contacted Counsel for plaintiffs and defendants to seek their opinion on this motion to intervene. Plaintiffs "take[] no position on [Mr. Williams'] motion." Defendant FDIC opposes Mr. Williams' motion.

Pursuant to **LCvR 7(f)**, Mr. Williams respectfully requests that the Court schedule a hearing on his motion for relief. An oral argument would facilitate a more thorough examination of the jurisdictional, procedural, and evidentiary issues related to the Orders.

April 28, 2025

### III  STATEMENT OF THE ISSUES

Mr. Williams acknowledges that a statement of issues is not typically included in a motion; however, due to the complexity of this filing, he has included the key question or law his motion raises.  The key issues are:

1. **Whether the Court should strike and vacate the ex parte Orders for lack of jurisdiction.** Mr. Williams was never a party to the underlying lawsuit, never served with process, and lacks any minimum contacts with this District.  The question is whether the Orders are void on this basis.

2. **Whether the ex parte Orders violate due process under Rule 65, the Constitution, and fundamental procedural norms.**  Mr. Williams received no notice or opportunity to be heard before an injunctive-type restraint was imposed on him.  The question is whether that lack of notice renders the Orders void or improper.

3. **Whether FDIC counsel's likely reliance on the All Writs Act or any other theory can confer jurisdiction or authority to enjoin a non-party whistleblower.**  The Court must determine if the All Writs Act, 28 U.S.C. § 1651, or any other basis can overcome the absence of personal jurisdiction and subject matter jurisdiction.  Precedent says it cannot.

4. **Whether the Orders must be vacated under Rule 60(b)(4) as void for want of personal jurisdiction, subject matter jurisdiction, and notice.**  A court order that issues absent personal jurisdiction and due process is a nullity, requiring vacatur.

5. **Whether declaratory relief is warranted to clarify that the Orders are invalid.** Considering the ongoing impact on Mr. Williams's whistleblowing activities, a declaratory judgment is appropriate to protect him from further retaliation or false claims of violating a court order he was never subject to.

April 28, 2025

## IV  FACTUAL AND PROCEDURAL BACKGROUND

The factual showing below underscores why the Orders are entirely without basis in law or fact.

### A  *Overview of Mr. Williams's Protected Whistleblower Activity*

Mr. Williams has engaged in whistleblowing against the Federal Deposit Insurance Corporation (FDIC) for more than eleven years.  During this period, he has made numerous protected disclosures regarding alleged misconduct, procedural improprieties, or other violations within the FDIC, including specific allegations against certain FDIC attorneys.  Over time, FDIC counsel in this matter—particularly Mr. Andrew Jared Dober—repeatedly requested to be copied on Mr. Williams's disclosures.   Consequently, Mr. Williams has kept him apprised of these FOIA-related or whistleblowing communications to maintain transparency

### B  *Mr. Williams's Numerous FOIA Requests and the FDIC's Responses*

For more than eighteen months, Mr. Williams has awaited responses to multiple FOIA requests submitted to the FDIC, several of which have been pending for over two years.  The FDIC has either failed to respond, issued complete denials, or relied on sweeping exemptions that, in Mr. Williams's view, lack legal basis.  He maintains that these FOIA requests seek documents relevant to substantiating his whistleblower claims.  Acting upon advice from Mr. Dober, the FDIC has sometimes declined even to conduct a proper search, repeatedly invoking broad statutory exemptions.

On January 18, 2025, Mr. Williams emailed FDIC attorneys, including Mr. Dober, seeking an update on these long-pending FOIA requests.  His messages referenced an unrelated lawsuit, *History Assocs. Inc. v. FDIC*, which Mr. Williams believed revealed misconduct and might bear on how the FDIC processes FOIA requests.  Nothing in these emails was threatening or harassing; they merely requested transparency and lawful compliance with FOIA, supported by evidence of alleged

wrongdoing by FDIC attorneys in prior or parallel matters. Mr. Williams included a link to a Twitter account he posts on, but does not own, (@FDIC_Exposed) on the "X" platform (formerly Twitter), detailing purported FDIC misconduct. Dkt No. 45, Exs. A-G.

### C  *Communications Referenced by the FDIC and the Purported "Threats"*

The ex parte Orders were purportedly based on "threatening text messages" that Mr. Williams allegedly sent to FDIC counsel or their family members. Mr. Williams categorically denies sending any such communications. He was never shown copies of the allegedly threatening texts, never served with any affidavit supporting their existence, and never given an opportunity to rebut the FDIC's claims. Instead, the FDIC presented its arguments to this Court orally and ex parte, presumably asserting an imminent threat. Mr. Williams believes these messages were either fabricated or mistakenly attributed to him, noting that (a) the alleged phone numbers likely do not match his, (b) the writing style is inconsistent with his documented communications, and (c) the FDIC has a motive to suppress or discredit him. *Id*.

