April 28, 2025

Michael Williams
PRO SE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **History Associates Incorporated**; <br><br> Plaintiff; <br><br> And <br><br> **Michael Williams**; <br><br> Plaintiff-Intervenor; <br><br> v. <br><br> **Federal Deposit Insurance Corporation**; <br><br> Defendant. | Case No. 1:24-cv-1857-ACR <br><br> **PLAINTIFF-INTERVENOR'S MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF PURSUANT TO** <br><br> **(1) FEDERAL RULES OF CIVIL PROCEDURE RULE 59(E);** <br><br> **(2) FEDERAL RULES OF CIVIL PROCEDURE RULE 60(E);** <br><br> **(3) COURT'S INHERENT AUTHORITY TO GRANT RELIEF, INCLUDING DECLARATORY RELIEF UNDER 28 U.S.C. §§ 2201–2202** |

## <u>MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 59(E) AND 60(B), AND UNDER THIS COURT'S INHERENT AUTHORITY TO GRANT RELIEF</u>

# Table of Contents

**4.1 THE COURT LACKS PERSONAL JURISDICTION OVER WILLIAMS** ........................ 6
  4.1.1 Constitutional Requirements of Due Process .............................................................. 6
    I. Introduction ................................................................................................................. 6
    II. Legal Standard ........................................................................................................... 6
    III. Williams Is Not Subject to General Jurisdiction ..................................................... 7
    IV. Williams Is Not Subject to Specific Jurisdiction .................................................... 8
    V. Conclusion ............................................................................................................... 11
  4.1.2 D.C. Long-Arm Statute and Federal Due Process ..................................................... 11
    I. Introduction ............................................................................................................... 11
    II. Legal Standard ......................................................................................................... 11
    III. Williams' Alleged Conduct Does Not Satisfy the D.C. Long-Arm Statute .......... 13
    IV. Even if the Long-Arm Statute Were Satisfied, Jurisdiction Would Violate Due Process ............... 14
    V. FDIC and Counsel's Presence or Activities in D.C. Cannot Confer Jurisdiction Over Williams ..... 15
  4.1.3 Government Contacts Exception ................................................................................ 17
    I. Introduction ............................................................................................................... 17
    II. Legal Standard ......................................................................................................... 18
    III. Williams' Only Contacts with D.C. Were through Federal Government Channels ... 19
    IV. The Government Contacts Exception Bars Personal Jurisdiction over Williams ........... 19
    V. Conclusion ............................................................................................................... 22

**4.2 Ex Parte Relief Improperly Issued if Not Impossible** ........................................... 22
  4.2.1. Introduction ............................................................................................................ 22
  4.2.2. Legal Standard ........................................................................................................ 23
    I. Ex Parte TROs .......................................................................................................... 23
    II. TRO Factors (Winter Standard) .............................................................................. 24
    III. Personal Jurisdiction and Due Process .................................................................. 25
  4.2.3. Argument ................................................................................................................. 26
    I. The TRO Is Void for Lack of Personal Jurisdiction over Williams. ........................ 26
    II. The Ex Parte TRO Violated Rule 65(b) and Due Process by Denying Williams Notice and an
    Opportunity to Be Heard. ............................................................................................. 27
    III. The TRO Cannot Be Sustained Under the Winter Factors .................................... 30
  4.2.4. Conclusion .............................................................................................................. 36

**4.3. SERVICE OF PROCESS WAS IMPROPER AND VIOLATED DUE PROCESS** ......... 37
  4.3.1. Introduction ............................................................................................................ 37
  4.3.2. Legal Standard ........................................................................................................ 37
    I. Personal Jurisdiction ................................................................................................ 37
    II. Ex Parte Orders, Notice, and Due Process .............................................................. 38
  4.3.3. Argument ................................................................................................................. 40
    I. The Court Lacks Personal Jurisdiction Over Williams ............................................ 40
    II. The Ex Parte Order Is Procedurally Improper and Violates Due Process ............... 42
  4.3.4. Conclusion .............................................................................................................. 45

**4.4. ALL WRITS ACT DOES NOT CONFER JURISDICTION AND IS NOT NECESSARY
HERE** ................................................................................................................................. 45
  4.4.1. Introduction ............................................................................................................ 45
  4.4.2. Legal Standard ........................................................................................................ 46
  4.4.3 Argument .................................................................................................................. 47
    I. The AWA Cannot Be Used to Skirt Rule 65 and Winter ......................................... 47
    II. The AWA Cannot Create Subject-Matter or Personal Jurisdiction ........................ 48
    III. The AWA Is Not "Necessary or Appropriate" in These Circumstances ............... 50
  4.4. Conclusion ................................................................................................................. 51

**4.5. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS SEPARATE
DISPUTE** ........................................................................................................................... 52
  4.5.1. Introduction ............................................................................................................ 52
  4.5.2. Legal Standard ........................................................................................................ 52
  4.5.3. Argument ................................................................................................................. 54
    I. No Supplemental Jurisdiction Exists Over Williams' Alleged Communications ..... 54

II. Williams' Conduct Does Not Fall Within Ancillary Jurisdiction .......................................................55
III. The AWA Confers No Independent Jurisdiction Over Williams .....................................................57
IV. Williams' Out-of-Forum Communications Are Not Part of the Original Controversy...................59
4.5.4. Conclusion ...........................................................................................................................................60

**4.6. The FDIC Bears the Burden of Establishing Jurisdiction and a Lawful Basis for Ex Parte
Relief ...........................................................................................................................................................61**
4.6.1 Legal Standard ......................................................................................................................................61
4.6.2 Argument ...............................................................................................................................................61
I. The FDIC Must Prove Subject-Matter Jurisdiction by a Preponderance of the Evidence ................61
II. The FDIC Must Prove Personal Jurisdiction Over Williams..........................................................62
III. The FDIC Must Meet the Heightened Burden for Ex Parte TROs Under Rule 65(b)....................62
4.5.3 Conclusion ............................................................................................................................................62

## Table of Authorities

**Cases**

*Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930) (Hand, J.)..................................44, 49

*Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34 (D.D.C. 2003)....................................13

*Baldwin-United Corp. v. PaineWebber, Inc.*, 770 F.2d 328 (2d Cir. 1985) ............................50

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175 (D.C. Cir. 2013) ...41

*Benjamin v. Travisono*, 495 F.2d 562 (1st Cir. 1974) .............................................................48

*Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998)..........................................................14

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)......................................................passim

*Burnham v. Superior Court of Cal.*, 495 U.S. 604 (1990)..........................................................7

*Candido v. District of Columbia*, 242 F.R.D. 151 (D.D.C. 2007)............................................41

*Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175 (1968)......................passim

*Catholic Conference v. Abortion Rights Mobilization*, 487 U.S. 72 (1988).............................49

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)......................................................................53

*Clinton v. Goldsmith*, 526 U.S. 529 (1999) ......................................................................passim

*Crane v. Carr*, 814 F.2d 758 (D.C. Cir. 1987) ..............................................................14, 15

*Daimler AG v. Bauman*, 571 U.S. 117 (2014).................................................................6, 7, 8

*Devlin v. Scardelletti*, 536 U.S. 1 (2002)................................................................................48

*Doe I v. State of Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005)........................................13, 19, 20

*Emp. Painters' Tr. v. Ethan Enters., Inc.*, 480 F.3d 993 (9th Cir. 2007) ................................38

*Env't Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808 (D.C. 1976) (en
      banc)................................................................................................................passim

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005)......................................54

*FC Inv. Grp.  LC v. IFX Mkts., Ltd.*, 529 F.3d 1087 (D.C. Cir. 2008) ................12, 13, 14, 41

*Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Ed. & Welfare*, 601 F.2d 199 (5th Cir. 1979).48

*Ford Motor Co. v. Montana Eighth Jud.  Dist. Ct.*, 141 S. Ct. 1017 (2021)...................7, 9, 10

*Fuentes v. Shevin*, 407 U.S. 67 (1972)............................................................................28, 29

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)............................6, 7

*Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423 (1974) ..........................passim

*Greene v. Lindsey*, 456 U.S. 444 (1982)................................................................................43

*GTE New Media Servs.  Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000)..........passim

*Hansberry v. Lee*, 311 U.S. 32 (1940)..............................................................................passim

*Hanson v. Denckla*, 357 U.S. 235 (1958) ..........................................................7, 8, 15, 16

*Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408 (1984) ................................14

*Hughes v. A.H. Robins Co.*, 490 A.2d 1140 (D.C. 1985) .......................................................13

*In re Est. of Ferdinand Marcos Human Rights Litig.*, 94 F.3d 539 (9th Cir. 1996)...............48

*In re Jimmy John's Overtime Litig.*, 877 F.3d 756 (7th Cir. 2017) ........................................48

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)..........................................................passim

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ..................................passim

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................61

*McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178 (1936) ....................................61, 62

*Milliken v. Meyer*, 311 U.S. 457 (1940) ...................................................................................7

*Mullane v. Cent.  Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ..................................passim

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) ...........................37

*Mwani v. Bin Laden*, 417 F.3d 1 (D.C. Cir. 2005)................................................................62

*N.Y. Times Co. v. United States*, 403 U.S. 713 (1971) (per curiam)......................................35

*Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983)..................................passim

*Nat'l Mediation Bd. v. Air Line Pilots Ass'n*, 323 F.2d 305 (D.C. Cir. 1963).......................22

*Nken v. Holder*, 556 U.S. 418 (2009) ...................................................................................47

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987)......................................37
*Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34 (1985)....................................passim
*Peacock v. Thomas*, 516 U.S. 349 (1996)..................................................53, 55, 56, 57
*Pennoyer v. Neff*, 95 U.S. 714 (1878) .....................................................................25, 38
*Regal Knitwear Co. v. NLRB*, 324 U.S. 9 (1945) .....................................................39, 44
*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126 (9th Cir. 2006)...........................22
*Richards v. Jefferson Cnty.*, 517 U.S. 793 (1996) ........................................................38
*Rose v. Silver*, 394 A.2d 1368 (D.C. 1978)..................................................................17
*Rosenboro v. Kim*, 994 F.2d 13 (D.C. Cir. 1993) .........................................................61
*Sampson v. Murray*, 415 U.S. 61 (1974) ....................................................................47
*Scardelletti v. DeBarr*, 265 F.3d 195 (4th Cir. 2001) ...................................................48
*Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223 (11th Cir. 2005) ............................48
*Siam Kraft Paper Co. v. Parsons & Whittemore, Inc.* 400 F. Supp. 810 (D.D.C. 1975) ........20
*Sniadach v. Family Fin. Corp.*, 395 U.S. 337 (1969)......................................................28
*Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28 (2002).......................................passim
*Taylor v. Sturgell*, 553 U.S. 880 (2008)......................................................................38
*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)..................................53, 54, 55
*United States v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995) ................................................12
*United States v. New York Tel. Co.*, 434 U.S. 159 (1977) ........................................51, 58
*Walden v. Fiore*, 571 U.S. 277 (2014)...........................................................9, 10, 15, 16
*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).........................passim
*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).......................9, 10, 12, 17
*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100 (1969)..................................26

**Statutes**
28 U.S.C. § 1367......................................................................................52, 54, 55
28 U.S.C. § 1367(a) ........................................................................................53, 54
28 U.S.C. § 1367(c) ...............................................................................................53
All Writs Act ("AWA"), 28 U.S.C. § 1651(a)..........................................................passim
Anti-Injunction Act, 28 U.S.C. § 2283 ......................................................................58
D.C. Code § 13-422 ...............................................................................................12
D.C. Code § 13-423 ..........................................................................................11, 14
D.C. Code § 13-423(a)(1)...............................................................................12, 13, 18
D.C. Code § 13-423(a)(3) .......................................................................................14
D.C. Code § 13-423(a)(4).....................................................................................12, 14
D.C. Code § 13-423(b)......................................................................................14, 18

**Other Authorities**
11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2951 (3d ed. 2023)..........23

**Rules**
Fed. R. Civ. P. 65................................................................................................passim
Fed. R. Civ. P. 65(a)(1)..........................................................................................38
Fed. R. Civ. P. 65(b)...........................................................................................passim
Fed. R. Civ. P. 65(b)(1).................................................................................23, 24, 62
Fed. R. Civ. P. 65(b)(1)(A)..........................................................................28, 32, 39
Fed. R. Civ. P. 65(b)(1)(B)....................................................................28, 33, 39, 43
Fed. R. Civ. P. 65(b)(2)......................................................................................39, 47
Fed. R. Civ. P. 65(d)......................................................................................25, 39, 44
Fed. R. Civ. P. 65(d)(2)..................................................................................26, 39, 44

April 28, 2025

## 4.1 THE COURT LACKS PERSONAL JURISDICTION OVER WILLIAMS

### 4.1.1 Constitutional Requirements of Due Process

*I. Introduction*

The Court lacks personal jurisdiction over Defendant Williams in this case.  Under the Due Process Clause of the Fourteenth Amendment, a court may not enter a binding judgment against an out-of-state defendant unless that defendant has sufficient contacts with the forum. Williams has no meaningful contacts with this forum.  For the Court to assert jurisdiction over him would violate the "traditional notions of fair play and substantial justice" that due process protects.  Accordingly, Williams should be dismissed from this action due to a lack of personal jurisdiction.

*II. Legal Standard*

To exercise personal jurisdiction over a non-resident defendant, a plaintiff must show that the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  As the Supreme Court explained:

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

*Id.* at 316.

