**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HISTORY ASSOCIATES INCORPORATED, | |
| *Plaintiff*, | |
| v. | Case No. 1:24-cv-1857-ACR |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | |
| *Defendant*. | |

**FEDERAL DEPOSIT INSURANCE CORPORATION'S OPPOSITION TO PLAINTIFF-INTERVENOR'S MOTION FOR RELIEF FROM ORDER**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .......................................................................................................................3

LEGAL STANDARDS ...............................................................................................................7

ARGUMENT ............................................................................................................................8

I.    THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER MR. WILLIAMS..........................................................................................................................8

    A.    Mr. Williams Caused Tortious Injury in the District of Columbia Through a Persistent Course of Conduct Directed at the District ..........................................9

    B.    Due Process is Satisfied ........................................................................................13

II.   THE COURT SERVED THE NO CONTACT ORDER ON MR. WILLIAMS AND HE IS RECEIVING AN OPPORTUNITY TO BE HEARD..................................14

III.  THIS COURT HAD AUTHORITY UNDER THE ALL WRITS ACT TO ISSUE THE NO CONTACT ORDER...........................................................................................14

CONCLUSION.......................................................................................................................19

# TABLE OF AUTHORITIES

Cases                                                                                    Pages(s)

*American Library Ass'n v. Sonderling*,
   No. 25-1050, 2025 WL 1262054 (D.D.C. May 1, 2025)........................................ 16

*Bible Way Church of Our Lord Jesus Christ World Wide, Inc. v. Showell*,
   578 F. Supp. 2d 164 (D.D.C. 2008) ...................................................................... 9, 10

*Blumenthal v. Drudge*,
   992 F. Supp. 44 (D.D.C. 1998) .................................................................... 10, 11, 13

*Calder v. Jones*,
   465 U.S. 783 (1984)......................................................................................... 13

*Crane v. Carr*,
   814 F.2d 758 (D.C. Cir. 1987) ........................................................................ 11, 12

*Davis v. Pension Benefit Guaranty Corp.*,
   571 F.3d 1288 (D.C. Cir. 2009) ...................................................................... 16

*Etchebarne-Bourdin v. Radice*,
   982 A.2d 752 (D.C. 2009) ......................................................................... 11, 12, 13

*Gomez v. Biden*,
   No. 20-cv-01419, 2021 WL 1037866 (D.D.C. Feb. 19, 2021)............................... 15

*GTE New Media Servs. v. BellSouth*,
   199 F.3d 1343 (D.C. Cir. 2000) ...................................................................... 10, 11

*Hindu Am. Found. v. Viswanath*,
   646 F. Supp. 3d 78 (D.D.C. 2022) .................................................................. 8, 9

*In re Jimmy John's Overtime Litig.*,
   877 F.3d 756. (7th Cir. 2017) ......................................................................... 16, 17

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945).................................................................................... 13

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984)............................................................................................ 9

*Langton v. Town of Chester Library Bd.*,
   No. 14 Civ. 9474, 2018 WL 11425557 (S.D.N.Y. Apr. 2, 2018)............................ 15

*Langton v. Town of Chester Library Bd.*,
   No. 14-cv-9474, 2022 WL 2609005 (S.D.N.Y. July 8, 2022).................................................15

*Lewy v. Southern Poverty Law Ctr*,
   723 F. Supp. 2d 116 (D.D.C. 2010) .....................................................................................9, 11

*Oladokun v. Correctional Treatment Facility*,
   309 F.R.D. 94 (D.D.C. 2015).....................................................................................................7

*S.E.C. v. Bilzerian*,
   75 F. App'x 3 (D.C. Cir. 2003).................................................................................................17

*United States v. Int'l Brotherhood of Teamsters*,
   72 F. Supp. 2d 257 (S.D.N.Y. 1999)........................................................................................15

*United States v. Int'l Brotherhood of Teamsters*,
   907 F.2d 277 (2d Cir. 1990).....................................................................................................15

*United States v. N.Y. Tel. Co.*,
   434 U.S. 159 (1977).................................................................................................................15

*United States v. Turner*,
   No. 3:24-cr-00008, 2024 WL 4700650 (W.D. Va. Nov. 6, 2024)............................................15

*US Dominion, Inc. v. Byrne*,
   600 F. Supp. 3d 24 (D.D.C. 2022) ...........................................................................................17

Statutes

28 U.S.C. § 1651(a) ........................................................................................................................3, 14

D.C. Code § 13-423(a)....................................................................................................................9

D.C. Code § 13-423(a)(4)................................................................................................................9

Rules

Fed. R. Civ. P. 6(b)(2)......................................................................................................................7

Fed. R. Civ. P. 59(e) ..............................................................................................................1, 4, 7

Fed. R. Civ. P. 60(b) ......................................................................................................1, 4, 7, 8