### D  *The Alleged Ex Parte Proceedings and Entry of the Orders at Dkt. Nos. 29 & 30*

On January 22, 2025, FDIC counsel obtained an ex parte order enjoining Mr. Williams from contacting any FDIC attorneys. Mr. Williams was not served with a summons, a motion, writ, or any formal notice. He informally learned of these Orders only post-entry. The Court's Orders effectively prohibit Mr. Williams from communicating with FDIC counsel, even though those same attorneys had expressly requested to be included in his communications regarding alleged FDIC misconduct. The Orders restrict Mr. Williams's contact, impose an indefinite prohibition, and threaten sanctions for noncompliance. In Mr. Williams's view, as comprehensively outlined in his Memorandum of Points and Authorities, and summarized below, these Orders violate personal jurisdiction requirements, circumvent standard due process, and appear retaliatory. They also conflict

with Mr. Williams's right to petition the government, including his FOIA requests and protected whistleblower disclosures. *Id*.

### E   *Retaliation Against Mr. Williams and Circumvention of Proper Forums*

Mr. Williams perceives the ex parte Order as an effort to undermine his whistleblowing by forcing him to address unfounded allegations in a federal court that lacks personal jurisdiction.  If FDIC counsel genuinely believed they were threatened, they could have pursued standard remedies: filing police reports, seeking protective orders in the courts of their domicile, or initiating a criminal complaint if warranted.  Instead, by proceeding ex parte in a forum unconnected to Mr. Williams, they appear to have enlisted the federal judiciary to silence a critic.  Mr. Dober knows any investigation would realize that Mr. Williams did not send any threatening messages and that he would not meet the requisite standard of proof. The timing of the ex parte application coincides with Mr. Williams's intensifying whistleblowing efforts, including public statements that he intended to reveal evidence potentially implicating FDIC counsel, including those handling this matter, such as Mr. Dober, in serious misconduct.  Mr. Dober's knowledge and timing strongly suggest a retaliatory motive.

### F   *The Fabrication/Negligent Misattribution of Alleged Threatening Messages*

Mr. Williams observes that he was never served with the purported "threatening messages" or related exhibits.  He suspects these communications are contrived because: (1) the FDIC has previously withheld or misrepresented documents to impede his FOIA requests; (2) certain FDIC attorneys, including Mr. Dober, have reason to stop Mr. Williams from exposing alleged misconduct or insider trading (including their own); and (3) any legitimate digital forensics investigation of the messages would confirm that no such threats were sent by Mr. Williams, which he openly welcomes.

April 28, 2025

Rather than comply with such an investigation, FDIC counsel pursued ex parte relief, effectively curtailing Mr. Williams's communications. They also declined to provide phone numbers or message copies for verification.

### G  *Spoliation and Allegations of FDIC Counsel's Misconduct*

Previously, Mr. Dober allegedly thwarted Mr. Williams's request for a litigation hold, resulting in the spoliation of FDIC records that might have substantiated further misconduct. Although Mr. Williams specifically asked the FDIC to preserve relevant records, the agency's compliance came only after a significant delay and after other FDIC counsel intervened to instruct employees to preserve materials, by which time data had already been erased. *Id.* In addition, Mr. Williams recounts incidents where FDIC attorneys, guided by Mr. Dober, allegedly manipulated documents or employed overbroad bank-related exemptions to reject FOIA requests that could expose wrongdoing. Collectively, this pattern demonstrates strong incentives for certain FDIC counsel to suppress Mr. Williams's disclosures. The ex parte Orders now under challenge appear to be yet another means to block, discredit, or retaliate against him. *Id.*

## V  SUMMARY OF *MEMORANDUM OF POINTS AND AUTHORITIES* POINTS AS APPLICABLE TO THIS MOTION

Mr. Williams concurrently submits a memorandum in support of this motion ("Memo") addressing, among other topics:

1. **Personal Jurisdiction**: A court must have personal jurisdiction over any individual before issuing binding orders. *See* Memo §§ 4.1.1–4.1.2. Mr. Williams is not domiciled in the District of Columbia and lacks substantial contacts. He did not commit any acts in D.C.

April 28, 2025

related to these allegations.  Service of process is a prerequisite for personal jurisdiction.  As explained in Memo §§ 4.3 et seq., Mr. Williams was never served.

2. **Ex Parte Orders Under Rule 65**: The Supreme Court and Fed. R. Civ. P. 65 strongly disfavors ex parte restraining orders unless there is a proven emergency and notice is truly impossible.  *See* Memo §§ 4.2.1–4.2.2.  FDIC counsel did not submit the specific affidavit or demonstrate irreparable harm sufficient to justify denying notice.  Nor did they comply with the requirement in Rule 65(b)(1)(B) mandating an attorney certificate explaining why notice could not be given.  Memo § 4.2.3 clarifies that an injunction or TRO imposed on a non-party absent personal jurisdiction and due process is void.

3. **All Writs Act**: Memo § 4.4 explains that the All Writs Act cannot create jurisdiction where it does not otherwise exist.  The Act does not empower a court to issue indefinite or broad injunctions against non-parties who are not aiding or abetting a violation of an existing order.