Thus, when a defendant is not physically present in the forum, due process requires a substantial connection between the defendant and the forum before jurisdiction is proper. There are two forms of personal jurisdiction: general and specific.  General jurisdiction permits a court to hear any claim against a defendant, but only when the defendant's connections to the forum "are so continuous and systematic as to render [it] essentially at home." See *Daimler AG v. Bauman*, 571 U.S. 117 (2014) (internal quotation marks omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  For an individual, the paradigm

April 28, 2025

forum for general jurisdiction is the individual's domicile. See *Milliken v. Meyer*, 311 U.S. 457 (1940) (holding that "[d]omicile in the state is alone sufficient" to establish general personal jurisdiction). By contrast, specific jurisdiction allows a court to hear only those claims "that arise out of or relate to the defendant's contacts with the forum." See *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021). Accordingly, an act or transaction within the forum must directly connect to the lawsuit; if the cause of action is unrelated to the defendant's forum activities, specific jurisdiction is lacking. *Id.* at 1026.

Whether asserting general or specific jurisdiction, a court's exercise of jurisdiction must comport with due process, thereby satisfying the requirement of "fair play and substantial justice." See *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). For specific jurisdiction, the inquiry involves a two-part test: (1) the defendant must have purposefully established minimum contacts with the forum, thereby "purposefully avail[ing] itself of the privilege of conducting activities within the forum State," and (2) the plaintiff's claim must arise out of or relate to those forum contacts. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235 (1958)). If these conditions are met, the court then considers whether exercising jurisdiction would be consistent with "fair play and substantial justice," evaluating various reasonableness factors. *Id.* at 476–77.

In contrast, general jurisdiction does not require that the claims arise from or relate to the defendant's forum activities; instead, it demands that the defendant's contacts with the forum be so "continuous and systematic" as to render it essentially "at home" in the forum. *Daimler*, 571 U.S. at 127 (quoting *Goodyear*, 564 U. S. at 919).

### III. Williams Is Not Subject to General Jurisdiction

Williams is not subject to general (all-purpose) jurisdiction in this forum because he is not "at home" here. General jurisdiction over an individual typically exists only in the state of his domicile or when he is personally served while physically present in the forum. Cf. *Burnham v. Superior Court of Cal.*, 495 U.S. 604 (1990). Williams is neither domiciled in this

state nor served here, and he has no residence, office, or continuous business presence in the forum. Accordingly, Williams lacks the "continuous and systematic" connections that would render him "at home." See *Daimler AG v. Bauman*, 571 U.S. 117 (2014).

Because Williams lacks pervasive ties to the state, the Court cannot exercise general jurisdiction consistent with due process. Haling a nonresident into court without robust forum contacts would violate the principle that a defendant must have a genuinely enduring relationship with the state to be subject to all-purpose jurisdiction. See *id.* at 137. Williams plainly does not meet that standard.

### IV. Williams Is Not Subject to Specific Jurisdiction

Nor can the Court exercise specific (case-linked) jurisdiction over Williams, because he lacks the required minimum contacts with this forum and haling him into court here would offend fair play and substantial justice. The record reveals no act by Williams purposefully directed toward this state giving rise to the claims. Absent purposeful, forum-focused conduct, the Constitution forbids subjecting him to this Court's authority.

### 1. No Purposeful Availment – Lack of Minimum Contacts

For specific jurisdiction, the cornerstone is "purposeful availment"—the defendant must have "deliberately" created contacts with the forum state such that it could reasonably anticipate being sued there. See *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). As the Court in *Hanson* explained, "the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State," and "there [must] be some act by which the defendant purposefully avails itself of the privilege of conducting activities" in the forum. *Id.* In other words, the defendant himself must establish a substantial connection; random or fortuitous contacts initiated by others will not suffice. See *id.*

April 28, 2025

The Supreme Court has repeatedly emphasized that a defendant may not be haled into a jurisdiction based on "random," "fortuitous," or "attenuated" contacts, or solely due to "the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citation omitted).  Likewise, in *World-Wide Volkswagen Corp. v. Woodson*, the Court explained that mere foreseeability of a product or incidental contact reaching the forum is insufficient: "the foreseeability that is critical to due process analysis is . . . that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." 444 U.S. 286, 297 (1980).  As the Court more recently stated, "the plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Applying these principles here, Williams has not purposefully availed himself of the benefits and protections of this forum.  He has no operations, property, or ongoing contractual obligations in the state.  No evidence suggests Williams "deliberately" engaged in significant activity within this State or created "continuing obligations" with its residents.  See *Burger King*, 471 U.S. at 475–76.  Any connection between Williams and this forum is incidental, arising from the acts of others, not from his own.  Having failed to establish minimum contacts, he "has no reason to expect to be haled before a [forum State] court." *World-Wide Volkswagen*, 444 U.S. at 297.  Specific jurisdiction also requires that the plaintiff's claims "arise out of or relate to" the defendant's conduct within the forum.  *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021).  Even if Williams had limited contacts with the state, the court's authority would extend only to issues stemming from those contacts.  *Id.* at 1026.  Here, the events giving rise to the plaintiff's claims occurred outside this forum; the complaint does not allege any action by Williams in or directed at this state.  Consequently, the plaintiff's causes of action do not "derive from, or connect with," any forum-related activities

of Williams.  *Id.* at 1025–26.  The Supreme Court has made clear that simply residing in a forum or experiencing consequential harm there is not sufficient to establish personal jurisdiction over a nonresident defendant.  *See Walden v. Fiore*, 571 U.S. 277, 284–85 (2014).

### 2. Claims Do Not Arise from Forum Contacts

Specific jurisdiction also requires that the FDIC's claims "arise out of or relate to" Williams' conduct within the forum.  *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021).  Even if Williams had limited contacts with the state, the court's authority would extend only to issues stemming from those contacts.  *Id.* at 1026.  Here, the events giving rise to the FDIC's claims occurred outside this forum; the complaint does not allege any action by Williams in or directed at this state.  Consequently, the FDIC's causes of action do not "derive from, or connect with," any forum-related activities of Williams.  *Id.* at 1025–26.  The Supreme Court has made clear that simply residing in a forum or experiencing consequential harm there is not sufficient to establish personal jurisdiction over a nonresident defendant.  *See Walden v. Fiore*, 571 U.S. 277, 284–85 (2014).

### 3. Exercising Jurisdiction Would Offend Fair Play and Substantial Justice

Even if some minimum contact existed (which it does not), subjecting Williams to jurisdiction here would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Once minimum contacts are disputed, courts evaluate whether exercising jurisdiction is fair and reasonable under several factors, including: (1) the burden on the defendant [Williams]; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining effective relief; (4) the interstate judicial system's interest in efficient resolution, and (5) the shared interest of the states in furthering fundamental social policies. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).  These considerations strongly favor Williams, who has minimal ties to the forum.  Compelling him to travel and defend himself here would be unduly burdensome.

April 28, 2025

Further, the forum's interest in adjudicating this matter is limited, given the out-of-state nature of Williams' alleged conduct. Neither FDIC's convenience nor forum preference can override Williams' due process rights. Finally, principles of interstate federalism counsel against an expansive exercise of jurisdiction over an out-of-state defendant who has not purposefully availed himself of this forum.

## V. Conclusion

Williams has not purposefully established contacts with this forum, and the causes of action do not arise from any forum-related conduct. Exercising personal jurisdiction over him would therefore violate the constitutional "minimum contacts" requirement and would not comport with fair play and substantial justice. Because this Court lacks both general and specific jurisdiction over Williams, the orders against him must be vacated. The Court should respectfully grant his motion for relief.

## 4.1.2 D.C. Long-Arm Statute and Federal Due Process

### I. Introduction

Williams respectfully submits that this Court lacks personal jurisdiction over him under both the District of Columbia's long-arm statute, *D.C. Code* § 13-423 (2021), and federal due process. Williams neither resides nor conducts business in the District of Columbia, and he has not purposefully directed any relevant activities at D.C. As such, his alleged contacts fail to satisfy the statutory requirements for specific jurisdiction; even if those requirements were somehow met, subjecting him to suit here would violate constitutional due process.

### II. Legal Standard

To establish personal jurisdiction over a nonresident, a two-step analysis applies: (1) the defendant's conduct must fall within the District's long-arm statute, and (2) exercising jurisdiction must comport with the Due Process Clause's "minimum contacts" requirement.

---

*See United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347–48 (D.C. Cir. 2000). Under D.C. law, general jurisdiction is available only for persons "domiciled in, organized under the laws of, or maintaining [a] principal place of business in, the District of Columbia" (or who are served with process here). D.C. Code § 13-422. Specific jurisdiction may exist if the claim for relief arises from the person's forum-related acts, such as "transacting any business in the District" or "causing tortious injury in the District by an act or omission outside the District" coupled with other persistent contacts. D.C. Code § 13-423(a)(1), (4). Even when the statutory criteria are met, the Constitution separately requires that a defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Stated differently, the defendant's conduct and connection to the forum must be such that "he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Absent these minimum contacts, the court cannot exercise personal jurisdiction consistent with due process. The D.C. Circuit has emphasized that the statutory reach requires proof that "the defendant purposefully established minimum contacts with the District," and that such contacts "arise from" the claims at issue. *See FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1091–93 (D.C. Cir. 2008).

Significantly, the burden of establishing personal jurisdiction (typically borne by the plaintiff or movant) includes presenting a factual basis for it when challenged. *See, e.g., Id.* at 1087, 1091 ("[A] plaintiff must allege specific acts connecting the defendant with the forum" to establish jurisdiction). Without a prima facie showing of both statutory and constitutional grounds for jurisdiction, the court must dismiss or refuse to enforce orders against that defendant. No such factual basis appears in this record.

Moreover, "[i]f the [long-arm] statutory requirements are not met, the court lacks personal jurisdiction," notwithstanding any separate constitutional considerations. *See GTE New Media*, 199 F.3d.  While the D.C. Court of Appeals interprets § 13-423 "to provide jurisdiction to the full extent permissible under the Due Process Clause," *see Hughes v. A.H. Robins Co.*, 490 A.2d 1140, 1148 (D.C. 1985), the statutory grounds themselves must still be satisfied. *See Doe I v. State of Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005).

*III. Williams' Alleged Conduct Does Not Satisfy the D.C. Long-Arm Statute*
A. No Transaction of Business Within D.C.

Williams has not transacted any business within the District sufficient to satisfy D.C. Code § 13-423(a)(1).  Courts have consistently held that "transacting business" requires "some affirmative act by which the defendant deliberately directed its efforts toward the District." *See FC Inv. Grp.  LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1092 (D.C. Cir. 2008) (interpreting transacting business).  Here, the record is devoid of any evidence that Williams conducted or solicited business in D.C.  Rather, his activities occurred exclusively outside the District, including all alleged communications with counsel located in Virginia.  Such conduct does not constitute purposeful availment of the District's markets, laws, or protections. *Cf. Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 43 (D.D.C. 2003) (requiring that a defendant "seek out" or otherwise engage the forum).  If the statutory elements of personal jurisdiction are satisfied, the court must then assess whether the defendant's forum contacts meet the constitutional minima set forth by the Supreme Court. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Consequently, even if a nonresident's conduct arguably fits a prong of § 13-423, a court cannot constitutionally exercise jurisdiction absent these requisite minimum contacts. *See GTE New Media*, 199 F.3d at 1351 (explaining that the statute remains subject to the constraints of constitutional due process).

## B. No Tortious Act Causing Injury in D.C.

Williams' alleged conduct likewise fails to trigger personal jurisdiction under § 13-423(a)(3) or (a)(4). Subsection (a)(3) requires that the tortious act or omission itself occur "in the District," which undisputedly did not happen here. *See* D.C. Code § 13-423(a)(3). Subsection (a)(4) applies only to out-of-state acts that cause tortious injury in D.C., but then the defendant must have additional ties to the District beyond that single act, such as regularly doing business or engaging in a persistent course of conduct. *See* D.C. Code § 13-423(a)(4); *Blumenthal v. Drudge*, 992 F. Supp. 44, 54 (D.D.C. 1998). No such continuing or systematic connections exist in Williams' case. Consequently, none of the enumerated grounds in § 13-423(a) apply, and the claims do not "arise from" any act by Williams in the District, as required by § 13-423(b) . *Cf. Crane v. Carr*, 814 F.2d 758, 763–64 (D.C. Cir. 1987) (emphasizing the need for a "direct nexus" between the defendant's D.C. contacts and the cause of action). Because these statutory provisions constitute the sole avenues for specific personal jurisdiction over a nonresident, and Williams does not meet any of them, D.C. Code § 13-423 provides no jurisdictional basis here. *See FC Inv. Grp.*, 529 F.3d at 1091 (stating that if the statutory criteria are unmet, the court lacks authority to proceed).

## IV. Even if the Long-Arm Statute Were Satisfied, Jurisdiction Would Violate Due Process

Even assuming, arguendo, that Williams' conduct could somehow fit within the literal terms of § 13-423, subjecting him to suit in D.C. would violate the Fifth Amendment. The Supreme Court has long held that due process requires "minimum contacts" with the forum such that maintenance of the suit would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This standard ensures that the defendant's own intentional activities connect him to the forum, rather than "the unilateral activity of another party or a third person." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 417 (1984).

Here, Williams did not purposefully direct any conduct toward the district. *Cf. Walden v. Fiore*, 571 U.S. 277, 285 (2014). The alleged communications took place between Williams' overseas location and counsel in Virginia. The mere fact that the FDIC is headquartered in D.C. does not establish a constitutionally sufficient nexus. *See id.* at 289 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). The D.C. Circuit has likewise cautioned against conflating plaintiffs' forum connections with a defendant's lack thereof. *See GTE New Media*, 199 F.3d. Thus, even if Williams' activities indirectly impacted D.C., there is no showing that he expressly targeted or availed himself of this forum's benefits.