## <u>INDEX OF EXHIBITS</u>

| Exhibit No. | Description |
|---|---|
| 1 | Declaration of Andrew J. Dober<br><br>Exhibit A – January 17, 2025 FDIC_Exposed X Account Posting<br>Exhibit B – January 17, 2025 Email to FDIC Attorneys<br>Exhibit C – Printout of "home page" of the FDIC_Exposed X Account<br>Exhibit D – Text Message to FDIC Counsel's Spouse Personal Cellphone<br>Exhibit E – Text Message to FDIC Counsel Personal Cellphone |
| 2 | Declaration of Bruce M. Berman<br><br>Exhibit A – January 25, 2025 Email to WilmerHale Employees |

By and through its undersigned counsel, Defendant Federal Deposit Insurance Corporation ("FDIC") opposes Plaintiff-Intervenor's Motion for Relief Pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), and under this Court's Inherent Authority to Grant Relief ("Williams Motion").  ECF 58.

## PRELIMINARY STATEMENT

This Court has the jurisdiction and authority to prevent Plaintiff-Intervenor Michael Williams ("Mr. Williams") from continuing to harass FDIC counsel and family members in this case.  The relevant Order (the "No Contact Order") is narrowly tailored to limit contact only with "FDIC counsel of record in this case or their family members."  ECF 30.[1]  Contrary to Mr. Williams's assertions, it does not prevent him from posting on the X (formerly Twitter) account "FDIC Exposed," nor does it prevent him from any whistleblowing activity or Freedom of Information Act ("FOIA") requests.  Further, the No Contact Order is necessary, as Mr. Williams has proven that he is willing to engage in repeated harassment.  And the No Contact Order – addressing as it does the conduct of an alleged witness relied upon by Plaintiff to support certain of its allegations against the FDIC – directly relates to this Court's ability to manage the case before it and prevent harassment of the attorneys involved in that case.

Mr. Williams is a former FDIC employee separated from employment since July 2024.  Exhibit 1, Declaration of Andrew J. Dober ("Dober Dec.) ¶ 3.  He first inserted himself into this case by reaching out to a client of Plaintiff's counsel and then providing information to Plaintiff's counsel on two occasions in mid-January.  *See* Transcript of Status Conference at 11, Jan. 22, 2025, ECF 33.  On January 17, 2025, a post on "FDIC Exposed" began targeting the

---

[1] The Court had previously entered an order against Mr. Williams on January 24, 2025 (the "Prior Order").  ECF 29.  The No Contact Order, however, vacated the Prior Order.  ECF 30 at 1.  Therefore, any challenge to the Prior Order is moot.

FDIC attorneys in this litigation, by name and bar number, for disciplinary complaints and disbarment.  Dober Dec. ¶¶ 4, 5.  Mr. Williams transmitted this post to FDIC counsel at their work address on January 17, 2025.  Dober Dec. ¶ 5.  Then, on January 20, 2025, Mr. Williams's efforts took a more alarming turn when he sent threatening texts to the personal cell phones of FDIC Senior Counsel Andrew Dober ("Mr. Dober") and his wife purporting to follow up on his January 17 email.  These texts stated that "I hope you know we never forget," and the text to Mr. Dober ominously promised that "my guys" would send a package of documents to Mr. Dober's home address, including Mr. Dober's home address – where his family lives – in the text message.  But Mr. Williams did not stop there.  After receiving a copy of this Court's Prior Order, he decided to respond with, what was his words, "overwhelming force."  There is no dispute that Mr. Williams sent a defamatory and harassing email to more than 700 of Ms. Dober's colleagues at her place of business, including almost 200 colleagues in D.C.  *See* Exhibit 2, Declaration of Bruce M. Berman ("Berman Dec.") ¶ 4.  In that mass email, Mr. Williams accused Mr. and Ms. Dober of, among other things, criminal conduct by engaging in "extensive insider trading of bank stocks using internal information at the FDIC."  Berman Dec. Ex. A, at 2. He also accused the Dobers of manufacturing text messages and stated that the behavior of Ms. Dober "disreputes the firm."  *Id*.  Mr. Williams email claimed that some of his information was based on "first-person chamber accounts."  *Id*. at 1.  There is no place for Mr. Williams's stream of harassing and defamatory behavior.  The question is whether this Court has any power to prevent it.  It does.

First, this Court has personal jurisdiction over Mr. Williams.  He caused defamatory injury in the District of Columbia.  And he has engaged in a persistent course of conduct directed at the District.  He received notice of the No Contact Order and is receiving an opportunity to be

heard by this Court.  There is nothing unfair, much less unconstitutional, about subjecting him to this Court's jurisdiction.

Second, the Court has subject matter jurisdiction over the FOIA case and the authority to enter the No Contact Order under the All Writs Act, which provides the Court authority to issue orders that are "appropriate in aid of [its] . . . jurisdiction[] and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  Mr. Williams has inserted himself into this action as a potential witness for Plaintiff and this Court can and should act to prevent him from frustrating the conduct of this matter by sending intimidating and defamatory communications to Defendant's counsel of record and family members.