4. **Government Contacts Exception**: Under D.C. law, contacting federal government agencies in D.C. is not "transacting business" for purposes of personal jurisdiction.  *See* Memo § 4.1.3. Even if Mr. Williams had emailed or called FDIC offices in D.C., that alone would not have created personal jurisdiction.

5. **Subject Matter Jurisdiction**: Memo § 4.5 demonstrates that no ancillary or supplemental jurisdiction extends to a separate dispute with a non-party whistleblower.  The FDIC's claims about Mr. Williams's communications do not share the same "common nucleus of operative fact" with the underlying lawsuit.  Thus, the Court cannot bootstrap Mr. Williams into this action under 28 U.S.C. § 1367.

Each of these legal principles compels the conclusion that the ex parte Orders were void ab initio.  Neither the Constitution, nor federal statutes, nor the Federal Rules, nor fundamental

April 28, 2025

fairness permits an out-of-forum, non-party whistleblower to be restrained without notice, service, or a factual hearing.

# VI  LEGAL STANDARDS

## A  *Relief Under Rule 59(e)*

Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Given the ongoing nature of the Order, there are persuasive arguments that it remains subject to challenge under Rule 59(e) or, alternatively, under the Court's general discretion to reconsider its orders.[1] Courts have inherent discretion to revisit injunctions or similar orders where there is "(1) an intervening change in the controlling law, (2) new evidence not previously available, or (3) [a] need to correct a clear error of law or prevent manifest injustice." *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks omitted).

---

[1] *See*, e.g., *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) (recognizing that courts retain continuing supervisory jurisdiction over injunctive decrees); *Sys.  Fed'n No. 91, Ry. Emps.' Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647–48 (1961) (holding that a court may revisit and adapt ongoing injunctions in light of changed circumstances); *Horne v. Flores*, 557 U.S. 433, 447 (2009) (reiterating that parties may challenge continuing injunctive orders when they become unjustified); *Benjamin v. Jacobson*, 172 F.3d 144, 161 (2d Cir. 1999) (en banc) (explaining that long-running injunctions in institutional reform remain subject to modification and ongoing judicial scrutiny); *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984) (observing that repeated extensions or renewals of preliminary injunctive relief allow for subsequent challenges); *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 885 (5th Cir. 1993) (permitting continued or renewed injunctions to be challenged on a post-judgment basis); *In re Exec. Office of President*, 215 F.3d 20, 24–25 (D.C. Cir. 2000) (recognizing the district court's authority to reassess the scope or validity of ongoing relief); *Armstrong v. Exec. Office of the President*, 1 F.3d 1274, 1289–90 (D.C. Cir. 1993) (same); *Flynn v. Veazey Constr. Corp.*, 424 F. Supp. 2d 24, 30 (D.D.C. 2006) (treating a reconsideration motion under Rule 59(e) as proper for revisiting injunctive orders with prospective effect); *Petties v. District of Columbia*, 662 F.3d 564, 568 (D.C. Cir. 2011) (acknowledging that modifying or dissolving ongoing injunctions remains within the district court's purview). *See also* 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2810.1 (4th ed. 2023) (noting that when an injunction or protective order continues in effect, a timely Rule 59(e) motion can be used to alter or amend the relief); 12 James Wm. Moore et al., *Moore's Federal Practice* ¶ 59.30 (3d ed. 2023) (discussing that renewal or extension of injunctive relief can reset the window for post-judgment motions).

April 28, 2025

Although typically invoked to modify judgments rather than ex parte TROs, a TRO or preliminary injunction that functionally resolves or significantly affects the rights of parties may, in certain contexts, be treated akin to a final judgment. Courts in this Circuit have recognized that if an order has a final, injunctive, or far-reaching effect, Rule 59(e) and related reconsideration rules may apply. Here, the Orders have effectively curtailed Mr. Williams's ability to communicate with FDIC attorneys regarding his FOIA matters and whistleblower activity. Thus, it is appropriate to proceed under Rule 59(e).

A Rule 59(e) motion is granted if the moving party can show a clear legal or factual error or new evidence bearing on the validity of the challenged order. Mr. Williams asserts that the ex parte Orders are rife with jurisdictional and constitutional defects, constituting "clear errors of law." Maintaining them perpetuates "manifest injustice" by restricting a non-party whistleblower's free-speech and due-process rights.

### B  *Relief Under Rule 60(b)*

Rule 60(b) provides that "on motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:" (1) Mistake, inadvertence, surprise, or excusable neglect (Fed. R. Civ. P. 60(b)(1)); (2) Newly discovered evidence that, with reasonable diligence, could not have been discovered in time (Fed. R. Civ. P. 60(b)(2)); (3) Fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party (Fed. R. Civ. P. 60(b)(3)); (4) "the judgment is void" (Fed. R. Civ. P. 60(b)(4)); (5) The judgment has been satisfied, released, or discharged (Fed. R. Civ. P. 60(b)(5)) (inapplicable here); and (6) "any other reason that justifies relief" (Fed. R. Civ. P. 60(b)(6)).