## V. FDIC and Counsel's Presence or Activities in D.C. Cannot Confer Jurisdiction Over Williams

Finally, the mere fact that the FDIC or its attorneys are located in Washington, D.C., does not impute forum contacts to Williams. As the Supreme Court explained in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), personal jurisdiction depends on the defendant's "purposeful availment" of the forum. That requirement cannot be met by the "unilateral activity" of others. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Consequently, if FDIC counsel chose to work from Washington, D.C., or if they were in Washington, D.C., when they allegedly received these text messages or emails, that unilateral decision does not create the requisite "minimum contacts" for Williams. Likewise, whether Williams obtains counsel in D.C. is irrelevant; a party's choice of lawyer or counsel's location cannot supply otherwise-lacking forum contacts. *Cf. Crane v. Carr*, 814 F.2d 758, 762–63 (D.C. Cir. 1987) (holding that jurisdiction depends on the defendant's contacts with the forum, not the plaintiff's or a third party's acts).

To hold otherwise would allow a plaintiff (or a nonparty) to manipulate forum choice based on the location of an attorney or agency office, rather than a defendant's own forum-directed acts. *Cf. Walden v. Fiore*, 571 U.S. 277, 290 (2014) (reiterating that a defendant's

"relationship with a plaintiff or third party" cannot form the defendant's minimum contacts with the forum). Thus, regardless of the FDIC's presence in Washington, D.C., Williams cannot be haled into a D.C. court absent purposeful, suit-related contacts of his own.

Any tenuous connection between Williams and the District of Columbia exists only due to the unilateral actions of other parties—not because of anything Williams did. It is well settled that "the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson*, 357 U.S. at 253. A party cannot manufacture jurisdiction over a nonresident respondent merely by moving to the forum or by invoking third-party conduct within the forum. As the Supreme Court has made clear, "the plaintiff cannot be the only link between the defendant and the forum"; what matters is the defendant's own contacts with the forum itself, not contacts with a forum resident. *See GTE New Media*, 199 F.3d at 1349–50. Here, the only asserted ties between Williams and D.C. arise from actions and decisions outside his control.

To the extent the FDIC or its attorneys reside in D.C. or experienced harm in D.C., that is purely a result of the FDIC's own unilateral choice to maintain an office or presence in the District. Such a fortuity does not create jurisdiction over Williams. *Id.* The D.C. Circuit follows the rule that a plaintiff's presence in the forum and the location of the plaintiff's injury cannot confer jurisdiction absent the defendant's purposeful conduct directed at the forum. *Id.* The mere fact that the FDIC felt the effects of the alleged wrongdoing in D.C. (e.g., reputational harm) is insufficient under due process, because Williams did not direct his actions toward D.C. with the knowledge or intent of causing injury there. *See Walden*, 571 U.S. at 290.

If any third party carried out D.C.-based activities related to this case, those acts cannot be attributed to Williams for jurisdictional purposes. For instance, if a co-defendant or independent entity published information in D.C. or transmitted material to D.C. recipients, such unilateral third-party conduct does not establish any deliberate choice by Williams to

engage with the forum. Courts in this District have declined to exercise jurisdiction when the forum contact stemmed from a third party's intervening actions rather than the defendant's own direct efforts. Unilateral actions by others—whether by the plaintiff, a government agency, or another third party—cannot create the "minimum contacts" that due process requires of the defendant. *See GTE New Media*, 199 F.3d at 1348–50.

In short, Williams' lack of forum contacts cannot be cured by pointing to the fortuitous presence of the plaintiff or a third party in D.C. The Constitution demands that jurisdiction be based on Williams' own deliberate connection to the forum, and here there is none. Allowing jurisdiction in this scenario would mean that nearly any defendant could be forced to litigate in D.C. whenever a plaintiff or third party unilaterally decides to bring some aspect of a dispute into the District—a result at odds with decades of personal jurisdiction jurisprudence. *Id.* at 1349 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Because Williams never undertook any action to purposefully avail himself of D.C., exercising jurisdiction over him would violate due process. The "minimum contacts" necessary to justify jurisdiction are plainly lacking.

## 4.1.3 Government Contacts Exception
### I. Introduction

Respondent Williams respectfully contends that this Court lacks personal jurisdiction over him under District of Columbia law's "government contacts" exception. In the District of Columbia, nonresidents do not subject themselves to local jurisdiction merely by entering Washington, D.C. to deal with federal government entities. *See, e.g., Env't Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (en banc). Courts have long recognized that such government contacts—for example, meeting with federal officials or participating in federal programs—cannot establish the "transacting business" predicate for personal jurisdiction in D.C. *See Rose v. Silver*, 394 A.2d 1368, 1374 (D.C. 1978); *see also Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786 (D.C. Cir. 1983). Here, the only alleged

ties between Williams and the District of Columbia arise from his contacts with federal government agencies in D.C. Because those activities fall squarely within the government contacts exception, they cannot confer personal jurisdiction over Williams in this forum.

*II. Legal Standard*

Personal jurisdiction in the District of Columbia hinges on both the D.C. long-arm statute and constitutional due process. Under D.C.'s long-arm statute, a court may exercise specific jurisdiction over a nonresident who "transact[s] any business in the District of Columbia," provided the claim arises from that business. *See* D.C. Code § 13-423(a)(1), (b). However, the D.C. Court of Appeals has explicitly held that certain activities are categorically excluded from qualifying as "transacting business" in D.C.—namely, a nonresident's contacts with federal government agencies in Washington. This rule, known as the government contacts exception, provides that "entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction." *Env't Research*, 355 A.2d at 813. First articulated in 1945 and reaffirmed en banc in *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, *id.*, the government contacts doctrine remains a "long-standing and still vital" principle of D.C. law. *See id.* at 812.

The rationale behind the government contacts exception lies in the unique role of Washington, D.C. as the nation's capital and the need to protect citizens' unfettered access to their government. *See id.* at 813. The D.C. Court of Appeals has explained that permitting local courts to assert jurisdiction over nonresidents "whose sole contact with the District consists of dealing with a federal instrumentality" would not only chill "free public participation in government" but also risk converting D.C. into a "national judicial forum" for all disputes touching the federal government. *Id.* Indeed, subjecting individuals to suit in D.C. based solely on lobbying, meeting with federal officials, or other governmental contacts would impose an "impermissible burden on the First Amendment right … to petition the Government

for a redress of grievances." *Id.* In keeping with that logic, D.C. courts and the U.S. District Court for the District of Columbia have consistently held that "certain contacts with the federal government—such as meeting with federal officials in Washington, D.C. or receiving federal funding—are insufficient to establish personal jurisdiction." *See, e.g., Doe I v. State of Israel*, 400 F. Supp. 2d 86, 119 (D.D.C. 2005); *see also Naartex Consulting*, 722 F.2d at 787. Only if a defendant maintains other, non-governmental contacts with D.C. (such as a private business presence or conduct purposefully directed at the District's private residents) might personal jurisdiction potentially be found. Whereas here, the defendant's only ties to D.C. constitute "uniquely governmental" activities, the government contacts exception plainly applies. *See Env't Research*, 355 A.2d at 813.

### III. Williams' Only Contacts with D.C. Were through Federal Government Channels

It is undisputed that Williams is not a D.C. resident and has no business or personal presence in the District beyond his dealings with the federal government. The Respondent's alleged contacts—communications and petitions directed to federal officials—fall squarely within the government contacts exception. He maintains no offices in D.C., solicits no business from its residents, and engages in no commercial transactions within the District. His interactions, including emails related to FOIA requests, were exclusively aimed at seeking governmental action, a "textbook application" of protected activity. These interactions were purely federal in nature, undertaken to petition or obtain input from U.S. government entities, rather than to "purposefully avail[] [him]self of the privilege of conducting activities within" the District's private or commercial sphere. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In short, the only D.C. contacts attributable to Williams are government contacts.

### IV. The Government Contacts Exception Bars Personal Jurisdiction over Williams

Because Williams' contacts with the District consist exclusively of communications and dealings with the federal government, those contacts cannot support personal jurisdiction

as a matter of D.C. law.  *See Env't Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (en banc); *see also Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786–87 (D.C. Cir. 1983).  The D.C. Court of Appeals' en banc decision in *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.* is directly on point.  There, out-of-state defendants sent representatives to Washington, D.C. to confer with a federal agency (the EPA) regarding a potential government grant.  *See Env't Research*, 355 A.2d at 809.  The court held that such limited visits fell "beyond the permissible reach of the long-arm statute" because they were made solely to contact a federal instrumentality.  *Id.* at 811–12.  Reaffirming the fundamental rule that "contacts with federal governmental agencies do not constitute the transaction of business within the meaning of the statute," the court noted that absent some other, non-governmental business activity in D.C., "no personal jurisdiction may be asserted" over a nonresident defendant who "merely dealt with the federal government." *Id.* at 813.  Likewise, in *Siam Kraft Paper Co. v. Parsons & Whittemore, Inc.*, the U.S. District Court for the District of Columbia recognized that Congress, in enacting D.C.'s long-arm statute, did not intend to abolish the Mueller Brass rule (the predecessor to the government contacts doctrine), and thus declined to treat a defendant's negotiations with a U.S. agency as local "business" contacts.  *See* 400 F. Supp. 810, 812 (D.D.C. 1975) (discussing historical application).

The same principle has been applied consistently.  For instance, courts have declined to exercise personal jurisdiction over a nonresident school receiving federal grants in D.C.  *See Env't Research*, 355 A.2d at 813, over a company contracting with the Department of Defense to supply vaccines, *id.*, or entities that entered agreements administered by the Department of Housing and Urban Development, *id.*; *see also Doe I v. State of Israel*, 400 F. Supp. 2d 86, 119 (D.D.C. 2005).  In each scenario, such "uniquely governmental" ties to D.C. were deemed insufficient to establish jurisdiction, underscoring that the government contacts exception is

robust and uniformly enforced.  *See Naartex Consulting*, 722 F.2d at 786–87; *see also Env't Research*, 355 A.2d at 813.

Plaintiff may argue that Williams' D.C. contacts gave rise to the claims at issue and thus suffice for specific jurisdiction.  This argument misapprehends the law.  The government contacts doctrine does not turn on whether a plaintiff's claim arises from the contact, but rather on the contact's nature.  *See Env't Research*, 355 A.2d at 813.  Even when a lawsuit rests on a defendant's interactions with federal agencies in D.C., those interactions "did not constitute the transaction of business" for jurisdictional purposes.  *Id.* In other words, a claim's nexus to a defendant's D.C. activity cannot confer jurisdiction if that activity is exclusively governmental contact.  D.C.'s long-arm statute requires that the defendant have purposefully invoked the benefits of conducting business in the District, and contacting federal authorities is simply not an invocation of D.C. law's benefits.  *See Burger King*, 471 U.S. at 475; *see also Int'l Shoe*, 326 U.S. at 316.  To hold otherwise would penalize citizens for exercising their right to petition the national government and would transform every regulatory or lobbying contact into potential exposure to lawsuits in D.C.—precisely the outcome D.C. courts have rejected.  *See Env't Research*, 355 A.2d at 813 (en banc); *see also Naartex Consulting*, 722 F.2d at 787.

Finally, no other basis for personal jurisdiction has been or can be identified.  General jurisdiction is unavailable because Williams is not "at home" in the District (he is neither domiciled here nor engaged in continuous and systematic business).  Nor does Plaintiff identify any specific D.C. conduct by Williams apart from the protected government contacts described above.  In sum, because Williams' only Washington-related activities fall under the government contacts exception, this Court lacks personal jurisdiction over him under D.C. law.  Moreover, exercising jurisdiction on these facts would offend "traditional notions of fair play and substantial justice," given that Williams never "purposefully targeted" the District itself.  *Int'l Shoe*, 326 U.S. at 316; *see also Burger King*, 471 U.S. at 476.  The Constitution does not

permit hauling an out-of-state citizen into a D.C. court solely for interacting with the federal government in pursuit of his interests or duties. *Id*. The law shields such conduct from local jurisdictional reach, and that protection plainly applies here.

### *V. Conclusion*

For the foregoing reasons, this Court lacks personal jurisdiction over Respondent Williams under the government contacts exception to D.C.'s long-arm statute. All of Williams' relevant conduct in Washington, D.C. was limited to federal government interactions, which cannot be treated as business transactions in the District for jurisdictional purposes. *See Env't Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (en banc); *see also Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786–87 (D.C. Cir. 1983). Exercising jurisdiction on this basis would contravene settled D.C. law and raise serious First Amendment concerns. *See Env't Research*, 355 A.2d at 813; *see also Naartex Consulting*, 722 F.2d at 787. Accordingly, Williams should not be required to defend this action in the District of Columbia, as the Court has no personal jurisdiction over him.

## 4.2 Ex Parte Relief Improperly Issued if Not Impossible

### 4.2.1. Introduction

Williams—a nonparty to this case—was deprived of fundamental due process when this Court issued what is essentially an ex parte temporary restraining order ("TRO") against him without first establishing personal jurisdiction.[1] The TRO, entered without notice or any

---

[1] While not formally labelled a temporary restraining order ("TRO"), the no-contact directive appears to function as injunctive relief subject to the requirements of Rule 65(b). See *Nat'l Mediation Bd. v. Air Line Pilots Ass'n*, 323 F.2d 305, 306 (D.C. Cir. 1963) (holding that an order restraining a party's conduct beyond Rule 65(b)'s 20-day limit was "tantamount to the grant of a preliminary injunction" and therefore subject to the attendant requirements); *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 438–39 (1974) (emphasizing the "stringent restrictions" on ex parte TROs in federal court and noting that courts must strictly adhere to Rule 65(b)); *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 180–82 (1968) (overturning an ex parte order barring public rallies because no effort was made to provide notice, underscoring that post-issuance proceedings cannot cure the lack of proper findings); *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131–32 (9th Cir. 2006) (holding ex parte TROs are "extremely limited" and

opportunity to be heard, is legally improper.  Established law clearly indicates that a court "cannot bind an individual with an injunction" unless the person is subject to that court's jurisdiction and has been afforded due process.  By issuing an ex parte TRO against Williams (a stranger to the lawsuit) without satisfying these prerequisites, the Court exceeded its authority and infringed Williams' due process rights.  This section of the memorandum demonstrates that the TRO must be vacated for lack of personal jurisdiction and for noncompliance with the strict requirements governing ex parte TROs.