## BACKGROUND

On June 27, 2024, Plaintiff filed its FOIA complaint against the FDIC.  ECF 1.  On January 17, 2025, Plaintiff filed a status report in which Plaintiff stated that "public whistleblower allegations" had surfaced that called into question the FDIC's FOIA policies and practices.  *See* Status Report, at 1-2, 4-6, ECF 27.  Based on these allegations, Plaintiff noted that it intended to move for leave to amend its complaint to challenge the FDIC's policies and practices more generally.  *Id.* at 2.  At a January 22, 2025, status conference the Court granted Plaintiff leave to amend.  ECF 33, at 11.  At that same conference, Plaintiff's counsel clarified that Mr. Williams was a purported whistleblower it had relied upon and that Mr. Williams had inserted himself into this District of Columbia action by "reach[ing] out to a client [of Plaintiff]" and engaging in two phone calls with Plaintiff's counsel.  *Id.*[2]

---

[2] To be clear, the FDIC does not allege or suggest that Plaintiff or their counsel had knowledge of, or participation in, Mr. Williams's misconduct.

Meanwhile, Mr. Williams was contacting FDIC counsel assigned to the case and the spouse of one of the FDIC attorneys. *See* Dober Dec. at 2-3. Specifically, on January 20, 2025, Mr. Williams texted Ms. Dober on her personal cell phone, purportedly in a mistaken attempt to reach Mr. Dober. *Id*. ¶ 7. In relevant part that text reads: "Andrew, Michael here hope you are well. I hope you know we never forget. Following up on my FOIA requests to see if you have made any progresses [sic]. . . . Sorry . . . I meant to message Andrew my bad." *Id*. ¶ 7; Dober Dec. Ex. D. Mr. Dober and Ms. Dober have never given Mr. Williams their personal cell phone numbers. Dober Dec. ¶ 9. A few minutes later, Mr. Williams texted Mr. Dober on his personal cell, similarly stating that "I hope you know we never forget," that Mr. Williams would be sending a package of documents to Mr. Dober's home address – which he identified in the text message – that Mr. Dober should provide documents to Mr. Williams rather than "perjure" himself on the stand, and that Mr. Williams had received recordings of Mr. Dober. *Id*. ¶ 8; Dober Dec. Ex. E. Mr. Williams denies sending these texts, but they came from a "Michael" from an Australian number (country code 61) and reference pending FOIA requests. Dober Dec. Exs. D, E. The FDIC understands that Mr. Williams lives in Australia. *See* Plaintiff-Intervenor's Memorandum in Support of Motion for Relief Pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), and Under this Court's Inherent Authority to Grant Relief ("Williams Mem."), at 15, ECF 59 ("The alleged communications took place between Williams's overseas location and counsel in Virginia").[3]

Mr. Dober sent redacted versions of these texts to the Court on January 21, 2025 (copying Plaintiff's counsel). In the face of these harassing messages, this Court entered the Prior Order on January 24, 2025. ECF 29; *see also* ECF 33, at 11-21. At the Court's instruction,

---

[3] Mr. Williams lists his location on the docket sheet at a P.O. Box in Australia.

Plaintiff's counsel sent Mr. Williams a copy of the Prior Order on January 24, 2025.  *See* ECF 30 at 1.  Mr. Williams's response was to attach the Prior Order to a mass email sent to over 740 individuals at the law firm WilmerHale where Ms. Dober works.  *See* Berman Dec. Ex. A. WilmerHale has offices in Washington, D.C. and almost 200 of the individuals that received the email work out of the D.C. offices.  Berman Dec. ¶¶ 2, 4. The email recipients included partners at the firm.  *Id*. ¶ 4.  Ms. Dober works in WilmerHale's D.C. office.  *Id*. ¶ 3.  In the WilmerHale email, Mr. Williams accused the Dobers of fabricating the text messages and went on to make defamatory and disparaging accusations against Mr. and Ms. Dober.  Berman Dec. Ex. A.  For example, Mr. Williams stated that "[b]ased on first-person chamber accounts, we have reason to believe that Ms. Dober was involved in supporting Mr. Dober in manufacturing and claiming these false messages exist."  *Id*. at 1.  He also falsely accused Mr. and Ms. Dober of having "engaged in extensive insider trading of bank stocks using internal information at the FDIC" and stated that "Ms. Dober's behavior disreputes the firm."  *Id*. at 2.  Mr. Williams claimed that some of his information came from "first-person chamber accounts."  *Id*. at 1.