Subsection (b)(4) of Rule 60 mandates that a court set aside a final judgment if "the judgment is void." *See* Fed. R. Civ. P. 60(b)(4). A judgment (or order) is "void" if the issuing court lacked jurisdiction or if the proceeding was conducted in a manner inconsistent with due process of

April 28, 2025

law.  *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (explaining that a court's failure to comply with due process can render an order void).  Subsection (b)(6) is often referred to as the "catch-all" provision, reserved for "extraordinary circumstances."  Mr. Williams contends that the unusual posture here—an ex parte, injunctive-type order against a non-party whistleblower without service—constitutes an extraordinary circumstance warranting relief.

Because the Orders function as mandatory or prohibitory injunctions against Mr. Williams, they trigger Rule 60(b)'s protective scope.  The absence of due process in obtaining those Orders, particularly the total lack of notice or meaningful opportunity to respond, warrants immediate vacatur.

### C  *Declaratory Relief and the Court's Inherent Authority*
Although not always styled as a separate claim, courts have inherent power and discretion to declare the rights of parties when a live controversy exists.  *See* 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act).  A request for declaratory relief is especially apt where the orders in question impose continuing restraints or obligations on a non-party who challenges their legality.

Here, Mr. Williams seeks a declaration that, as a matter of law, these ex parte Orders are invalid for want of jurisdiction and due process.  Such a declaration clarifies Mr. Williams's legal status and ensures there is no risk of future contempt or infringement upon his constitutional rights.  Without a formal pronouncement that the Orders are void, Mr. Williams remains in a precarious position: the FDIC could threaten him with contempt for any contact it deems "violative," even though the Orders should never have been issued against him in the first place.

## VII  SUMMARY OF ARGUMENT
### A  *The Court Lacked Personal Jurisdiction Over Mr. Williams*
An essential tenet of American jurisprudence is that personal jurisdiction is a prerequisite for a valid adjudication.  As the Supreme Court has explained, "[p]ersonal jurisdiction, too, is 'an essential element of the jurisdiction of a district … court,' without which the court is 'powerless to

April 28, 2025

proceed to an adjudication.'" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quoting *Emp'rs Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)).   Federal Rule of Civil Procedure 4(k) ties personal jurisdiction in most federal cases to the forum state's long-arm statute and the constraints of due process.  Because Mr. Williams neither resides in nor conducted relevant acts in the District of Columbia—and was never served with any summons, writ, complaint, or other proper order—this Court never acquired personal jurisdiction over him.

Furthermore, service of process is indispensable for establishing personal jurisdiction in federal court.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350–51 (1999). Mr. Williams was not served with a summons, writ, or other process, was never named as a defendant, and did not voluntarily appear.  Consequently, the Court lacked authority to issue binding orders upon him.  The ex parte Orders are therefore void *ab initio*.

1    *No General Jurisdiction: Mr. Williams Is Not "At Home" in This District*

General jurisdiction is typically reserved for an individual's domicile or a corporation's place of incorporation or principal place of business.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  Mr. Williams is domiciled outside the District of Columbia, does not maintain a residence here, and lacks the "continuous and systematic" ties that would render him "at home" in D.C.  He is neither physically present nor residing in the District, and there is no evidence of any alter ego or extended presence that might trigger general jurisdiction.

Moreover, even if Mr. Williams occasionally communicated with government offices located in D.C., that alone cannot satisfy the rigorous standard for general jurisdiction.  Cf. *Burnham v. Superior Ct. of Cal.*, 495 U.S. 604, 610 n.1 (1990) (noting that transient presence may suffice if the defendant is physically served in the forum, which is not the case here).  The Supreme Court's decisions in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), and *Daimler*

April 28, 2025

confirm that general jurisdiction is strictly limited to a defendant's home base. That is not the District of Columbia for Mr. Williams.

### 2   *No Specific Jurisdiction: No Purposeful Availment or Suit-Related Conduct*

Specific jurisdiction generally requires that a defendant (1) "purposefully avail[] itself of the privilege of conducting activities within the forum State" and (2) engage in suit-related conduct sufficiently connected to the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). If a cause of action does not "…arise out of or relate to…" the defendant's in-forum conduct, or if the defendant's contact is insufficiently purposeful, then specific jurisdiction fails. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780–81 (2017).

None of the allegations regarding Mr. Williams show purposeful contact with the District of Columbia. Indeed, the FDIC's attorneys appear to be based in Virginia, and the alleged text messages (which Mr. Williams denies sending) were presumably received there. Any "harm," if it occurred, would likewise have been felt in Virginia. Moreover, Mr. Williams's FOIA requests targeted a federal agency—wherever that agency processes FOIA requests—and such "government contacts" cannot establish personal jurisdiction. *See Env't Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (en banc).