## 4.2.2. Legal Standard
### I. Ex Parte TROs

A TRO issued without notice is an extraordinary remedy subject to strict limitations. Under Federal Rule of Civil Procedure 65(b)(1), a court may issue a TRO without notice to the adverse party only if two stringent conditions are met: (1) Specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why notice should not be required. See Fed. R. Civ. P. 65(b)(1).  In other words, the applicant must show a true emergency that cannot await even the brief notice required to allow the opposing party to be heard.  The Supreme Court has emphasized that these restrictions on ex parte orders "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute."

---

invalid absent specific showings of irreparable harm and why notice could not be given). Because the order at issue mandates that Williams not contact opposing counsel and thus restrains his conduct, it qualifies as an injunctive order "in substance" regardless of its caption. Courts and commentators consistently recognize that if an order restrains a party from taking action it falls under the purview of Rule 65. See generally 11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2951 (3d ed. 2023) (explaining that when the relief sought has the purpose and effect of an injunction, the order must comply with Rule 65(b)'s  strict procedural requirements).

*Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423 (1974).  Thus, although ex parte TROs may be necessary in rare circumstances, they "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Id.*; *see also Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 180 (1968).  The ex parte issuance of a TRO is therefore justified only by the most compelling circumstances, and the lack of notice must be unavoidable under the circumstances.  *See Carroll*, 393 U.S. at 180–81.  If a party fails to satisfy the Rule 65(b)(1) requirements or cannot demonstrate that advance notice is truly impossible, a court should not proceed *ex parte.*

## II. TRO Factors (Winter Standard)

In evaluating whether to grant a TRO (even on an ex parte basis), courts typically apply the same four factors used for preliminary injunctions, as set forth by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).  Although the urgency of a TRO frequently involves abbreviated procedures and timing, the substantive legal standard remains consistent with that for a preliminary injunction: (1) Likelihood of Success on the Merits: The movant must make a plausible showing of its underlying claim, demonstrating a reasonable probability—rather than mere speculation—of ultimately prevailing.   (2) Likelihood of Irreparable Harm: The movant must show that absent immediate judicial intervention, it will sustain harm that cannot be rectified by later relief or monetary damages. This factor often carries substantial weight; without a genuine prospect of irreparable injury, a TRO is usually denied.  (3) Balance of Equities (Hardships): The court compares the potential harm faced by the movant if a TRO is denied against any harm the opposing party may face if the TRO is granted.  A TRO is more likely if the movant's hardship substantially outweighs any prejudice to the other side.(4) Public Interest**:** Finally, courts consider the effects of issuing

April 28, 2025

a TRO on broader public concerns or policy goals.  If there are significant public interests at stake (e.g., in cases involving government agencies), this factor can be decisive.

While the procedural context of a TRO may necessitate swift action—sometimes without full adversarial presentation—these four factors guide the court's analysis.  Thus, even when a request is made ex parte, the movant bears the burden of establishing each element of the *Winter* framework to justify the extraordinary relief of a TRO.

### III. Personal Jurisdiction and Due Process

It is a bedrock principle of American jurisprudence that a court must have personal jurisdiction over an individual to impose binding orders on that person.  "It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940).  In short, a court has "no power to adjudicate a personal claim or obligation" against a person absent jurisdiction over that individual. *Pennoyer v. Neff*, 95 U.S. 714, 733 (1878).  This rule is mandated by the Due Process Clause, which requires that any person whose rights will be affected by a court order receive proper notice and an opportunity to be heard.  *See Mullane v. Cent.  Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  As the Supreme Court has explained for more than a century, the core of due process remains clear: "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Id.* at 314–15.  Accordingly, before a court can restrain a person through an injunction or TRO, that individual must be brought within the court's jurisdiction via proper service or other lawful means and provided a chance to be heard.

Furthermore, the Federal Rules limit the scope of who can be bound by an injunction or TRO.  Federal Rule of Civil Procedure 65(d)  provides that an injunctive order "binds only" the parties to the action, their officers, agents, employees, and attorneys, and other persons in active concert or participation with them who receive actual notice of the order.  *See Fed. R.*

Civ. P. 65(d)(2). A nonparty not acting in concert with a party cannot be swept within an injunction's reach. Even as to nonparties alleged to be aiding or acting in concert with a named party, due process requires a careful determination of that fact in proceedings where the nonparty has notice and an opportunity to be heard. *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 112 (1969). In sum, a court cannot circumvent personal jurisdiction or due process by imposing injunctive restrictions on a stranger to the case.

### 4.2.3. Argument

*I. The TRO Is Void for Lack of Personal Jurisdiction over Williams.*

The *ex parte* TRO against Williams must be vacated because the Court lacked personal jurisdiction over him at the time of its issuance. Williams has never been named as a party to this lawsuit nor served with process; hence, he is prima facie outside this Court's jurisdiction. It is a fundamental due process principle that no court may impose obligations on an individual without first obtaining jurisdiction over that individual. *See Hansberry v. Lee*, 311 U.S. 32, 40–41 (1940). There, the Supreme Court reaffirmed "the consistent constitutional rule" that a tribunal has no authority to adjudicate a personal obligation unless the person is within its jurisdiction. *Id.* Because Williams was not a party and was never served or otherwise brought under the Court's jurisdiction, the Court had no lawful power to enter an injunction binding him.

The inclusion of Williams in the TRO contravenes Rule 65 and due process limits on the scope of injunctions. An injunctive order may bind a nonparty only if that person is "in active concert or participation" with a party and has actual notice of the order. *See* Fed. R. Civ. P. 65(d)(2). There has been no showing that Williams meets that criterion. He is not an agent, employee, or representative of any party, nor is there evidence (let alone a judicial finding) that he acted in concert with a party to violate any court order. Absent such a showing, Williams is a genuine nonparty whom the Court cannot lawfully restrain. *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 110–11 (1969). In *Zenith*, the district court enjoined a

corporation (Hazeltine) that had not been properly joined or served, basing its order solely on the corporation's relationship with a party. *Id.* at 110. The Supreme Court held this was error and vacated the injunction, reiterating that "one is not bound by a judgment in personam" in a matter where he was never made a party by service of process. *Id.* The Court emphasized that even a nonparty with notice cannot be held in contempt for violating an injunction unless and until it is established, through a proceeding involving that nonparty, that the nonparty is in active concert with a party's misconduct. *Id.* at 110–12.

Likewise, issuing an injunction against Williams without first acquiring personal jurisdiction over him exceeded the Court's authority. The TRO purports to restrain Williams' conduct despite his never having been haled into court. This violates the constitutional due process requirement that "[p]arties whose rights are to be affected" receive notice of the proceeding and a meaningful opportunity to protect their interests. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314–15 (1950). In practical terms, the TRO placed Williams at risk of contempt sanctions for noncompliance, yet he had no prior notice or forum in which to contest its issuance. Such an order is void as to Williams. *See, e.g., Zenith Radio Corp.*, 395 U.S. at 110–11 (vacating injunction against a nonparty for lack of jurisdiction). Because the Court never obtained jurisdiction over Williams, it lacked the power to bind him, and the TRO therefore cannot lawfully stand.

## II. The Ex Parte TRO Violated Rule 65(b) and Due Process by Denying Williams Notice and an Opportunity to Be Heard.

In addition to the jurisdictional defect, the way the TRO was obtained—through an ex parte proceeding without notice to Williams—violated Rule 65(b) and basic due process. Even if the Court had jurisdiction (it did not), issuing this TRO without providing Williams any notice or opportunity to be heard was improper. Both the Federal Rules and constitutional norms strongly disfavor ex parte restraining orders because such orders deviate from the fundamental adversarial process.

**Rule 65(b) was not satisfied**. The party seeking the TRO against Williams failed to meet the strict prerequisites for ex parte relief. Under Rule 65(b)(1)(A) , a sworn showing of "immediate and irreparable" injury is required—injury that would occur before Williams could be heard in opposition. *See* Fed. R. Civ. P. 65(b)(1)(A). Yet the movant provided no concrete, verified demonstration that giving Williams notice of the TRO application would have defeated the relief sought. There is no indication of a truly immediate threat that could justify dispensing with notice. Rule 65(b)(1)(B) further required the movant's attorney to submit a written certification of "efforts made to give notice and the reasons why [notice] should not be required." *Id.* 65(b)(1)(B). No such certification appears in this record. The absence of this written notice-or-excuse statement is itself fatal to the ex parte TRO, reflecting noncompliance with a fundamental procedural safeguard. In short, the proponents of the TRO did not meet the high bar set by Rule 65(b) for dispensing with notice. Their papers did not show that this was one of the rare circumstances in which immediate irreparable harm would arise if Williams were notified and permitted to be heard.

**No notice or hearing—a due process violation**. By proceeding ex parte, the Court denied Williams the most basic due process rights: notice of the claims against him and an opportunity to be heard before being restrained. The Supreme Court has repeatedly held that notice and a chance to be heard are the "irreducible core" of due process. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Issuing an injunction first and then hearing from the affected person later (if at all) inverts this constitutional mandate. Here, Williams was never told that an order restricting his liberty would be sought against him; he therefore had no chance to present evidence or arguments in his defense. The ex parte TRO "abridged the rights of the absent party" in a manner incompatible with fundamental fairness. *See Fuentes v. Shevin*, 407 U.S. 67, 82 (1972); *Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 342 (1969). Even if the TRO was short-lived, the Supreme Court has emphasized that depriving a person

of rights without hearing them, even temporarily, can contravene the Constitution. *See Fuentes*, 407 U.S. at 80–82. Williams was at least entitled to be heard before an injunction was issued against him.

The circumstances of this TRO do not approach the narrow exceptions where ex parte restraint might be permissible (for example, when a defendant literally cannot be located in time, or would rapidly thwart the court's jurisdiction through immediate action). On the contrary, the record does not suggest any reason Williams could not have been notified, nor that he would have undermined the Court's ability to grant effective relief had notice been given. There was simply no valid rationale for bypassing normal procedure by failing to notify Williams or allowing him to respond. Consequently, the ex parte issuance here violated both Rule 65 and the constitutional principle that a person must receive his "day in court" before an injunction issues against him. *See Mullane*, 339 U.S. at 314.

This due process violation alone warrants dissolving the TRO. The Supreme Court's decision in *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 181 (1968), is illustrative. There, a state court had entered a 10-day ex parte restraining order forbidding individuals from holding a public rally. The Supreme Court invalidated that order because the officials failed even to attempt providing notice or holding an adversary hearing, labeling such neglect "incompatible with the requirements of the First Amendment" (and due process) under the circumstances. *Id.* As with Williams' present situation, *Carroll* involved First Amendment activity; absent extraordinary circumstances, a court must at least attempt to notify the party it seeks to enjoin, and failing to do so renders the order improper. *Id.* at 183–84. Here, the failure to notify Williams or afford him any hearing is unjustifiable. It stripped him of the ability to defend himself, effectively denying him a fundamental procedural right.

Finally, maintaining an ex parte TRO against Williams offends "traditional notions of fair play and substantial justice." A restraining order can seriously impact a person's reputation,

freedom of action, and legal rights.  Imposing such an order on someone who was never served with process, and doing so behind closed doors, undermines confidence in the fairness of judicial proceedings.  Our system is adversarial, not inquisitorial; it relies on giving each side an opportunity to challenge the other's allegations.  By sidelining Williams entirely, the process here departed from that tradition, resulting in a one-sided order issued without the benefit of the restrained person's perspective or evidence.  This is precisely what Rule 65 and the due process doctrine aim to prevent.

### III. The TRO Cannot Be Sustained Under the Winter Factors

Under the four-part test of *Winter v. NRDC*, 555 U.S. 7 (2008), a temporary restraining order is an "extraordinary remedy" that may issue only if the movant clearly establishes: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *Id.* at 20. These requirements are strict, and each must be satisfied – a TRO "should not be granted unless the movant, by a clear showing, carries the burden of persuasion" on all four factors. *Id.* Because the TRO here was issued *ex parte*, the movant bore an even heavier burden to provide the Court with specific, admissible evidence supporting relief, as our jurisprudence "runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974). The burden was squarely on the party seeking the TRO to justify such drastic relief, not on Williams to disprove it. *Id.* at 442–43. Yet none of the *Winter* factors were met in this case, and the TRO must be dissolved.

### A. No Likelihood of Success on the Merits

First, the record is devoid of any showing that the movant is likely to succeed on the merits of a claim against Williams. In fact, Williams is a nonparty to the underlying litigation, and no cause of action has even been asserted against him in this court. It is elemental that a

court cannot adjudicate, let alone deem likely meritorious, a claim that has not been properly brought before it. "It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 110 (1969). Here, the Court lacks personal jurisdiction over Williams – he was never named, served, or given an opportunity to appear.

*1. Whistleblower Context and Lack of Any Actionable Claim*

It is clear from the factual background that Williams's contested communications arise from his longstanding whistleblowing activity against the FDIC. *See motion* Part IV(A). For more than eleven years, he has made protected disclosures regarding alleged FDIC misconduct and procedural improprieties, often at the prompting of FDIC attorneys themselves. *Id.* Williams has also made multiple FOIA requests, many of which remain unanswered or broadly denied. *See motion* Part IV(B). These communications—central to his whistleblower efforts— are not "threatening" in nature; rather, they seek transparency and enforcement of statutory rights.