Mr. Williams is a member of an X site called "FDIC Exposed."  *See* @FDIC_Exposed, X, https://x.com/fdic_exposed?lang=en (last visited May 6, 2025); *see* also Memorandum of Points and Authorities in Support of Michael Williams's Motion to Intervene at 5-6, ECF 45-2 ("Mr. Dober knows @FDIC_Exposed, *of whom Mr. Williams serves as a member*, and intends to release ample evidence against Mr. Dober that will likely result in his disbarment.") (emphasis added).  This website is interactive and generally accessible to the public, including members of the public residing in the District of Columbia.  It purports to come from a "journalist" located in Washington, D.C.  @FDIC_Exposed, X, https://x.com/fdic_exposed?lang=en; *see* also Dober Dec. Ex. C.  It also makes allegations against Mr. Dober in this case, for example accusing him

of enabling the destruction of evidence and calling for his disbarment (as well as the disbarment of counsel Lina Soni).  @FDIC_Exposed, X, https://x.com/fdic_exposed?lang=en.  Nothing in the No Contact Order prevents Mr. Williams (or anyone else) from posting messages on the "FDIC Exposed" site.  Nevertheless, his contacts with the District of Columbia are augmented by his activity.  This is further shown by the fact that Mr. Williams – although he claims he doesn't own "FDIC Exposed" – started a "Go Fund Me" page to solicit donations from the public for "FDIC Exposed" in the District of Columbia.  *See* Fundraiser by Michael Williams: FDIC_Exposed, https://www.gofundme.com/f/fdicexposed (last visited on May 6, 2025) (listing Mr. Williams's location as the "Organizer" in "Washington, D.C.").

On January 27, 2025, the Court entered the No Contact Order, which vacated, supplemented, and superseded the Prior Order.  ECF 30.  The No Contact Order is narrowly tailored to bar Mr. Williams from contacting "FDIC counsel of record in this case or their family members."  ECF 30, at 2.  It does *not* prevent Mr. Williams from posting on websites, including the FDIC Exposed X account he maintains with others.  It does *not* prevent Mr. Williams from whistleblowing activity or making FOIA requests or queries.  Further, on February 19, 2025, the Court modified the No Contact Order to "permit Mr. Williams to communicate with the parties in this case solely for necessary service and meet and confer purposes."  Minute Order, Feb. 19, 2025.  The No Contact Order also gave permission for Mr. Williams to "intervene in this matter for the sole purpose of addressing [the No Contact Order]."  ECF 30, at 2.  On January 27, 2025, the Court served the No Contact Order on Mr. Williams via electronic-mail at Michael.williams@glexia.com, the same email that he used to send his harassing email to WilmerHale.

After extensions to file granted by the Court (which the FDIC understands had the effect of extending the No Contact Order), on April 28, 2025, Mr. Williams filed the Motion seeking to strike, vacate, or otherwise declare void the No Contact Order. Mr. Williams did not, however, file his associated Memorandum in support of the Motion until May 1, 2025. ECF 59.

## LEGAL STANDARDS

Mr. Williams moves under Federal Rules of Procedure 59(e), 60(b), and "under this Court's inherent authority to grant relief." Williams Motion at 1.

Under Rule 59(e), a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). No judgment has been entered against Mr. Williams. Nor did Mr. Williams file a motion to alter or amend any judgment within 28 days of entry of the No Contact Order. *See, e.g.*, *Oladokun v. Correctional Treatment Facility*, 309 F.R.D. 94, 98 (D.D.C. 2015) ("After twenty-eight days have passed, the Court cannot grant relief under Rule 59(e) and the Court does not have the authority to extend this deadline."); *see also* Fed. R. Civ. P. 6(b)(2) ("A court must not extend the time to act under Rule[] . . . 59[e]."). Accordingly, the FDIC does not believe that Rule 59(e) provides the appropriate basis for challenging the No Contact Order.

However, the Motion can be treated as one under Federal Rule of Civil Procedure 60(b). In relevant part, under Rule 60(b) "[o]n motion and just terms, the court may relieve a party . . . from a final . . . order . . . for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) new discovered evidence . . . ;

(3) fraud . . . misrepresentation, or misconduct by an opposing party;

(4) the judgment is void; [or]

7

\* \* \*

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

## ARGUMENT

This Court has specific personal jurisdiction over Mr. Williams to impose the No Contact Order.  It is undisputed that Mr. Williams purposefully directed a mass email to the D.C. offices of WilmerHale that disparaged, defamed, and harassed Mr. and Ms. Dober.  The No Contact Order being challenged is specifically related to this misconduct by Mr. Williams and narrowly tailored to fit that conduct.  There is nothing unfair (much less unconstitutionally unfair) about haling Mr. Williams into a court in a District where he has purposefully targeted tortious conduct.  Moreover, Mr. Williams reached out into the District to contact a client of Plaintiff's counsel and insert himself as a potential witness into this case.  And he is part of the group of individuals that runs the X account, "FDIC Exposed," which is interactive, targeted at a District of Columbia audience, and available 24-7 in the District of Columbia.

Mr. Williams also received both notice of the No Contact Order – through service by the Court itself – and a fully adequate opportunity to challenge that Order before this Court.

Further, this Court had the authority to enter the No Contact Order under the All Writs Act.