**a) Government Contacts Exception**

As detailed in Memo § 4.1.3, the District of Columbia's long-arm statute excludes from "transacting business" any contact that is solely with a federal agency. Non-residents do not subject themselves to D.C. jurisdiction merely by dealing with the federal government. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786 (D.C. Cir. 1983). Thus, Mr. Williams's alleged FOIA

April 28, 2025

requests or whistleblowing communications to the FDIC in D.C. cannot form a basis for specific jurisdiction.

**b) Lack of Minimum Contacts**

Even setting aside the government contacts exception, any minimal or incidental interactions Mr. Williams may have had do not rise to the level of "minimum contacts" under constitutional due process. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) (explaining that a defendant must create a substantial connection with the forum itself, not merely with persons who reside there). Mr. Williams did not direct threats or purposeful activity into D.C., nor did he sign a contract or conduct business there. Consequently, no basis exists for the Court's exercise of specific jurisdiction.

3   *Improper Service of Process and the Jurisdictional Defects*

The fundamental shortfall remains: Mr. Williams was never served with process, and no attempt to serve him is even alleged. Absent valid service (or waiver thereof), the Court cannot exercise personal jurisdiction. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). The FDIC apparently did not bring a third-party action or otherwise name Mr. Williams as a defendant; instead, it circumvented standard procedure by seeking ex parte relief. This contravenes the Supreme Court's holding that "before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Id*. at 104.

Because Mr. Williams was neither named nor served, the Orders impose in personam obligations on an individual completely outside this Court's lawful authority. *See Pennoyer v. Neff*, 95 U.S. 714, 733 (1878) (without personal service of process, or his voluntary appearance, the court does not acquire jurisdiction over the person). The resulting Orders are therefore void *ab initio*.

April 28, 2025

### B    *The Ex Parte Procedure Violates Due Process and Rule 65*

Even assuming arguendo that some colorable jurisdiction existed (it did not), the process by which the Orders were issued fails basic constitutional requirements of notice and an opportunity to be heard.  *See Mullane v. Cent.  Hanover Bank & Tr. Co.*, 339 U.S. 306, 313–14 (1950).  One of the most elementary principles of American law is that a court generally cannot bind a person by an order unless that person is given notice of the proceeding and a chance to contest it.

### 1    *No Justification for Dispensing with Notice to Mr. Williams*

The Federal Rules of Civil Procedure disfavor ex parte temporary restraining orders, requiring under Rule 65(b)(1)(A)–(B) that (1) a sworn affidavit include "specific facts in an affidavit or a verified complaint that clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (2) the movant's attorney certify "in writing any efforts made to give notice and the reasons why it should not be required." *See* Fed. R. Civ. P. 65(b)(1)(A)–(B).  FDIC counsel did not meet these requirements: they provided no detailed affidavit with the requisite "specific facts," nor did they certify any attempt to notify Mr. Williams or articulate why immediate contact was impossible.

The Supreme Court in *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 438–39 (1974), and *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 180 (1968), emphasized that ex parte injunctive relief is permissible only in the rarest of circumstances— specifically, where giving notice would defeat the very purpose of the injunction.  There are no facts or indications suggesting that warning Mr. Williams of an impending motion would spur him to destructive or violent acts.  FDIC counsel's allegations of "threats" were unverified, and proceeding ex parte was not the only method to address them.  The standard procedures of seeking protective orders in state court or contacting law enforcement were readily available.

April 28, 2025

2    *The Orders Exceed Rule 65(d) and Bind a True Non-Party*

Even if an injunction may be directed to certain non-parties under Fed. R. Civ. P. 65(d)(2)(C) (i.e., those "in active concert or participation" with a party), that provision does not apply to Mr. Williams. He is not acting in concert with an FDIC adversary; indeed, the FDIC is the defendant in the main case, and Mr. Williams was (and remains) wholly outside that dispute. As Judge Learned Hand explained, a court "cannot lawfully enjoin the world at large," but may only bind parties or those who aid or abet them in violating an injunction. *See Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930).

Here, the Orders effectively impose a no-contact order on a non-party for reasons unrelated to the main cause of action, thereby exceeding the permissible scope of Rule 65. Even if the FDIC labelled Mr. Williams an "interested person," that does not confer a general authority on this Court to regulate his speech or FOIA pursuits. *See Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945) (explaining that individuals unconnected to the enjoined conduct cannot be bound).

3    *Failure to Comply with Fed. R. Civ. P. 65(b)(1)(A)–(B) Requirements*

FDIC's counsel never provided any certification regarding notice or explained why it could not be given. They never established irreparable harm in the time it would take to notify Mr. Williams. They offered no evidence that Mr. Williams was about to do something irreversible if given minimal notice. The record is silent as to any attempt to email, call, or otherwise inform Mr. Williams, though FDIC plainly had his contact details from the very communications they found objectionable. This contravenes the letter and spirit of Rule 65(b).

As the Supreme Court observed, ex parte relief is an extraordinary measure. By circumventing the adversarial process entirely, FDIC counsel deprived Mr. Williams of the ability to rebut or clarify the alleged facts, resulting in one-sided, untested allegations. The Orders, therefore, run afoul of constitutional due process. *See Carroll*, 393 U.S. at 180–81.