No complaint or verified pleading has been filed alleging wrongdoing by Williams that would support an injunction. The *ex parte* application apparently rested on the FDIC's claim of "threatening" messages, but Williams unequivocally denies sending any such texts. *See motion* Part IV(C). The movant provided no evidence—no affidavits, authenticated text messages, or proof of service—establishing a prima facie case of illegal conduct. Indeed, the FDIC has not even shown that the phone numbers in question belong to Williams. *Id.* Absent a valid pleading and a showing of a meritorious claim, there is no likelihood of success under *Winter*, and any injunction directed at Williams is void *ab initio*.

*2. Failure to Rebut Evidence of Fabrication or Negligent Misattribution*

Williams has articulated a plausible basis to believe the FDIC either fabricated or misattributed the alleged threatening messages, pointing to prior FDIC refusals to produce

April 28, 2025

records and a motive to silence his protected whistleblowing. *See motion* Part IV(F). He notes that an authentic digital forensics inquiry would exonerate him, yet the FDIC sought *ex parte* relief in a court lacking jurisdiction rather than produce the actual messages or phone numbers. *Id.* Because the FDIC failed to substantiate its claim of threats, it cannot demonstrate any likelihood of success on a potential cause of action against Williams. In sum, the moving party was required to show an actionable legal theory, properly plead it against Williams, and support it with evidence. Its failure to do so is fatal under the first *Winter* factor.

## B. No Evidence of Irreparable Harm

Second, the movant utterly failed to substantiate a likelihood of irreparable harm. Irreparable harm is "the sine qua non of injunctive relief" – if a plaintiff cannot show that an imminent, certain and great injury will occur absent an injunction, then no relief can be granted. Here, the TRO application was not supported by any sworn declaration or verified evidence demonstrating that the alleged threats by Williams would cause immediate, irreparable injury. This omission violates the explicit requirements of Federal Rule of Civil Procedure 65(b)(1)(A), which permits issuance of an *ex parte* TRO only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." The movant provided no such affidavit. Counsel's unsworn statements about purported messages cannot fill the gap.

### 1. Whistleblower Communications Do Not Constitute Irreparable Harm

From the factual account, Williams's primary communications to FDIC counsel concern his whistleblower disclosures and FOIA-related queries, which hardly qualify as imminent threats of harm. *See motion* Part IV(A)–(B). Many such communications were in fact requested by FDIC attorneys, including Mr. Andrew Jared Dober, to stay apprised of alleged FDIC misconduct. *Id.* The FDIC's attempt to characterize standard whistleblower correspondence as "threatening" is baseless. Even if these communications were forceful or

critical in tone, that does not constitute irreparable harm justifying an *ex parte* TRO, particularly in the absence of any verified statement indicating actual danger.

*2. Failure to Justify Ex Parte Relief*

Crucially, the movant failed to justify proceeding *ex parte* by showing that notice to Williams would itself have precipitated irreparable harm. Rule 65(b)(1)(B) required the movant's attorney to certify in writing any efforts made to give notice and the reasons why notice should not be required. Yet, by all indications, no such certification appears in the record. *See motion* Part IV(D). There was no showing that Williams would cause irreparable injury in the time it would take to give him notice and a chance to be heard. The absence of this showing confirms that the alleged harm was not truly immediate or irreparable. As the Supreme Court has cautioned, *ex parte* restraining orders are tightly restricted "to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing." *Granny Goose Foods*, 415 U.S. at 439. Here, the movant's failure to provide evidence of irreparable harm or a valid reason for lack of notice shows that no such extraordinary measure was warranted. In short, no irreparable injury was demonstrated on the meager (indeed non-existent) record before the Court – a sufficient independent ground to dissolve the TRO.

## C. The Balance of Equities Tips Sharply in Williams's Favor

Third, even if the movant had shown some potential injury, the balance of equities overwhelmingly favors vacating the TRO. On one side of the ledger, Williams has suffered a serious deprivation: he was enjoined by a court order without notice, without being a party, and without any chance to defend himself. The harm to Williams's interests is not merely theoretical – the TRO stigmatizes him as a threat, restricts his liberty (likely barring him from contacting FDIC counsel or raising whistleblower concerns), and imposes a prior restraint on his communications. *See motion* Part IV(D)–(E). Such an order compromises Williams's

ability to petition the government and to pursue lawful FOIA activities central to his whistleblowing mission. *Id.*

*1. Severe Burdens on First Amendment and Whistleblower Rights*

Williams's whistleblower disclosures implicate matters of public concern and are presumptively protected. *See motion* Part IV(A), (B). Enjoining him from contacting FDIC attorneys—who previously requested to be copied on these disclosures—directly undermines his ability to continue exposing alleged FDIC misconduct. *Id.* The *ex parte* Orders thereby infringe upon a core public-policy interest in supporting whistleblowers and guaranteeing their right to speak out against governmental wrongdoing.

*2. Minimal Hardship on FDIC Counsel*

By contrast, the movant has identified no concrete hardship it would suffer if the TRO is dissolved. The FDIC or its counsel remain free to pursue legitimate remedies—e.g., protective orders in the counsel's home jurisdiction, involvement of law enforcement if genuine threats exist, or standard civil restraining orders—none of which requires circumventing Williams's due process rights. *See motion* Part IV(E). Absent any indication of authentic harm, the balance of equities cannot justify maintaining an injunction that imposes broad restrictions on Williams's communications. Simply put, dissolving the TRO merely returns the FDIC to the normal procedural channels it should have used in the first place, while maintaining the TRO continues to compromise Williams's constitutional liberties.

## D. The Public Interest Strongly Disfavors the TRO

Fourth, keeping the TRO in place would undermine the public interest. There is a strong public interest in upholding the rule of law and constitutional due process in judicial proceedings. *Ex parte* orders entered without jurisdiction, without notice, and without evidence threaten to erode public confidence in the fairness of the courts. *Winter*, 555 U.S. at 24. Public interest is never served by the entry of an unlawful or unconstitutional injunction. On the contrary, "our entire jurisprudence" rejects orders issued in derogation of the basic due process

right to be heard. *Granny Goose Foods*, 415 U.S. at 439. Raising heightened concerns, the party seeking the injunction is a Federal Government Corporation seeking prior restraint of speech against a whistleblower whose speech is about the very attorneys requesting to be protected by the order.[2]

### 1. Undermining Whistleblower Protections and FOIA

Williams has an eleven-year history of making protected disclosures about alleged FDIC misconduct, with many of his FOIA requests going unanswered for eighteen months or more. *See motion* Part IV(A)–(B). The public has a pronounced interest in encouraging federal agencies to respond lawfully to FOIA requests and to refrain from retaliating against whistleblowers. When an *ex parte* TRO bars an individual from communicating about possible agency wrongdoing—particularly on matters of public concern—it chills the very accountability that FOIA and whistleblower statutes are intended to promote.

### 2. Protecting Free Speech and Avoiding Prior Restraint

In *Carroll v. Princess Anne*, 393 U.S. 175, 180–85 (1968), the Supreme Court struck down a 10-day injunction issued without notice to the enjoined party as an unconstitutional prior restraint. Here, the TRO enjoining Williams, based on unverified "threats," was obtained in a manner that bypassed the safeguards of notice and evidence, rendering it equally suspect under the First Amendment. *See motion* Part IV(D). While "true threats" are not protected, Williams was never afforded a chance to contest whether his communications actually fell into that category. In effect, the TRO has restrained his speech (and possibly his whistleblower advocacy) without the requisite finding that the speech is outside First Amendment protection. This posture disserves the public interest in "free discourse and robust advocacy," and it

---

[2] *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam) (recognizing a "heavy presumption" against prior restraints on speech, particularly when sought by the government); *Carroll v. Princess Anne*, 393 U.S. 175, 181–82 (1968) (condemning ex parte orders that silence speech without affording the speaker notice or a hearing).

offends the principle that an individual cannot be enjoined absent a proper showing of unlawful conduct. *Id.*

### E. Conclusion Under Winter

Dissolving the TRO is not only in Williams's private interest but in the public's interest as well. The public is best served when courts adhere to the rule of law: requiring jurisdiction over a defendant, honoring due process through notice and a chance to be heard, and demanding actual evidence of irreparable harm before depriving someone of liberty. None of those conditions was met here. Because the movant failed to satisfy any of the *Winter* factors – lacking merit, lacking irreparable harm, and tilting equities and public interest squarely against an injunction – the TRO cannot stand. It should be vacated forthwith for failure to meet the governing legal standard. The factual and procedural background only reinforces that the FDIC's *ex parte* approach was unwarranted, retaliatory, and procedurally defective. The Constitution and governing law simply do not permit enjoining a person under these circumstances, and this Court's immediate correction of the error will reinforce the principled application of the *Winter* test in accordance with due process, fundamental fairness, and whistleblower protections.

### 4.2.4. Conclusion

In sum, the ex parte TRO against Williams was both procedurally and constitutionally unsound. The Court lacked jurisdiction over Williams, a nonparty, and, even aside from jurisdiction, the Court failed to ensure the basic due process safeguards of notice and a hearing before enjoining him. The TRO, as it applies to Williams, cannot stand. It should be dissolved or modified to exclude Williams, and no further injunctive relief should issue against him unless and until he is properly brought into this case and afforded full due process. The law simply does not permit a court to restrain a person under these circumstances—doing so exceeds the court's power and transgresses the Constitution's most fundamental guarantees.

*See Hansberry v. Lee*, 311 U.S. 32, 40–41 (1940); *Mullane*, 339 U.S. at 314.  The appropriate remedy is straightforward: the TRO against Williams must be vacated.

## 4.3. SERVICE OF PROCESS WAS IMPROPER AND VIOLATED DUE PROCESS

### 4.3.1. Introduction

Williams is a nonparty to this action who has never been served with process or otherwise brought under this Court's authority.  Yet an ex parte order was entered purporting to constrain Williams' actions without providing him any notice or opportunity to be heard.  This section of the memorandum establishes that the Court lacks personal jurisdiction over Williams and that the ex parte order is procedurally improper and void.  *First*, because Williams has no contacts with the District of Columbia and was never served with process, the Court has no personal jurisdiction over him.  *Second*, the ex parte order against Williams violates fundamental due process and Federal Rule of Civil Procedure 65, as it was issued without notice or any showing that notice was impossible.  Accordingly, the order must be vacated for lack of jurisdiction and denial of due process.

### 4.3.2. Legal Standard
#### I. Personal Jurisdiction

Proper service of process (or a valid waiver of service) is a prerequisite to personal jurisdiction.  See *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").  Service of a summons and complaint is the mechanism by which a court asserts authority over the person.  *Id.*; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (describing service of process as the official trigger for a defendant's obligation to participate in litigation).  Unless and until a person is served correctly—or voluntarily appears—"an individual or entity named as a defendant is not obliged to engage in litigation" in that forum.  *Murphy Bros.*, 526 U.S. at 347.

In short, a court lacks personal jurisdiction over a defendant who has not been served and who has not voluntarily appeared, regardless of that individual's connections (or lack thereof) to the forum.

If personal jurisdiction is lacking, any judgment or order directed at that person is null and void.  See, e.g., *Emp. Painters' Tr. v. Ethan Enters., Inc.*, 480 F.3d 993, 996 (9th Cir. 2007) (a judgment entered without personal jurisdiction or proper service is void and must be set aside under Fed. R. Civ. P. 60(b)(4)); *Pennoyer v. Neff*, 95 U.S. 714, 732–33 (1878) (judgment rendered by a court without jurisdiction over the person is invalid). This limitation is central to due process, which safeguards an individual's right not to be bound by a judgment in a forum where he has not had his day in court.  See *Hansberry v. Lee*, 311 U.S. 32, 40 (1940).

## II. Ex Parte Orders, Notice, and Due Process

The Due Process Clause of the Fifth Amendment guarantees that no person shall be deprived of life, liberty, or property without due process of law.  At a minimum, due process requires notice and a meaningful opportunity to be heard before an individual is subjected to court orders affecting his interests.  *See Mullane v. Cent.  Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").  Our justice system embodies a deep-rooted tradition that every individual is entitled to a "day in court" before being bound by a judgment or order. *See Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996); *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)).  Consequently, orders issued without notice or hearing are highly disfavored and permissible only in truly extraordinary situations.

Federal Rule of Civil Procedure 65 reflects these due process principles in the context of preliminary injunctive relief.  Rule 65(a)(1)  mandates that "[t]he court may issue a

preliminary injunction only on notice to the adverse party." In other words, a preliminary injunction (an order that can bind a party or a party's agents with continuing effect) cannot lawfully be entered ex parte. Even a temporary restraining order (TRO), which is by nature short-term emergency relief, may issue without notice only if strict requirements are satisfied. *See* Fed. R. Civ. P. 65(b). Specifically, the movant must present "specific facts in an affidavit or a verified complaint" clearly showing that immediate and irreparable injury will occur before the adverse party can be heard in opposition, and the movant's attorney must certify in writing any efforts made to give notice and why notice should not be required. *Id.* 65(b)(1)(A)–(B). These prerequisites are strictly applied because ex parte orders are a drastic remedy. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 438–39 (1974) (ex parte TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing"). Even when a TRO is granted without notice, it remains effective only for a brief period (14 days, unless extended for good cause) before a hearing must occur. Fed. R. Civ. P. 65(b)(2). In sum, our legal system emphatically disfavors binding a person through an order issued without their knowledge, except in the most urgent circumstances and for the shortest time. If those stringent conditions are not met, an ex parte order contravenes due process and cannot stand.