## I.    THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER MR. WILLIAMS

In order to exercise power over Mr. Williams, this Court must have personal jurisdiction over him.  *See Hindu Am. Found. v. Viswanath*, 646 F. Supp. 3d 78, 92 (D.D.C. 2022).  There are two types of personal jurisdiction – general and specific.  *Id*.  The brief focuses on specific jurisdiction.  To establish specific jurisdiction over a non-resident defendant, the matter must

8

come within the scope of the District of Columbia's long-arm statute – D.C. Code § 13-423(a) – and also satisfy the constitutional requirement of due process. *Hindu Am. Found.*, 646 F. Supp. 3d at 92; *see, e.g*, *Bible Way Church of Our Lord Jesus Christ World Wide, Inc. v. Showell*, 578 F. Supp. 2d 164, 167-68 (D.D.C. 2008) (recognizing that the "jurisdictional reach of a federal court is the same as that of [the] state or local court of general jurisdiction in the forum where the federal court sits").

### A.    Mr. Williams Caused Tortious Injury in the District of Columbia Through a Persistent Course of Conduct Directed at the District

Mr. Williams's email to WilmerHale, Ms. Dober's place of employment, falls squarely under Section 13-423(a)(4) of the District of Columbia long-arm statute. *See* D.C. Code § 13-423(a)(4). That provision empowers courts to exercise jurisdiction over a person "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he . . . engages in . . . [a] persistent course of conduct . . . in the District of Columbia." D.C. Code § 13-423(a)(4). *See Lewy v. Southern Poverty Law Ctr.*, 723 F. Supp. 2d 116, 123 (D.D.C. 2010) (applying (a)(4) to a defamation claim). Thus, personal jurisdiction under this provision requires (a) an injury in the District of Columbia and (b) a persistent course of conduct in the District of Columbia (sometimes called a "plus factor"). Here both requirements are satisfied.

First, Mr. Williams undoubtedly has caused tortious injury – including reputational harm and harassment – in the District of Columbia through his mass email to *hundreds* of Ms. Dober's colleagues. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984) ("The tort of libel is generally held to occur wherever the offending material is circulated.").

Second, as for persistent conduct, the email to Ms. Dober's coworkers alone – received individually by hundreds of WilmerHale employees, including individuals in the District – constitutes persistent conduct. While it may have been sent only once, it was received

9

individually by hundreds of people.  But there is much more. The email is part of a series of

steps and activities directed toward the District of Columbia which includes Mr. Williams's

reaching out to Plaintiff's counsel to insert himself as a potential witness in this case, all the

while sending threatening and harassing backchannel communications directly to FDIC counsel

and his family member.

There is no dispute that Mr. Williams, in his own words, "ha[s] posted accusations of

misconduct by . . . attorneys [*i.e.*, Mr. and Ms. Dober] . . . through the X account

@FDIC_Exposed"."  *See* Berman Dec. Ex. A.  The Court can take judicial notice of the fact that

the X website is an interactive one that can be accessed by D.C. residents.  *See Bible Way*, 578 F.

Supp. 2d at 171 (explaining that "[f]or a website to constitute a persistent course of conduct

within the District of Columbia, it must meet a certain level of interactivity," and that mere

maintenance of a "passive" website is insufficient).

In addition to his "FDIC Exposed" posts on X, Mr. Williams has personally solicited

donations for "FDIC Exposed" through a "Go Fund Me" page where he lists his location as the

organizer as "Washington D.C."  *See* https://www.gofundme.com/f/fdicexposed.  The

interactivity of these websites – together with their constant availability to D.C. residents –is

important to the personal jurisdiction analysis.  As the court explained in *Blumenthal v. Drudge*,

992 F. Supp. 44, 56 (D.D.C. 1998):

> [T]he exercise of personal jurisdiction is contingent upon the web site involving
> more than just the maintenance of a home page; it must also allow browsers to
> interact directly with the website on some level.  In addition, there must also be
> some other non-Internet related contacts between the defendant and the forum
> state in order for the court to exercise personal jurisdiction.  Because the Court
> finds that [the] defendant . . . has an interactive web site that is accessible to and
> used by District of Columbia residents and, in addition, that he has had sufficient
> non-Internet related contacts with the District of Columbia, the Court concludes
> that [defendant] has engaged in a persistent course of conduct in the District.

*Id.*; *cf. GTE New Media Servs. v. BellSouth*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) ("mere

accessibility" of a website does not establish minimum contacts). The "FDIC Exposed" website is inherently interactive and designed to be so. *See* https://x.com/fdic_exposed?lang=en. Internet users can comment on posts, repost posts, elect to follow the site as a whole, and "like" posts. *See id*. The very idea of X is that the visitors to the site – including D.C. visitors – are able to engage in a conversation with the posts on the site. The subject matter of the site is also centered on the District of Columbia. The entire focus of the "FDIC Exposed" site is alleged goings-on at the FDIC. *See Blumenthal*, 992 F. Supp. at 57 (personal jurisdiction found where, among other things, website was devoted to "'inside the Beltway' gossip and rumor"). And Mr. Williams has gone a step further by posting a "Go Fund Me" page that solicits donations for "FDIC Exposed," announcing that the "Go Fund Me" page is from a District of Columbia address.