April 28, 2025

C   *The FDIC Cannot Rely on the All Writs Act to Confer Jurisdiction*

Given the conspicuous lack of any ordinary statutory basis for personal or subject matter jurisdiction, the FDIC has attempted (or may attempt) to invoke the All Writs Act, 28 U.S.C. § 1651(a).  But as explained in Memo § 4.4, the All Writs Act is neither a jurisdictional statute nor a substitute for compliance with the Federal Rules.  *See Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999).

1   *The All Writs Act Is Not an Independent Source of Jurisdiction*

The Supreme Court in *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 31 (2002), reiterated that the All Writs Act "does not itself confer jurisdiction." Nor can it create personal jurisdiction that does not otherwise exist. Instead, it permits courts to issue orders "in aid of their respective jurisdictions" when that jurisdiction is validly established.  *See Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).

Because Mr. Williams has never been subject to this Court's jurisdiction—there was no service, no minimum contacts, and no anchoring claim—the All Writs Act cannot fill that gap.  Courts have repeatedly rejected efforts to use § 1651(a) as a means of bypassing otherwise mandatory jurisdictional requirements.

2   *No "Necessary or Appropriate" Basis Exists for Extraordinary Writs Here*

The All Writs Act, 28 U.S.C. § 1651, typically extends to preventing parallel state proceedings that threaten a federal court's judgments or to compelling third parties to aid a properly asserted federal jurisdiction.  Here, the FDIC points to no ongoing parallel action that might jeopardize this Court's authority.  Nor does it seek to protect an existing federal judgment. Instead, the FDIC simply wants to silence Mr. Williams because it alleges he is harassing them.  That is not a function of the All Writs Act.  *See*, e.g., *Clinton v. Goldsmith*, 526 U.S. 529, 537–38 (1999).

April 28, 2025

Other forums exist for the FDIC to address alleged threats or harassment, such as filing police reports or seeking protective orders in state courts. The FDIC instead pursued an ex parte federal route that contravenes well-established principles. This is not "necessary or appropriate" to vindicate the Court's existing jurisdiction but rather an overreach that creates new obligations on a non-party.

### D    The Orders Violate the "Government Contacts" Exception

Even if Mr. Williams had contacted the FDIC's Washington, D.C., office, or even FDIC employees who work or are domiciled in DC, the "government contacts" doctrine bars using such contact to establish personal jurisdiction. *See Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (en banc). The rationale is straightforward: the District's unique role as the seat of federal government should not automatically subject every individual who petitions or interacts with federal agencies to the jurisdiction of local courts. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786–87 (D.C. Cir. 1983).

Indeed, if Mr. Williams's only real link to the District was that the FDIC's headquarters or counsel happened to be located there, that does not meet the threshold for personal jurisdiction. The FDIC's unilateral presence in D.C. does not transform Mr. Williams's out-of-state actions into purposeful availment of District law. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

### E    This Court Lacks Subject Matter Jurisdiction over the Dispute with Mr. Williams

Subject matter jurisdiction is likewise lacking. The FDIC has not shown any federal claim to anchor the dispute over Mr. Williams's alleged communications, nor can it invoke diversity or supplemental jurisdiction.

Mr. Williams's conduct is separate from the central claims between the FDIC and the original plaintiff. Under 28 U.S.C. § 1367(a), supplemental jurisdiction extends only to claims so related to the main cause of action that they form the same "case or controversy" under Article III. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). A wholly independent dispute about

April 28, 2025

alleged threats or texts is not part of the underlying litigation.  *See*, e.g., *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994).

### 1  *No Supplemental Jurisdiction Under 28 U.S.C. § 1367*

Mr. Williams is not an impleaded party, or any type of participant in the underlying action. The FOIA or whistleblower issues with the FDIC are tangential, not derived from the same nucleus of operative fact as the original lawsuit.  The FDIC's ex parte injunction, if one can call it that, thus does not fall under the umbrella of supplemental jurisdiction.

### 2  *No Ancillary Jurisdiction Under Kokkonen or Peacock*

Nor can the FDIC rely on ancillary jurisdiction as recognized in *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 379–81 (1994), or *Peacock v. Thomas*, 516 U.S. 349, 354–55 (1996).  Ancillary jurisdiction typically covers either (1) enforcement of an already-rendered judgment against assets or (2) factually interdependent claims.  Mr. Williams's alleged out-of-forum communications do not fall within either category, as they are not essential to this Court's ability to adjudicate the underlying claim or to enforce any existing judgment.

### 3  *All Writs Act Does Not Provide a Hook for Subject Matter Jurisdiction*

As explained above, the All Writs Act, 28 U.S.C. § 1651, cannot create subject matter jurisdiction.  *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 31–33 (2002).  Even if FDIC counsel claimed that the ex parte relief was "in aid of" the Court's jurisdiction, this would be a misuse of the Act to address conduct that properly belongs in another forum—particularly state courts or local law enforcement—if actual harassment or threats occurred.