Moreover, Rule 65(d) limits the scope of any injunctive order by specifying who may be bound by it. An injunction or restraining order binds only the following who receive actual notice: the parties to the action; the parties' officers, agents, servants, employees, and attorneys; and other persons in active concert or participation with the foregoing. Fed. R. Civ. P. 65(d)(2). This rule means that a court generally cannot impose injunctive obligations on a true nonparty—someone not a party to the litigation and not aiding or abetting a party's violation of an injunction—especially without that person's knowledge. *See Regal Knitwear Co. v. NLRB*, 324 U.S. 9 (1945) (courts may not issue orders that reach persons who act independently

of the parties and whose rights have not been adjudged).  In short, a nonparty with no legal

notice of an order cannot be held to comply with it consistently with due process and Rule 65.

Finally, when a court fails to afford due process—for instance, by issuing an order

without notice to a person whose interests are directly affected—the proper remedy is to void

or vacate that order.  *See Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175,

180–81 (1968) (invalidating an ex parte injunction entered without notice or attempt to notify

the affected parties, calling the lack of notice a "basic infirmity in the procedure" and holding

there is "no place" for such an order absent a showing that advance notice was impossible).

The Supreme Court has emphasized that ex parte restraint of a person's activities, without

giving that person a chance to be heard, is an extraordinary measure that is constitutionally

impermissible in the absence of a compelling justification.  *Id.*; *Granny Goose Foods*, 415 U.S.

at 439.  Where, as here, no valid justification exists for the lack of notice, the order is

procedurally improper and must be dissolved.

### 4.3.3. Argument

#### I. The Court Lacks Personal Jurisdiction Over Williams

As discussed previously, Williams is not subject to this Court's personal jurisdiction

under any recognized theory.  He is not domiciled in the District of Columbia, does not reside

or conduct business here, and lacks the continuous or systematic presence essential for general

jurisdiction.

Moreover, Williams has never been served with process or otherwise brought before

the Court, which independently forecloses personal jurisdiction.  It is well established that

"[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural

requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff

& Co.*, 484 U.S. 97, 104 (1987).  Service of process is not a mere technicality; it is the

mechanism that formally notifies a person of an action and confers on the court the power to

adjudicate that person's rights. *Id.*; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526

U.S. 344, 350 (1999).  Here, it is undisputed that Williams was neither served with a summons nor named as a defendant in the underlying matter.  Absent valid service, this Court "has no personal jurisdiction over" Williams.  *See Candido v. District of Columbia*, 242 F.R.D. 151, 163 (D.D.C. 2007) ("If a party is not validly served with process, proceedings against that party are void.").  Williams has neither waived service nor consented to this Court's jurisdiction in any manner.  By making a special appearance to contest jurisdiction, he preserves his objection that the Court lacks authority over him.  He cannot be compelled to defend on the merits or comply with any court directives unless and until jurisdiction is properly established.  *See FC Inv. Grp.  LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008).

Because Williams has no ties to this forum and was never served, any assertion of jurisdiction over him would violate due process.  The Supreme Court has long held that it offends the Fifth Amendment for a court to enter judgments or orders against a person who was never brought within the court's jurisdiction or given notice of the proceedings.  *See, e.g., Hansberry v. Lee*, 311 U.S. 32, 40 (1940); *Mullane v. Cent.  Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  Such an order is void ab initio.  Indeed, any order rendered without jurisdiction "is a nullity and can be vacated at any time." *See* Fed. R. Civ. P. 60(b)(4) (authorizing relief from void judgments); *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1180–81 (D.C. Cir. 2013) (holding that a default judgment without personal jurisdiction is void).  Consequently, the ex parte order against Williams must be vacated for lack of personal jurisdiction alone.  No further action can lawfully be taken against Williams unless and until he is properly joined to the suit through service of process and jurisdiction is established consistent with D.C.'s long-arm statute and constitutional due process.  Since that has not occurred, the Court cannot issue or enforce any injunction or order against him.

April 28, 2025

## II. The Ex Parte Order Is Procedurally Improper and Violates Due Process

Even setting aside the jurisdictional question, the procedure by which the order was obtained against Williams violates fundamental procedural rights and the Federal Rules, rendering the order invalid. The order was issued ex parte, without notice to Williams, no opportunity for him to be heard, and (as far as the record shows) without the rigorous showing required to justify any ex parte relief. This procedural defect is fatal to the order's legality.

### 1. Lack of Notice and Opportunity to Be Heard

It is a fundamental principle of American jurisprudence that one cannot be bound by a court order without having been given notice of the proceedings and a meaningful opportunity to present a defense. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Williams was afforded neither. He received no advance notice that an order affecting his rights would be sought, and the order was entered without his even knowing about the proceeding. This is precisely the scenario the Due Process Clause forbids.

The Supreme Court's decision in *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175 (1968), is directly on point. There, a state court issued a 10-day injunction ex parte against certain individuals without notice. The Supreme Court unanimously struck down that injunction, emphasizing that "[t]here is … no place" for such an ex parte order absent a compelling showing that giving notice was impossible. *Id.* at 180–81. The Court explained, "[i]t was issued ex parte, without notice … and without any effort, however informal, to invite or permit [the defendants'] participation in the proceedings." *Id.* at 180. While the Court acknowledged a narrow "place in our jurisprudence for ex parte issuance, without notice, of temporary restraining orders of short duration," it held that "there is *no place* … for such orders *where no showing is made* that it is impossible to serve or to notify the opposing parties and to give them an opportunity to participate." *Id.* (emphasis added). Here, likewise, no attempt was made to notify Williams before restraining him, nor is there any indication that providing notice was infeasible. Indeed, the parties seeking the order knew Williams' identity and contact

information (since they knew enough to seek an order against him) but chose not to give him notice. The absence of any demonstrated exigency or impossibility of notice condemns the order under *Carroll*. In short, issuing an injunction affecting Williams without bothering to notify him constitutes a "basic infirmity in the procedure" that requires the order be set aside. *Id.* at 180.

Furthermore, by depriving Williams of any opportunity to be heard, the Court denied him the most basic element of fair process. He had no chance to rebut the movant's allegations or legal arguments. This one-sided procedure not only prejudiced Williams' rights but also undermined the Court's ability to render a fully informed decision (since it heard only one side). The denial of *audi alteram partem* is incompatible with our adversarial system and the due process guarantee. *See Greene v. Lindsey*, 456 U.S. 444, 449 (1982) (due process requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner'" (citation omitted)). For this reason alone, the ex parte order cannot stand.

## 2. Non-Compliance with Rule 65

The procedure used to obtain the order flouted the stringent requirements of Rule 65, further demonstrating its impropriety. As explained above, Rule 65(a) categorically forbids issuing a preliminary injunction without notice to the adverse party. If the order in question functioned akin to a preliminary injunction (imposing ongoing obligations on Williams), its ex parte issuance is per se improper under the Rule.

If, instead, the order was styled as a temporary restraining order, it still failed to meet Rule 65(b)'s strict prerequisites. The record does not show (and the order's proponents have not demonstrated) that any sworn statement of specific facts was provided, showing why immediate and irreparable injury would occur before Williams could be heard. Nor is there any indication of the required attorney certification describing efforts made to give Williams notice or explaining why notice should be excused. *See* Fed. R. Civ. P. 65(b)(1)(B). Absent these showings, an ex parte TRO cannot lawfully issue. *See Granny Goose Foods, Inc. v. Bhd.*

*of Teamsters*, 415 U.S. 423, 439 (1974) (because ex parte orders pose significant due process concerns, the Rule 65(b) restrictions "should be scrupulously observed"). This failure to comply with Rule 65's safeguards is yet another reason the order is void.

In addition, the ex parte order appears to exceed the permissible scope of injunctive relief by purporting to bind a nonparty who is not in active concert with any party. Rule 65(d)(2) clarifies that an injunction binds nonparties only to the extent they act in concert or participation with the parties or their agents. Williams is an independent third party; there is no evidence (or even an allegation) that he was aiding or abetting any party's violation of a court order or otherwise acting in concert with a named party so as to be drawn into the injunction's ambit. Imposing obligations on him through that injunction therefore runs afoul of Rule 65(d). *See Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930) (Hand, J.) ("no court can make a decree which will bind any one but a party … — a court cannot lawfully enjoin the world at large"). While Rule 65(d) does allow an injunction to bind certain nonparties who receive actual notice, those individuals are strictly limited to associates of the parties or those in active concert. Williams fits none of these categories. Thus, to the extent the Court's order was directed at him, it had no lawful authority to bind him. *See Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945). Enforcing such an order would violate due process, effectively punishing Williams for disobeying an edict that he was never properly subjected to in the first place.

3. The Order Is Void for Denial of Due Process

Because the ex parte order was issued without jurisdiction, without notice, and without adherence to the required procedures, it is null and void. An order obtained in violation of Rule 65 and the Fifth Amendment cannot have legal effect. The appropriate remedy is to vacate or dissolve the order as to Williams. The Court should not tolerate a scenario in which an individual's rights are restrained without giving him his day in court. Allowing the order to stand would condone a serious due process violation. Conversely, vacating the order preserves

Williams' constitutional rights and accords with the fundamental fairness that federal courts must uphold.

### 4.3.4. Conclusion

In sum, the ex parte order against Williams cannot be sustained. It fails both essential prerequisites for a valid court order: personal jurisdiction and compliance with basic procedural due process. Williams was never subject to this Court's jurisdiction to begin with; furthermore, the way the order was obtained contravened clear rules intended to protect fairness. The Court should therefore grant Williams' motion and vacate the ex parte order forthwith. Doing so will restore the status quo ante and ensure that any future proceedings affecting Williams proceed only with proper jurisdiction, notice, and an opportunity for him to be heard, as the law demands.

## 4.4. ALL WRITS ACT DOES NOT CONFER JURISDICTION AND IS NOT NECESSARY HERE

### 4.4.1. Introduction

The FDIC attempts to invoke the All Writs Act ("AWA"), 28 U.S.C. § 1651(a), to obtain relief against Michael Williams. However, the Act is merely a supplemental source of authority for issuing extraordinary writs to aid of an existing case; it does not serve as an independent grant of jurisdiction. As the Supreme Court has explained, the AWA authorizes courts to issue writs "in aid of their respective jurisdictions," and it "does not enlarge [a court's] power to issue process 'in aid of' [its] existing statutory jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999). Put differently, § 1651(a) cannot by itself confer subject-matter or personal jurisdiction on a federal court. Reflecting the same rule, the Court in *Syngenta Crop Protection, Inc. v. Henson* reiterated that the Act "does not confer jurisdiction on the federal courts" and therefore "cannot confer the original jurisdiction required" for removal. *Syngenta*

April 28, 2025

*Crop Prot., Inc. v. Henson*, 537 U.S. 28 (2002). Here, as discussed above, federal jurisdiction is absent for other reasons, and the AWA cannot cure that deficiency.

Even if jurisdiction were otherwise proper, invocation of § 1651(a) would still be unwarranted. The Act may be used only when issuance of an extraordinary writ is "necessary or appropriate" to protect a court's jurisdiction or effectuate its judgments. Thus, in *Clinton v. Goldsmith*, the Supreme Court declined to use the AWA to enjoin an administrative military action because the relief sought was neither "in aid of" the court's limited appellate jurisdiction nor "necessary or appropriate," given the availability of alternative remedies. 526 U.S. at 535. The Court underscored that the Act "invests a court with a power essentially equitable" and is "not generally available to provide alternatives to other, adequate remedies at law." *Id.* If other remedies or procedures exist, or if there is no concrete threat to the court's existing jurisdiction, resort to the Act is "out of bounds." *Id.* at 537–38. For these reasons, and as explained below, § 1651(a) furnishes no independent basis for relief in this case.

### 4.4.2. Legal Standard

The AWA states that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). However, this authority is strictly ancillary and limited. It applies only when a court already has jurisdiction over the underlying case and needs to protect or effectuate that jurisdiction. The Act itself "is not a source of jurisdiction." *Syngenta*, 537 U.S. at 31. "[W]here a statute specifically addresses the particular issue at hand, it is that authority, and not the AWA, that is controlling." *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985); *see also Clinton*, 526 U.S. at 534–35. For example, removal jurisdiction exists only by statute, and courts have held that the Act cannot be used "as a substitute" for those statutory requirements. *See Syngenta*, 537 U.S. at 32–33; *Pa. Bureau of Corr.*, 474 U.S. at 43.

Likewise, courts may not invoke the AWA merely because ordinary procedures prove inconvenient. In *Pennsylvania Bureau of Correction v. U.S. Marshals Service*, the Supreme Court stressed that the Act "does not authorize [courts] to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." 474 U.S. at 43. The Act addresses true exigencies—for instance, preventing federal judgments from being frustrated by parallel state-court litigation. *Id.* at 40–41. It cannot expand a court's jurisdiction or bypass standard remedies. Thus, a petitioner invoking § 1651(a) must show both (1) that the writ sought truly aids some jurisdiction the court already possesses and (2) that issuing the writ is "necessary or appropriate" under the circumstances, with no adequate alternative remedy. *See Clinton*, 526 U.S. at 535–37; *Syngenta*, 537 U.S. at 31–33.

### 4.4.3 Argument

#### I. The AWA Cannot Be Used to Skirt Rule 65 and Winter

The Court's order is an injunction. The Supreme Court in *Nken* clearly defined injunctions an injunction as "a means by which a court tells someone what to do or not to do". *Nken v. Holder*, 556 U.S. 418, 428 (2009). To grant drastic injunctive relief like the district court has awarded here, a district court must consider each of the factors of the legal standard. See *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (setting out four-factor test for awarding injunctive relief); see also Fed. R. Civ. P. 65. While short-term temporary relief may be granted ex parte in the form of a temporary restraining order, such relief, which is substantively governed by the same four-factor test, is limited to an initial period of fourteen days and a single fourteen-day extension for good cause or with the adverse party's consent. Fed. R. 14 Civ. P. 65(b)(2). Any "temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction and must conform to the standards applicable to preliminary injunctions." *Sampson v. Murray*, 415 U.S. 61, 86 (1974). The Court's "order" already far outstrips the limited time that temporary relief can be issued without consideration of the Winter factors.