Simply put, there is ample evidence of a persistent course of conduct by Mr. Williams in the District of Columbia – both on an internet website and outside the internet (his mass email and his reaching out as a potential witness). And even if some of these forum contacts do not directly relate to his harassment of counsel and his spouse, that does not matter for the purposes of finding the persistent conduct "plus factor." *See Lewy*, 723 F. Supp. 2d at 123 (persistent conduct for purposes of (a)(4) need not relate to the claim at issue). A defendant's contacts "need not be great to satisfy subsection (a)(4); they need only be sufficient to establish a real connection to the District of Columbia such that a party might expect to be subjected to jurisdiction [t]here." *Lewy*, 723 F. Supp. 2d at 124, 126 (also noting that "[c]ourts have routinely considered the totality of defendants' contacts in assessing the 'plus factors' of subsection (a)(4)"); *see also Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987) ("[S]ubsection (a)(4) contemplates a connection that may be *un* related to the claim in suit."); *Etchebarne-Bourdin v.*

*Radice*, 982 A.2d 752, 755, 761, 763 (D.C. 2009) (finding no nexus required between claim at issue and "plus factors" such as persistent course of conduct and adopting reasoning of *Crane*).

In summary, Mr. Williams has engaged in a persistent course of conduct by:

- Sending a defamatory email to hundreds of Ms. Dober's colleagues at her place of employment in the District of Columbia;

- Reaching out to insert himself into this District of Columbia case as a witness;

- Providing information to Plaintiff's counsel, located in the District of Columbia, with the intent that Plaintiff's counsel append such information to pleadings in this case. *See* ECF 27-4, 27-5;

- Being a member of an X account – which self-identifies as coming from a journalist in the District of Columbia – that is both interactive and accessible 24 hours a day to District of Columbia residents; and

- Personally soliciting donations for the "FDIC Exposed" X account using the District of Columbia as his location as "Organizer."

This is more than enough to show that Mr. Williams has more than "no, or scant, affiliations" with the District of Columbia. *See Crane*, 814 F.2d at 763 ("The 'something more' or 'plus factor' does not itself supply the basis for the assertion of jurisdiction, but it does serve to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum.").[4]

---

[4] Mr. Williams argues that his contacts are subject to the government contact exception, *see* Williams Mem. at 17-22, ECF 59, asserting that "the only alleged ties between Williams and the District of Columbia arise from his contacts with federal government agencies in D.C." *Id*. at 17-18. Mr. Williams is wrong. His government-contact-exception argument relies on ignoring his *non*-government communications into the District of Columbia. He never mentions, for example, his mass email to WilmerHale that has nothing to do with anything that could be covered by the government contacts exception. The FDIC is not relying on any of Mr.

**B.**    **Due Process is Satisfied**

Before it may exercise jurisdiction over Mr. Williams, the Court must also satisfy itself that doing so would not offend "traditional notions of fair play and substantial justice" under the constitution's guarantee of due process. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Here, the presence of the persistent conduct that underlies personal jurisdiction under subsection (a)(4) of the long-arm statute demonstrates that due process is satisfied. *See Etchebarne-Bourdin*, 982 A.2d at 762 (the presence of the "plus factor" of persistent conduct in (a)(4) is "intended to ensure that there are minimum contacts with the forum sufficient to satisfy due-process concerns"). Indeed, a finding of persistent conduct is a safeguard to ensure that due process is satisfied. *Id*. at 763; *see also Blumenthal*, 992 F. Supp. at 57-58 (because persistent conduct found, it followed that there were also sufficient minimum contacts to satisfy due process).

Mr. Williams reached out to be a potential witness in the case for the Plaintiff in the District of Columbia. He is a member of an X account that primarily makes accusations against entities and individuals in the District of Columbia, and is available to all District of Columbia residents. He has solicited donations for the "FDIC Exposed" site while representing to prospective donors that he is located in the District of Columbia. And most fundamentally, Mr. Williams intentionally directed defamatory statements into the District of Columbia to inflict harm on Ms. Dober at her place of business in the District of Columbia. There is simply nothing unfair or unconstitutional about a court in the District of Columbia acting to stop his defamatory and harassing behavior. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (libel case where due

---

Williams's FOIA-related communications, or any other relevant government contacts, to establish personal jurisdiction.

process was satisfied where petitioners' "intentional, and allegedly tortious, actions were expressly aimed at California").