April 28, 2025

### F   Grounds for Relief Under Fed. R. Civ. P. 59(e)

A motion under Rule 59(e) may be granted if: (1) there is an intervening change in controlling law; (2) newly discovered evidence becomes available; or (3) there is a need to correct clear error or prevent manifest injustice.  *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  Mr. Williams relies on prongs (2) and (3).

### 1   Clear Error of Law: Lack of Jurisdiction and Due Process Violations

The Court's Orders suffer from a manifest legal defect: a total absence of personal jurisdiction.  Orders entered without personal jurisdiction are void.  *See Pennoyer v. Neff*, 95 U.S. 714, 733 (1878).  Moreover, FDIC's ex parte method deprived Mr. Williams of fundamental due process.  *See Mullane v. Cent.  Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  Maintaining these Orders without correction would perpetuate a clear error of law.

**a) Rule 65 Violations**

The Orders are akin to TROs or preliminary injunctions entered in contravention of Fed. R. Civ. P. 65(b)'s requirements.  This is an unambiguous procedural failing, also recognized by multiple Supreme Court precedents.  The continuing effect of the Orders underscores that it is no mere technical slip: Mr. Williams remains gagged from contacting FDIC attorneys, unable to follow up on his FOIA requests or whistleblowing disclosures.

**b) Constitutional Violations**

By blocking Mr. Williams's communications about matters of public concern (misconduct within a federal agency), the Orders also impinges on his First Amendment rights to petition the government for redress of grievances, further deepening the "clear error" that demands reconsideration.

April 28, 2025

2    *Newly Discovered Evidence of Fabrication or Lack of Any Actual Threat*

Mr. Williams contends that evidence is emerging that the alleged text messages or communications used to support the ex parte relief did not originate from him.  FDIC counsel's refusal to share the phone number or the content of these messages suggests they may not exist or are contrived.  If so, these new facts, which Mr. Williams could not have presented earlier because he was not even notified, further bolster the necessity of vacatur.

Under Rule 59(e), newly discovered evidence showing that the ex parte motion contained material falsehoods or was supported by contrived exhibits can serve as a valid ground for reconsideration.  A court should not maintain an order built on possible fraud or misrepresentation. *See, e.g., Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988) (acknowledging that newly discovered evidence of fabricated proof may justify reopening orders).

3    *The Manifest Injustice of Maintaining Unlawful Ex Parte Orders*

Finally, continuing to enforce or recognize these Orders creates an egregious injustice.  Mr. Williams is forced to refrain from contacting attorneys who themselves requested to be included on FOIA updates.  He is threatened with contempt in a forum that lacks personal jurisdiction.  This "manifest injustice" prong is precisely what Rule 59(e) was meant to remedy.  Cf. *Firestone*, 76 F.3d at 1208.

G    *Grounds for Relief Under Fed. R. Civ. P. 60(b)*

Mr. Williams separately and/or additionally invokes Rule 60(b), which allows a court to set aside an order for various enumerated reasons.  Several prongs of Rule 60(b) apply:

1    *Void Judgment Under Rule 60(b)(4)*

If a judgment (or injunctive order) is entered without personal jurisdiction or without due process, it is void.  *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).  As

April 28, 2025

the D.C. Circuit has recognized, a judgment rendered in the absence of personal jurisdiction is a legal nullity.  *See Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C. Cir. 1987).

Here, the ex parte Orders are clearly "void" because: (1) Mr. Williams was never served and thus never became subject to the Court's authority.  (2) This forum does not satisfy due process.  (3) Constitutional notice was not given before imposing a constraint on Mr. Williams, contravening Mullane.  (4) The court lacks subject matter jurisdiction.  (5) The Court never obtained personal jurisdiction over him.  (6) The orders were unlawful.

Orders that are void under these grounds "must be set aside," leaving no discretion to the court. *See* Fed. R. Civ. P. 60(b)(4) (case law uniformly states that void judgments must be vacated).

2    *Other Grounds for Relief: Mistake, Misrepresentation, or Misconduct*

Rule 60(b)(1) and (b)(3) each provide a basis for relief.  If FDIC counsel misled the Court with false statements about "threatening messages," that could constitute "misrepresentation or misconduct" by a party.  If the Court or FDIC counsel acted under the mistaken belief that Mr. Williams had been properly served or that the allegations were verified, that might warrant relief as well.

**a) Rule 60(b)(1) - Mistake**

The Court might have believed it had jurisdiction or that ex parte relief was warranted based on FDIC counsel's incomplete or incorrect representations.  This is precisely the type of "mistake" for which 60(b)(1) relief is designed.

**b) Rule 60(b)(3) - Misconduct or Misrepresentation**

April 28, 2025

If the FDIC or its counsel knowingly provided inaccurate or fabricated evidence to the Court to procure these Orders, that is "fraud" or "misrepresentation." Mr. Williams is entitled to relief on that ground, given that he avers that he did not send these messages.