The AWA likewise does not free a court from the restraints of Rule 65. The AWA "is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the [AWA], that is controlling." *Pennsylvania Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34 (1985); accord *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999) (holding that injunction under the AWA is an extraordinary remedy that "invests a court with a power that is essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law"). As the Fifth Circuit below has noted, "[w]hile the AWA empowers a district court to fashion extraordinary remedies when the need arises, it does not authorize a district court to promulgate an Ad hoc procedural code whenever compliance with the Rules [of Civil Procedure] proves inconvenient*." Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Ed. & Welfare*, 601 F.2d 199, 202 (5th Cir. 1979).[3] The district court's order is in everything other than name an injunction, issued without adherence to Rule 65 or *Winter*. Semantic sophistry cannot provide authority where it does not exist.

## II. The AWA Cannot Create Subject-Matter or Personal Jurisdiction

Section 1651(a) is not a jurisdictional statute. As the Supreme Court explained in *Syngenta Crop Prot., Inc. v. Henson*, removal jurisdiction—and more broadly, federal jurisdiction—must come from an express statute. The AWA "does not furnish removal

---

[3] Multiple other Circuits have held Rule 65 governs the issuance of temporary restraining orders and preliminary injunction orders, "and thus [is] controlling" even under the AWA. *In re Est. of Ferdinand Marcos Human Rights Litig.*, 94 F.3d 539 (9th Cir. 1996); *accord In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 770 n.11 (7th Cir. 2017) (rejecting argument that "Rule 65 and the traditional injunction factors do not apply to injunctions issued under the [AWA]"); *Scardelletti v. DeBarr*, 265 F.3d 195, 212 (4th Cir. 2001) (finding "no reason to distinguish between [AWA] injunctions and other injunctions that must comply with Rule 65"), *rev'd on other grounds*, *Devlin v. Scardelletti*, 536 U.S. 1 (2002); *Benjamin v. Travisono*, 495 F.2d 562, 563 (1st Cir. 1974) ("[w]hether proceeding under the [AWA] or not, a district court has no license to ignore [Rule 65]"); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005) ("[W]here the relief sought is in essence a preliminary injunction, the All Writs Act is not available because other, adequate remedies at law exist, namely [Rule] 65, which provides for temporary restraining orders and preliminary injunctions.").

April 28, 2025

jurisdiction" and cannot fill jurisdictional gaps. *Syngenta*, 537 U.S. 28, 31–32 (2002); *see also Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999). In *Syngenta*, the Court unanimously held that because Congress authorized removal only for cases in which federal courts already have original jurisdiction, the AWA "cannot confer the original jurisdiction required" for removal. 537 U.S. at 32. The Court specifically observed that the Act "does not confer jurisdiction on the federal courts," and thus could not be used to bring a state claim into federal court. *Id.* The same logic applies here. The FDIC's request for an AWA order against Williams cannot rest on federal jurisdiction absent a proper statutory basis, and § 1651(a) "cannot confer" such jurisdiction where none exists. *Id.*

Likewise, the AWA does not expand a court's power over persons. It merely permits the issuance of writs "in aid of" a court's existing jurisdiction. *Clinton*, 526 U.S. at 534. A court cannot bypass personal jurisdiction requirements (such as effective service of process) by invoking § 1651(a). As the Second Circuit observed in *Alemite Mfg. Corp. v. Staff*, "no court can make a decree which will bind any one but a party" to the case; a federal court's "jurisdiction is limited to those over whom it gets personal service." 42 F.2d 832, 832–33 (2d Cir. 1930). Thus, absent personal jurisdiction over an individual, the AWA cannot be used to impose orders on him.

The Supreme Court and lower courts alike confirm this limitation. In *Clinton v. Goldsmith*, for instance, the Court reiterated that the Act "does not enlarge [a court's] power to issue process" beyond its statutory bounds. 526 U.S. at 534. In *Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, the Court rejected an attempt to require state officials to bear prisoner transport costs, holding there was "no statutory authority" for such an order and that the AWA did not supply any. 474 U.S. 34, 43 (1985). In *Catholic Conference v. Abortion Rights Mobilization*, 487 U.S. 72, 76–77 (1988), the Court likewise underscored that a court's subpoena power—akin to the AWA in that it is "in aid of" the merits— "cannot be more

extensive than its jurisdiction," rendering subpoenas void if the issuing court lacks jurisdiction. Consistent with these precedents, federal courts have repeatedly disallowed reliance on § 1651(a) to establish jurisdiction that Congress has declined to grant.  Here, as in *Syngenta* and *Clinton*, the FDIC cannot invoke the Act to bootstrap an otherwise absent jurisdictional basis.

*III. The AWA Is Not "Necessary or Appropriate" in These Circumstances*

Even assuming this Court had jurisdiction, issuing an extraordinary writ under 28 U.S.C. § 1651(a) would still be improper unless it were truly "necessary or appropriate." The AWA is, by design, a narrow, equitable tool.  As the Supreme Court explained in *Clinton v. Goldsmith*, the Act "invests a court with a power essentially equitable" but is "not generally available to provide alternatives to other, adequate remedies at law." 526 U.S. 529, 537 (1999). Accordingly, if ordinary legal avenues suffice, resort to the AWA is unwarranted.  In *Clinton*, the Court refused to rely on § 1651(a) merely to secure relief otherwise governed by administrative or statutory procedures.  It observed that the servicemember could seek redress through the Air Force Board for Correction of Military Records or the Court of Federal Claims, so "[r]esort to the AWA" was "unjustifiable either as 'necessary' or as 'appropriate.'" *Id.* at 537–38.

Likewise, here, the FDIC has not identified any extraordinary circumstance making a writ under § 1651(a) necessary.  No final federal judgment or pending federal proceeding risks being thwarted by a parallel suit or concealed assets—precisely the scenarios warranting § 1651(a).  By contrast, *Baldwin-United Corp. v. PaineWebber, Inc.*, 770 F.2d 328 (2d Cir. 1985), underscores the Act's limited scope.  In *Baldwin-United*, the Second Circuit upheld an injunction under the Act solely because multiple pending state cases threatened to re-litigate issues already before a federal MDL court; the injunction was "necessary to prevent relitigation of an existing federal judgment." *Id.* at 335–36.  Here, no similar danger exists.  Indeed, there is no showing that any parallel state or third-party litigation undermines this Court's

jurisdiction.   In the absence of any concrete interference, invoking the Act would be inappropriate.

The Supreme Court has also cautioned that the AWA "does not authorize [courts] to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).   In other words, the Act is not a procedural shortcut.   Should the FDIC wish to pursue its claim against Williams, it must adhere to the normal processes.   It cannot invoke § 1651(a) to sidestep those requirements.   Courts have consistently rejected attempts to use the Act as a substitute for statutory processes.   *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 31 (2002); *Pa. Bureau of Corr.*, 474 U.S. at 43.   The same reasoning governs here.

Because the FDIC can presumably contact local law enforcement, obtain a state-court restraining order in Massachusetts or Virginia, or otherwise use standard legal channels, an ex parte directive from this federal court is not "necessary." This reality defeats any claim that such an order would be "necessary or appropriate." Where the alleged threat or harassment occurs in Massachusetts or Virginia, local authorities are better suited to address it.   The Supreme Court's admonition in *Clinton* and *United States v. New York Tel. Co.* (see 434 U.S. 159 (1977)) reinforces that the Act is a remedy of last resort, not a first measure.   If FDIC counsel seeks to limit Williams' communications, they can apply for a protective or restraining order in Virginia, where counsel resides.   That approach comports with ordinary personal-jurisdiction principles, as those states presumably exercise undisputed authority over residents or in-state conduct.   *See Clinton*, 526 U.S. at 537–38 (emphasizing that alternative methods negate any "necessity" for an AWA injunction).

## 4.4. Conclusion

The AWA is a narrow adjunct to a federal court's jurisdiction—not an independent jurisdictional grant.   It cannot be used to bypass Rule 65 and *Winter* factors.   It cannot supply

subject-matter or personal jurisdiction where none exists, nor may it be invoked absent a clear necessity to safeguard that jurisdiction. No such necessity appears here. Consequently, § 1651(a) affords no basis for relief, and any request under the AWA to restrain Williams must be denied.

## 4.5. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS SEPARATE DISPUTE

### 4.5.1. Introduction

Williams is not a party to the underlying lawsuit. Yet, the Court is asked to assert jurisdiction over him based solely on his alleged out-of-forum communications with counsel for the FDIC. Williams contends that no statutory or constitutional authority allows the Court to subject him to these proceedings. In particular, neither supplemental jurisdiction under 28 U.S.C. § 1367 nor the doctrine of ancillary jurisdiction extends to the conduct of a true nonparty that lies outside the original case or controversy. Likewise, the AWA, 28 U.S.C. § 1651, cannot serve as an independent "jurisdictional hook" to bring Williams' extrinsic conduct within the Court's power. Because Williams' alleged communications are not part of the claims or controversy in the underlying litigation, this Court lacks jurisdiction over him, and any action against him in this forum must be dismissed.

### 4.5.2. Legal Standard

Federal courts "possess only that power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, "[i]t is to be presumed that a cause lies outside [a federal court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* Put differently, the Court may not extend its authority beyond the scope set by Congress and Article III, and any doubts must be resolved against jurisdiction. When a court's jurisdiction over a person or

subject matter is challenged, the proponent must cite a valid source of authority. Neither judicial convenience nor a generalized interest in justice can expand federal jurisdiction beyond its lawful limits. *See id.* Consequently, the Court must confirm that an affirmative grant of jurisdiction authorizes any action it takes against Williams.

Under 28 U.S.C. § 1367(a), a district court with original jurisdiction over a civil action may exercise supplemental jurisdiction over additional claims "so related" to the original jurisdiction claims "that they form part of the same case or controversy under Article III." This statutory standard reflects the constitutional test established in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), which held that federal courts may hear state-law or ancillary claims only when those claims "derive from a common nucleus of operative fact" such that one would ordinarily expect them to be resolved together. *Id.* at 725. Even then, the exercise of supplemental jurisdiction is discretionary, not mandatory. *See* 28 U.S.C. § 1367(c). Separately, under the doctrine of ancillary jurisdiction, a court may, in limited circumstances, preside over proceedings that are incidental or ancillary to a case already within its authority. However, ancillary jurisdiction exists only for "two separate, though sometimes related, purposes": (1) to allow resolution in a single court of factually interdependent claims, and (2) to enable a court to manage its proceedings, vindicate its authority, or effectuate its decrees. *Kokkonen*, 511 U.S. at 379–80; *see also Peacock v. Thomas*, 516 U.S. 349, 354 (1996); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). If the proceeding at issue does not fit one of those purposes (and is not otherwise within the same case or controversy as the original suit), the court lacks jurisdiction absent an independent basis.

Lastly, while the AWA authorizes federal courts to issue orders "in aid of their respective jurisdictions," 28 U.S.C. § 1651(a), it does not confer subject-matter jurisdiction on its own. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 31 (2002). Courts cannot use the AWA "to evade or extend" the limited jurisdiction that Congress has prescribed. *Id.* at 33.

### 4.5.3. Argument

*I. No Supplemental Jurisdiction Exists Over Williams' Alleged Communications*

The Court lacks supplemental jurisdiction over Williams' alleged communications with FDIC counsel because they are not part of the same "case or controversy" as the claims in the underlying litigation. 28 U.S.C. § 1367(a) allows courts to hear additional claims only when they are sufficiently related to the existing claims to "form part of the same case or controversy" under Article III. In *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), the Supreme Court held that a state-law (or other supplemental) claim must share a "common nucleus of operative fact" with the federal claim to qualify under this standard. *Id.* at 725.

Here, Williams is not asserting any claim in this lawsuit, nor is any party asserting a substantive claim against him that is factually tied to the original suit. His out-of-forum communications with FDIC counsel arise from different operative facts than those involved in the District of Columbia litigation. There is no indication that the occurrence or content of Williams' communications bears upon the claims or defenses in the underlying proceeding; at best, they constitute a collateral matter unconnected to the central "transaction or occurrence" at issue in the federal case. Consequently, exercising supplemental jurisdiction would exceed the scope of § 1367.

Indeed, the Supreme Court has emphasized that federal jurisdiction requires more than superficial factual overlap—the supplemental claim must form part of the same constitutional "case." *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). For instance, in *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005), the Court reiterated that once a federal court has original jurisdiction over an action, it may entertain additional claims only if they "ar[i]se from the same Article III case or controversy" as the anchor claim providing original jurisdiction. *Id.* at 558. Here, Williams' alleged communications do not stem from the central dispute in this lawsuit; they occurred outside the pending litigation and concern distinct factual issues (i.e., the substance of conversations between Williams and FDIC

counsel).  No claim in this proceeding involves Williams as a party on either side.  Absent that shared factual basis, supplemental jurisdiction is foreclosed.  *See Gibbs*, 383 U.S. at 725.

Moreover, even if some attenuated factual connection could be contrived, the Court would still be justified in declining supplemental jurisdiction under *Gibbs*.  Supplemental jurisdiction is discretionary, and courts are encouraged to refrain from enveloping unrelated controversies that risk devolving into "a 'multitude of [mini]-suits'" on peripheral issues.  Stretching this case to include a dispute with a nonparty over out-of-forum communications falls outside § 1367's intended scope.  Williams' outsider status underscores that his situation is distinct from the Article III case or controversy here.  Accordingly, the Court should conclude that it lacks supplemental jurisdiction over any action or dispute based on Williams' alleged out-of-forum communications.