## II.    THE COURT SERVED THE NO CONTACT ORDER ON MR. WILLIAMS AND HE IS RECEIVING AN OPPORTUNITY TO BE HEARD

Mr. Williams complains that he did not receive adequate due process – *i.e.*, service and an opportunity to be heard before the Court issued the No Contact Order. *See* Williams Mem. at 37-45. But the Court *did* serve him with the No Contact Order at his email address (and there is no question that he also had actual notice of the Prior Order as he attached it to his mass email to WilmerHale). *See* Berman Dec. Ex. A. Further, the Court ensured that he had an opportunity to be heard on the No Contact Order by (a) inviting him to intervene to challenge the No Contact Order, and (b) entertaining that challenge, which he has taken up.

To the extent there were any infirmities with the Prior Order, such as lack of notice, they were rendered moot by the No Contact Order that superseded the Prior Order. The Court served the No Contact Order on Mr. Williams and gave him an opportunity to be heard. It is undisputed that Mr. Williams received the No Contact Order. It is undisputed that Mr. Williams is being heard. As discussed above, this Court has specific personal jurisdiction over Mr. Williams. And as set forth, *infra* at Section III, this Court has the authority to prevent Mr. Williams from harassing FDIC counsel of record in this case.

## III.    THIS COURT HAD AUTHORITY UNDER THE ALL WRITS ACT TO ISSUE THE NO CONTACT ORDER

This Court has authority under 28 U.S.C. § 1651(a) (the "All Writs Act") to prevent Mr. Williams from harassing the attorneys of record before this Court. The All Writs Act provides that all courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

Courts have authority to issue injunctions under the All Writs Act against nonparties.

14

*See, e.g.*, *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977) ("The power conferred by the [All Writs Act] extends, under appropriate circumstances, to persons who though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice . . . ."); *United States v. Int'l Brotherhood of Teamsters*, 907 F.2d 277, 281 (2d Cir. 1990) ("Injunctions may be issued against non-parties under the All Writs Act."); *but see Gomez v. Biden*, No. 20-cv-01419, 2021 WL 1037866, at *3 (D.D.C. Feb. 19, 2021) ("[T]he court cannot grant relief under the All Writs Act that is effectively a preliminary injunction."). Equitable principles make this especially true here, where the nonparty is engaged in wrongdoing directly related to the proceeding itself. A court must have the minimum contacts that are constitutionally required for due process for the nonparty to be subject to the injunction. *See, e.g.*, *Teamsters*, 907 F.2d at 281; *United States v. Int'l Brotherhood of Teamsters*, 72 F. Supp. 2d 257, 262 (S.D.N.Y. 1999). Here, as discussed above, the Court does have personal jurisdiction and the minimum contacts with the District of Columbia necessary to satisfy due process.

The No Contact Order is also "appropriate" as a necessary step for this Court to prevent unlawful conduct that could frustrate the proceeding before it. Mr. Williams – who, at the time of his conduct, was attempting to be a witness for Plaintiff in this action – is engaged in wrongdoing, a purpose of which is to have a chilling effect on counsel for the Defendant.[5]

Mr. Williams contacted counsel and his spouse on their personal cell phone numbers and

---

[5] *See Langton v. Town of Chester Library Bd.*, No. 14 Civ. 9474, 2018 WL 11425557, at *2 (S.D.N.Y. Apr. 2, 2018) (recognizing that court had authority under All Writs Act to issue a no contact order against a witness but declining under the circumstances of that case to issue the order), *aff'd*, No. 14-cv-9474, 2022 WL 2609005 (S.D.N.Y. July 8, 2022); *cf. United States v. Turner*, No. 3:24-cr-00008, 2024 WL 4700650, at *1 (W.D. Va. Nov. 6, 2024) (stating, in a case involving a no contact order issued against a criminal defendant that "a district court has inherent authority to protect its proceedings and the administration of justice").

made sure FDIC counsel knew that (a) Mr. Williams had the personal cell phone number for Mr. Dober's spouse; (2) had researched the Dobers' home address; and (3) that Mr. Williams intended to have his "guys" send a "FOIA package" to Mr. Dober's home, where his family lives. When Mr. Williams was served with the Prior Order he responded – in his own words – with "overwhelming force" by attacking Ms. Dober at her place of business and lodging accusations of criminality.

Further, the No Contact Order is "in aid of" this Court's jurisdiction because it prevents Mr. Williams from interfering in the proceedings by defaming and harassing the attorneys of record involved in the underlying matter (a FOIA case over which this Court unquestionably has jurisdiction). This Court's jurisdiction over the case includes the inherent authority to manage the parties, witnesses, and counsel before it. Indeed, Mr. Williams's conduct threatens the lawyers representing one of the parties.

Typically, for a court to enter a temporary restraining order or a preliminary injunction four factors must be balanced:

- The movant's showing of a substantial likelihood of success on the merits;

- Irreparable harm to the movant;

- Whether there is substantial harm to the nonmovant or non-interested parties; and

- Whether the order furthers the public interest.