### 3    *Catch-All Under Rule 60(b)(6) for Extraordinary Circumstances*

Rule 60(b)(6) provides relief for "any other reason that justifies relief," so long as that reason is not otherwise covered by subdivisions (b)(1) through (b)(5).    *See* Fed. R. Civ. P. 60(b)(6). Additionally, the Supreme Court has explained that courts may grant relief under Rule 60(b)(6) in "extraordinary circumstances." *See, e.g., Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988).  Mr. Williams's situation—being subject to an ex parte, indefinite, injunctive order as a non-party, never served or heard, in a forum that lacks personal jurisdiction—presents extraordinary facts.  Courts have consistently recognized that Rule 60(b)(6) is a last-resort vehicle to remedy fundamentally unjust scenarios. *See id.* at 863–64.

Here, there is no legitimate reason to keep in place an order with so many jurisdictional and procedural defects.  The totality of the circumstances demands that the Court exercise its power to set aside the Orders in the interest of justice.

### H    *Declaratory Relief Is Appropriate*

Mr. Williams also seeks a declaratory judgment that the ex parte Orders are invalid as against him.  Even if the Court concludes the Orders "should not have been issued," it is crucial to formally declare them void so that Mr. Williams is not left in a state of legal limbo.  The Declaratory Judgment Act, 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 authorizes such an order where it will terminate the controversy or remove the legal uncertainty facing the movant.

April 28, 2025

1   *Ongoing Adverse Effects*

The Orders remain on the docket, presumably enforceable.  If Mr. Williams attempts further whistleblower communications or FOIA follow-ups with FDIC counsel, he faces the specter of being held in contempt.  This chilling effect on his rights underscores the necessity of a clear judicial pronouncement that the Orders are void.

2   *Interest in Clarifying Legal Relations*

Federal courts often use declaratory relief to clarify the parties' rights and obligations, particularly where an injunctive order was improperly obtained.  A formal declaration here will provide certainty and preclude further retaliatory threats or spurious claims of violation.

3   *No Other Adequate Remedy*

Because the FDIC has shown a willingness to circumvent typical protective-order channels and legitimate state court avenues, Mr. Williams lacks a straightforward alternative remedy to expunge this false "court directive." A declaratory ruling from this Court is thus the most direct and effective means of relief.  Movant does not seek final judgment or complete disposition of the case currently.

## VIII   CONCLUSION

For all the reasons set forth above—and as further detailed in the attached *Memorandum of Points and Authorities*—the ex parte Orders at Docket Numbers 29 & 30 are improper, unlawful, and void.  The Court's lack of personal jurisdiction over Mr. Williams, the FDIC's failure to provide notice or due process, and the unscrupulous way these Orders were obtained collectively render them null ab initio.  Mr. Williams respectfully requests that this Court strike and vacate these Orders and declare them void.  He further requests that the Court admonish the FDIC that any future attempt to

April 28, 2025

restrain Mr. Williams's activities must proceed through a lawful and proper forum, with valid service and an opportunity to be heard.

Mr. Williams continues to stand ready to address any legitimate concerns the FDIC may have in the proper venue and context.  He has no desire to threaten or harass anyone; instead, his focus remains on lawful whistleblowing to expose wrongdoing within the FDIC.  If the FDIC truly believes there are any credible threats, they have ample remedies in the appropriate local jurisdiction.  But no branch of federal power, including this Court, should be hijacked to quash or retaliate against protected whistleblower activities via an ex parte proceeding lacking any basis in law or fact.

## IX   REQUEST FOR RELIEF

WHEREFORE, Mr. Williams respectfully requests that the Court grant the following relief:

1. **Vacate, Strike, and Declare Void the Orders at Docket Numbers 29 and 30** in their entirety, pursuant to Fed. R. Civ. P. 59(e) and/or 60(b), including any restraints directed at Mr. Williams.

2. **Issue a Declaratory Order** stating that the Court lacks personal jurisdiction over Mr. Williams, that the Orders were entered in violation of due process and without lawful authority, and that Mr. Williams is not bound by any terms therein.

3. **Order Additional Relief as the Court Deems Just and Proper**, including an award of Mr. Williams's costs and fees, if appropriate, related to bringing this motion, given the egregious violations of his rights.

4. **Admonish the FDIC** that any further attempts to restrain Mr. Williams must be done through proper legal channels—e.g., in the state courts of appropriate jurisdiction or through duly

served federal proceedings—without resort to ex parte measures that deny Mr. Williams notice and a hearing.

By granting the foregoing relief, this Court will rectify a serious violation of Mr. Williams's constitutional, statutory, and procedural rights, prevent ongoing harm to his whistleblowing activities, and reestablish the fundamental guarantees of due process that must guide every judicial proceeding. A proposed order is attached hereto in compliance with **LCvR 7(c)**.


Dated: April 28, 2025                                                Respectfully submitted,


                                                                     /s/ *Michael Williams*
                                                                     Michael Williams
                                                                     PRO SE