## II. Williams' Conduct Does Not Fall Within Ancillary Jurisdiction

Nor can the Court rely on ancillary jurisdiction to assert authority over Williams in this proceeding.  Ancillary jurisdiction is a narrow exception, designed to allow a court to resolve matters auxiliary to a case already properly before it.  The Supreme Court has recognized only two general categories where ancillary jurisdiction may be invoked: (1) to adjudicate claims that are factually interdependent with the principal claims (e.g., compulsory counterclaims, cross-claims, or impleader claims by defendants), and (2) to take actions necessary for the court to manage its own proceedings or "vindicate its authority" in the case (e.g., punish contempt, sanction abuses of process, or enforce its judgments). *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994); *Peacock v. Thomas*, 516 U.S. 349, 354 (1996).  Williams' situation fits neither category.

First, no one is asserting a claim against Williams that is logically tied to the original claims.  This is not a scenario of impleader or intervention, where a third party's liability arises from the same underlying facts.  By contrast, any dispute over Williams' alleged communications would involve a new and independent factual inquiry—e.g., what he

communicated, in what context, and any legal consequences—distinct from the facts needed to resolve the pending lawsuit. *See Peacock*, 516 U.S. at 354–55. In *Kokkonen v. Guardian Life Insurance Co.*, the Supreme Court refused to permit ancillary jurisdiction to enforce a settlement agreement because the asserted breach was "quite separate" from the original litigation. 511 U.S. at 381. The Court emphasized that enforcing the settlement was "more than just a continuation or renewal of the dismissed suit" and thus "require[d] its own basis for jurisdiction." *Id.* at 379. So too here: addressing Williams' out-of-forum communications is "more than just a continuation" of this case; it amounts to injecting a new, collateral matter that calls for its own jurisdictional footing. The mere fact that Williams communicated with FDIC counsel (a party's attorney) does not make such communications part of the ongoing litigation. There is no factual interdependence justifying a single dispute; any proceeding about Williams' conduct would effectively be a "separate lawsuit" covering a separate controversy. *Peacock*, 516 U.S. at 357.

Second, asserting jurisdiction over Williams is not necessary to "manage [the Court's] proceedings, vindicate its authority, or effectuate its decrees." *Kokkonen*, 511 U.S. at 379. Williams has not violated any Court order, nor is he obstructing the Court's ability to adjudicate this matter or enforce a judgment. His alleged communications with FDIC counsel occurred outside this Court's supervision, and there is no suggestion that those communications obstruct the litigation such that the Court's authority is jeopardized. In *Peacock v. Thomas*, the Supreme Court clarified that ancillary jurisdiction to enforce a judgment or otherwise uphold the court's authority does not extend to imposing liability on new third parties, absent extraordinary circumstances. 516 U.S. at 357. It noted that the Court "has never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* Analogously here, the Court should not expand ancillary jurisdiction to cover a quasi-proceeding against Williams, who

April 28, 2025

"was not already liable" or involved in the original litigation.  This conclusion applies even more strongly at a pre-judgment stage, because Williams' involvement is even further removed from the lawsuit's core dispute than in *Peacock*'s post-judgment scenario.  Put simply, there is no inherent need to bring Williams into this matter for the Court to resolve the claims between the actual parties or to enforce any orders.

Any contention that Williams' communications "affected" the litigation or strategy is too tenuous to ground ancillary jurisdiction.  The Supreme Court instructs that holdings, not dicta, guide the doctrine of ancillary jurisdiction.  *See, e.g., Kokkonen*, 511 U.S. at 379–80.  None of the Court's holdings supports asserting jurisdiction over a nonparty based on such an attenuated link as out-of-court communications with a party's counsel.  *Id.* Indeed, *Kokkonen* warned courts not to stretch ancillary authority to "too attenuated" disputes, declining jurisdiction because the new controversy was not "essential to the conduct of federal-court business." *Id.* at 380.  Here, any issues concerning Williams' conduct are not "essential" to adjudicating the claims before the Court.  Ancillary jurisdiction is therefore unavailable.

*III. The AWA Confers No Independent Jurisdiction Over Williams*

Recognizing the lack of supplemental or ancillary jurisdiction, one might attempt to invoke the AWA, 28 U.S.C. § 1651(a), to reach Williams' conduct.  That effort is misplaced.  The AWA is procedural in character: it authorizes a court to issue orders ("writs") "necessary or appropriate in aid of" its already-existing jurisdiction, but "does not provide federal subject-matter jurisdiction where none exists." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 31 (2002).  Indeed, the Supreme Court has expressly stated that "[t]he AWA does not furnish an independent basis for jurisdiction." *Id.* at 33 (explaining that the Act "is not a substitute" for subject-matter jurisdiction otherwise lacking).  In *Syngenta*, a federal court sought to invoke the AWA to remove a state-court proceeding to federal court even though no ordinary removal statute applied; the Supreme Court unanimously rejected that maneuver, emphasizing that courts may not use the AWA to circumvent statutory jurisdictional requirements. *Id.* at 32–33.

The same principle governs here: if the Court lacks subject-matter jurisdiction over a dispute involving Williams, the AWA cannot create it out of thin air.

To be sure, courts can, in suitable circumstances, rely on the AWA to issue directives to third parties not already before the court, but only when such directives are genuinely necessary to safeguard the court's jurisdiction over a case where that jurisdiction already exists. For example, in *United States v. New York Tel. Co.*, 434 U.S. 159 (1977), the Act enabled a court to require a third-party utility to assist with a pen register in a criminal case—but crucially, the court's jurisdiction over the underlying criminal matter was unquestioned, and the writ to the telephone company "aid[ed]" the court's exercise of that jurisdiction (i.e., gathering evidence). By contrast, if the underlying jurisdictional basis is absent or the proceeding in question does not legitimately belong to the case, the AWA cannot fill the gap. As the Supreme Court observed, the Act "authorize[s] writs in aid of a jurisdiction already acquired on some other ground but does not extend to garnering jurisdiction" where none exists. *Syngenta*, 537 U.S. at 31. Here, as explained above, the Court has not obtained jurisdiction over any claim or matter involving Williams. His communications with FDIC counsel lie outside the case's ambit. An AWA injunction or order targeting Williams would not be "in aid of" the Court's jurisdiction; rather, it would be an attempt to assert new jurisdiction over a new dispute, which the Act prohibits. Moreover, the Anti-Injunction Act, 28 U.S.C. § 2283, and related comity principles also caution against a federal court issuing broad orders against a nonparty in the absence of a concrete link to a pending case—a link that is missing here.

Furthermore, even if Williams' communications were somehow tangentially connected to the lawsuit, there are particular rules and statutes (e.g., rules governing witness tampering, professional ethics, or subpoenas) that address such circumstances if they become relevant. The Supreme Court has noted that when a more specific statute or rule "addresses the particular

April 28, 2025

issue at hand, it is that authority, and not the AWA, that is controlling." *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). Here, no rule or statute authorizes this Court to reach out and adjudicate a nonparty's out-of-court communications. In the absence of that authority, the AWA cannot supply it. Employing the AWA as a jurisdictional vehicle in this scenario would not be "in aid of" the Court's existing jurisdiction, but an improper attempt to enlarge it—an outcome plainly at odds with Supreme Court precedent. *See Syngenta*, 537 U.S. at 33.

*IV. Williams' Out-of-Forum Communications Are Not Part of the Original Controversy*

Finally, Williams' alleged communications with FDIC counsel—all of which occurred outside this forum and outside the context of any proceedings in this case—simply do not constitute part of the *controversy* being litigated here. The *case or controversy* in federal court is defined by the claims and parties brought before the court through pleadings and properly invoked jurisdiction. By definition, Williams' conduct, which took place elsewhere, comprising correspondence or conversations not filed or made in this Court, is ultra vires to the present action. The Court cannot exercise power over every collateral matter associated with a case; it may only adjudicate those matters that are properly before it as part of the case. No party has sued Williams here, and his communications are not an issue that the original parties have presented for the Court's resolution. To involve the Court in policing such external interactions would exceed Article III's limits, which constrain federal courts to actual disputes between proper parties.

Moreover, asserting jurisdiction over a person with no connection to this forum (the District of Columbia) and to a dispute not formally before the Court raises significant fairness and due process concerns. Williams did not choose to avail himself of this forum; he did not file or defend any action here, nor did he voluntarily become a party. To draw him into this case would circumvent the usual safeguards of jurisdiction and service of process—safeguards designed to prevent individuals from being involuntarily subjected to a court's authority

April 28, 2025

without just cause.  The proper method of addressing any complaint about Williams' communications (assuming such a complaint exists) is to pursue it in a separate proceeding in a court that lawfully exercises jurisdiction—for instance, a court where the alleged communications occurred, provided there is an actionable claim and a jurisdictional basis. What the Court cannot do is treat Williams' alleged conduct as though it were part of the D.C. litigation when it is, in fact, an entirely distinct *controversy*.

In sum, Williams' out-of-forum communications with FDIC counsel lie beyond the scope of the issues joined in this case.  They do not form part of the *transaction or occurrence* that the Court is adjudicating, nor do they affect the Court's ability to resolve the actual claims. Treating these communications as within the Court's domain would collapse the crucial distinction between the matter legitimately before this Court and tangential disputes that belong elsewhere.  Accordingly, the Court should decline any invitation to assume jurisdiction over this extraneous matter.

### 4.5.4. Conclusion

For these reasons, Williams respectfully requests that the Court decline to exercise jurisdiction over him as a nonparty respondent and dismiss, vacate, quash, or declare invalid any proceedings or orders directed at him for lack of jurisdiction.  This Court lacks supplemental or ancillary jurisdiction to address Williams' alleged communications, and the AWA provides no independent authority to do so.  Consequently, the Court should hold that it lacks jurisdiction over Williams in this matter and relieve him of any obligations to participate in these proceedings.  Any relief sought against Williams in this case must be denied, and he should be dismissed from this action as a respondent.  The integrity of jurisdictional limits and due process compel no less.

## 4.6. The FDIC Bears the Burden of Establishing Jurisdiction and a Lawful Basis for Ex Parte Relief

### 4.6.1 Legal Standard

As the party seeking extraordinary judicial relief, the FDIC must affirmatively demonstrate that this Court has both subject-matter jurisdiction over the dispute and personal jurisdiction over Williams before any restraining order may issue.  Federal courts are tribunals of limited jurisdiction, with a presumption that any given case lies outside the court's jurisdiction unless proven otherwise.  *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936).  The burden of proof rests entirely on the FDIC to establish jurisdiction "by a preponderance of the evidence." *Id.* at 189.  Williams rejects all FDIC jurisdictional assertions, placing the onus on the FDIC to substantiate its claims with competent evidence—mere allegations are insufficient.  *Id.* at 182–83.

### 4.6.2 Argument

*I. The FDIC Must Prove Subject-Matter Jurisdiction by a Preponderance of the Evidence*

The FDIC must establish that this matter lies within the Court's subject-matter jurisdiction under Article III and pertinent federal statutes.  As the proponent of federal jurisdiction, the FDIC "carr[ies] the burden of establishing it" by clear evidence.  *Rosenboro v. Kim*, 994 F.2d 13, 15 (D.C. Cir. 1993) (citing *McNutt*, 298 U.S. at 182–83).  Since Williams denies the FDIC's jurisdictional claims, the FDIC is obligated to meet its burden with competent proof, not mere assertions.  *McNutt*, 298 U.S. at 182–83.

Additionally, the FDIC must demonstrate a concrete "case or controversy" under Article III, including standing and a ripe dispute.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Williams challenges the existence of such a controversy, requiring the FDIC to produce competent proof.  *Rosenboro*, 994 F.2d at 15; *McNutt*, 298 U.S. at 182–83.

*II. The FDIC Must Prove Personal Jurisdiction Over Williams*

Independently, the FDIC must show that the Court may lawfully exercise personal jurisdiction over Williams. The burden of demonstrating personal jurisdiction rests with the FDIC. *Mwani v. Bin Laden*, 417 F.3d 1 (D.C. Cir. 2005). The FDIC must back its jurisdictional allegations with evidence showing Williams's forum contacts. *Id.* Williams denies such ties, obliging the FDIC to produce competent evidence as required by *McNutt*. 298 U.S. at 182–83.

*III. The FDIC Must Meet the Heightened Burden for Ex Parte TROs Under Rule 65(b)*

Even assuming jurisdiction, the FDIC faces an elevated burden to secure an ex parte TRO. Federal Rule of Civil Procedure 65(b) requires the FDIC to provide specific facts "clearly" showing imminent, irreparable injury before Williams can be heard in opposition. *See Fed. R. Civ. P. 65(b)(1)*. The FDIC must demonstrate a substantial likelihood of success on the merits, irreparable harm, a favorable balance of equities, and that the TRO serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). For ex parte relief, the FDIC must meet a heightened standard, proving that notice is impossible or would negate the relief. *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 180 (1968). Williams disputes the FDIC's claims, compelling the FDIC to present competent evidence. *McNutt*, 298 U.S. at 182–83.

## 4.5.3 Conclusion

In seeking an ex parte TRO, the FDIC must establish this Court's jurisdiction over Williams—both subject-matter and personal—by a preponderance of the evidence and justify extraordinary relief under Rule 65(b) with clear and specific proof. *McNutt*, 298 U.S. at 178, 182–83. Williams rejects all the FDIC's claims, reinforcing that the FDIC must meet its burden with competent evidence; otherwise, the Court must deny relief to preserve jurisdictional boundaries and due process.

April 28, 2025

Dated: April 28, 2025                              Respectfully submitted,


                                        /s/ *Michael Williams*
                                        Michael Williams
                                        Pro Se