*See, e.g.*, *Davis v. Pension Benefit Guaranty Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009) (preliminary injunction); *American Library Ass'n v. Sonderling*, No. 25-1050, 2025 WL 1262054, at *2 (D.D.C. May 1, 2025) (temporary restraining order).

There is a circuit split as to whether balancing these four factors is required in the context of an All Writs Act order. *See In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 770 n.11. (7th

Cir. 2017).  The D.C. Circuit has not yet opined on the issue.  *See S.E.C. v. Bilzerian*, 75 F.

App'x 3, 4 (D.C. Cir. 2003).  Nevertheless, it is clear that the factors decidedly tip in favor of the

No Contact Order.

First, while there has been no complaint filed against Mr. Williams, it is clear that his

conduct constitutes both harassment and defamation.  Mr. Williams sent a mass email to over

740 of Ms. Dober's work colleagues accusing her of, among other things, criminal behavior.  *See*

Berman Dec. Ex. A.  This Court has already found that this blast email to WilmerHale was

harassing.  Mr. Williams has sent Mr. and Ms. Dober texts to their personal cell phones, when

Mr. and Ms. Dober never gave him their personal numbers.  *See* Dober Dec. ¶¶ 7-9; Dober Dec.

Exs. D, E.  And he has referenced the Dobers' home address, which, again, the Dobers never

provided to him.  *See* Dober Dec. ¶ 9; Dober Dec. Ex. E.

The correspondence to hundreds of Ms. Dober's work colleagues is also plainly

defamatory.  It falsely alleges that the Dobers engaged in "extensive insider trading of bank

stocks using internal information at the FDIC."  *See* Berman Dec. Ex. A, at 2.  Such false

allegations of criminal conduct are *per se* defamatory under District of Columbia law.  *See, e.g.*,

*US Dominion, Inc. v. Byrne*, 600 F. Supp. 3d 24, 30 (D.D.C. 2022) ("To state a claim for

defamation per se, the plaintiff must show that the defendant has falsely accused the plaintiff of

particularly bad conduct, such as committing an unlawful act . . . .").

Second, FDIC counsel of record will be irreparably harmed in the absence of the No

Contact Order.  As discussed above, Mr. Williams has proven that he is willing to send

harassing, threatening, and defamatory communications to FDIC counsel, their family members,

and their business colleagues.  And he has done so repeatedly.  Indeed, even after receiving a

copy of the Prior Order, Mr. Williams's response was to increase his campaign of harassment.

17

*See* Berman Dec. Ex. A (Mr. Williams attached the Prior Order to his mass email to WilmerHale).  His conduct needs to stop, and only an enforceable court order can achieve that result.

Mr. Williams claims that his "primary communications to FDIC counsel concern his whistleblower disclosures and FOIA-related queries, which hardly qualify as imminent threats of harm."  *See* Williams Mem. at 32.  But Mr. Williams is simply ignoring his relevant unlawful communications.  Most glaringly, Mr. Williams does not even address his WilmerHale email, which on its face has nothing to do with making FOIA inquiries or engaging in valid whistleblowing.  Instead, it is a defamatory and transparent attempt to intimidate and threaten counsel.

Third, there will be no harm to Mr. Williams from an order preventing him from contacting FDIC counsel (other than in connection with service of papers and meet and confers) and their family members.  His use of those communications has been for the unlawful purpose of harassment, intimidation, and defamation; there can be no harm from him being prevented from continuing this unlawful behavior.  Moreover, despite his protests to the contrary, nothing in the narrowly tailored order prevents Mr. Williams from continuing to post on "FDIC Exposed" or engage in alleged whistleblowing activities.  *See, e.g.*, Williams Mem. at 33, 34 (claiming the No Contact Order bars him from "raising whistleblower concerns").  Further, the No Contact Order by its terms applies only to communications with FDIC "counsel of record in this case or their family members."  ECF 30, at 2.  Thus, it does not prevent Mr. Williams from contacting the FDIC about FOIA requests or from making alleged whistleblower allegations on his "FDIC Exposed" site.  And he certainly has no need to contact the family members of FDIC counsel to engage in those activities.  The No Contact Order simply prevents unlawful conduct;

depriving Mr. Williams of the opportunity to engage in that conduct is no harm.

Finally, the public has an interest in seeing that lawyers appearing before courts in the District of Columbia do so free from intimidation and harassment, especially by a witness seeking to insert himself into the case.

## CONCLUSION

For the foregoing reasons, this Court should not vacate the No Contact Order.

Dated:    May 15, 2025                Respectfully submitted,


By:    /s/ *Briena L. Strippoli*
Briena L. Strippoli (MD Bar # 0612130372)
Senior Attorney
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive Arlington, VA 22226
Telephone: 571.381.6246
bstrippoli@fdic.gov

Lina Soni (D.C. Bar #503298)
Counsel
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive Arlington, VA 22226
Telephone: 571.286.0401
lsoni@fdic.gov

*Attorneys for the FDIC*