**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HISTORY ASSOCIATES INCORPORATED,

Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,

Defendant.

Case No. 1:24-cv-1857-ACR

**MOTION FOR LEAVE TO TAKE DISCOVERY**

Plaintiff History Associates respectfully requests that the Court issue an order permitting History Associates to issue targeted additional discovery to complete the record for its FOIA policy-or-practice claims. The FDIC opposes this motion.

After the FDIC initially stonewalled History Associates' FOIA requests during this litigation, History Associates amended its complaint to allege that the FDIC maintains unlawful policies or practices that frustrate FOIA requests. The Court has already ordered the FDIC to produce certain written FOIA policies and training materials relevant to History Associates' policy-or-practice claims. But important gaps remain. Those gaps can be filled by: (1) a focused 30(b)(6) deposition exploring how the FDIC implements its written policies and training materials in practice; and (2) the FDIC's production of the letters it sends to FOIA requesters when it withholds records under Exemption 8, which its recently filed declaration indicates should be easy to gather.

That discovery should not wait until resolution of the FDIC's motion to dismiss the policy-or-practice claims. The FDIC's motion to dismiss is futile, as explained in History Associates' contemporaneously filed opposition. And even if the motion were granted, History Associates could amend its complaint to incorporate the corroborating evidence it has already gathered since

filing the amended complaint. The Court should not accede to the FDIC's effort to delay. Instead, the Court should order the limited additional discovery requested in this motion to complete the record, so that the parties can brief and the Court can decide the merits on cross-motions for summary judgment.

**BACKGROUND**

The FDIC's mistreatment of the pause-letter request before and during this litigation raised concerns that the FDIC was engaged in unlawful FOIA policies and practices that would result in similar mistreatment of other FOIA requests History Associates had submitted as part of its crypto-debanking FOIA campaign. History Associates therefore amended its complaint to allege that the FDIC maintains the following four unlawful policies or practices: (1) categorically denying FOIA requests for bank supervisory documents under Exemption 8; (2) failing to instruct its employees to construe FOIA requests liberally; (3) failing to provide guidance to employees on how to conduct searches; and (4) refusing to implement litigation holds or otherwise take adequate steps to preserve records subject to a FOIA lawsuit. *See* ECF 37 ¶¶ 120-23.

Seeking to bring these claims to resolution efficiently, the Court temporarily stayed this case to allow the parties to engage in a cooperative information-sharing process. Although the FDIC largely obstructed that process with respect to the policy-or-practice claims, at the eleventh hour the agency produced the FOIA policies from many of its internal divisions. *See* ECF 53-1. Those written policies strongly support History Associates' allegations that the FDIC is engaged in unlawful FOIA policies and practices. *See* ECF 53 at 6-9.

Following that production, the parties disagreed about the best path forward for resolving the policy-or-practice claims. History Associates suggested that, because the parties had already engaged in an informal discovery process and very little further discovery was needed, the most efficient path forward was to complete discovery and then decide the case on cross-motions for

summary judgment. *See* ECF 53, 60. The FDIC, however, noticed its intent to move to dismiss the policy-or-practice claims and contended that discovery should not proceed until its motion was decided, after which it would file a motion for summary judgment that History Associates could then respond to by moving for further discovery under Rule 56(d). *See* ECF 55, 57.

During a pre-motion conference on May 29, this Court stated that it had "a hard time understanding how I'm going to be able to" resolve the case "on 12(b)(6)" because History Associates' policy-or-practice allegations are "rife with factual determinations." ECF 76-2 at 24; *see also id.* at 53 ("It just seems like it's just fraught with factual questions."). The Court also suggested that the FDIC could "just do summary judgment all at once" instead of filing a motion to dismiss, which would "involve a lot less briefing." *Id.* at 66. The Court further explained that it was "very happy to have pre-motion discovery where I don't think the motion is going to succeed." *Id.* at 45. The Court ordered the FDIC to produce certain additional documents related to History Associates' policy-or-practice claims (including FOIA training materials) in advance of filing its motion. *See* May 29, 2025 Minute Order.

The FDIC made that production on July 7, and revised it on July 25. ECF 76-3 (relevant excerpts of production). The FDIC's July 25 production of written training materials consisted primarily of PowerPoint presentations that further support History Associates' policy-or-practice claims. At the same time, the training materials generally provide only high-level guidance, raising a few important questions about how the FDIC's guidance is being applied in practice.

On July 9, the FDIC moved for summary judgment on Count I of the amended complaint (concerning the pause letters) and to dismiss Count II (policy-or-practice claims). History Associates is filing contemporaneously its cross-motion for summary judgment and opposition to the

FDIC's motion for summary judgment on Count I, and an opposition to the FDIC's motion to dismiss Count II.

## ARGUMENT

### I. History Associates Seeks Only Limited Additional Discovery

The documents that the FDIC has produced so far have corroborated History Associates' policy-or-practice claims. But a handful of important gaps remain. History Associates seeks leave to take a tailored 30(b)(6) deposition and to file one document request.

#### A. The Court Should Order A Tailored 30(b)(6) Deposition

The Court should order a focused 30(b)(6) deposition, which is essential to getting to the bottom of History Associates' policy-or-practice claims. The written policies, training materials, and declarations the FDIC has produced to date provide starting points, but those documents leave gaps that a productive deposition could fill.

***Categorical determinations.*** A 30(b)(6) deposition could reveal the FDIC's position on when it applies a categorical approach to withhold records under Exemption 8. The FOIA policy of the FDIC's division of Risk Management Services equates "with[holding] in full" with "citing FOIA Exemption (b)(8)" and states that there is "[n]o duty to segregate factual from analytical or deliberative material" when applying Exemption 8. ECF 53-1 at 29, 32. On its face that policy is incompatible with FOIA. A 30(b)(6) deposition could probe whether that written policy reflects agency practice—*i.e.*, whether the FDIC in general, or the Risk Management Services division in particular, acts in accordance with that policy and makes categorical withholding determinations whenever it believes records are subject to Exemption 8. Similarly, the recently produced training documents state that all "[d]ocuments between [a] financial institution and FDIC directly related to supervision/regulation" are covered by Exemption 8. ECF 76-3 at 18. A 30(b)(6) deposition

also could reveal whether the FDIC views that broad category of documents as universally subject to Exemption 8, and if so, whether those documents are reviewed for segregability.

***Narrow construction.*** A 30(b)(6) deposition could likewise elucidate the FDIC's policy of failing to instruct employees to construe FOIA requests liberally. The policy of the FDIC's division of Risk Management Supervision instructs FOIA employees to "only provide what is 'reasonably interpreted,'" and then points employees to the policy's appendix for the definition of "reasonably interpreted." ECF 53-1 at 19. But while the appendix lists "reasonably interpret" as a defined term, it provides no definition. *Id.* at 49. And the agency has confirmed in a declaration that "there is no final version of the policy that defines the requested term[]." ECF 70 ¶ 26. Similarly, the FDIC's training documents instruct employees to "reasonably interpret" a request without defining the term. ECF 76-3 at 8, 44, 79, 93, 111. A 30(b)(6) deposition would probe what instruction (if any) FDIC employees are given on how to "reasonably interpret" a request, allowing History Associates to assess whether that instruction is consistent with the FDIC's obligation to liberally construe FOIA requests.

***Inadequate Searches.*** A 30(b)(6) deposition also could answer remaining questions about the FDIC's document-search processes. A training document instructs employees that they should search for responsive records "Unless Records Are Particularly Sensitive." ECF 76-3 at 71; *see also* ECF 53-1 at 178-79 (stating that a FOIA coordinator can request permission from "Legal" to respond to a FOIA request without performing a search). A 30(b)(6) deposition would probe what sorts of documents are deemed too sensitive to merit even a search. Similarly, the FDIC's policies and training documents do not instruct employees on how to construct search terms, provide guidance on which document repositories to search for different kinds of requests, or explain how to search the FDIC's various record repositories. ECF 53-1 at 120-21; ECF 76-3 at 110-16. A

30(b)(6) deposition would inquire into what (if any) further direction the FDIC provides to its FOIA employees on these topics.

***Document preservation.*** A 30(b)(6) deposition also would address discrete issues relating to the FDIC's document-preservation policies. The FDIC has admitted that it does not implement litigation holds in response to FOIA lawsuits, but its admission was premised on the erroneous proposition that FOIA cases are APA cases. *See* ECF 38-1 at 10 (The Court: "So yes or no, once litigation is filed, does the FDIC issue hold notices." FDIC Counsel: "No, in APA cases where there is a closed record the FDIC does not routinely issue legal holds in those circumstances."). A 30(b)(6) deposition would elicit the FDIC's definitive position on whether it has a policy of issuing litigation holds in response to FOIA lawsuits—and if so, the contours of that policy.

In addition, the FDIC has purported to justify its failure to issue litigation holds by claiming that its RADD database (which houses supervisory correspondence) has a 30-year retention policy. ECF 72-1 at 31; ECF 72-4 at 7. A 30(b)(6) deposition would test the FDIC's assertions about the nature of those protections and whether those protections extend to other FDIC databases that house FOIA records—which bear on the lawfulness of the FDIC's refusal to issue litigation holds. For example, RADD's retention policy has an exception with a much shorter retention schedule for certain "workpapers"—a term that is undefined. ECF 72-9 at 2. The FDIC's declarant asserts that the exception is "not relevant here," but History Associates is entitled to test that assertion through a 30(b)(6) deposition. *Id.* The FDIC also admits that certain "employees, contractors, and former contractors can permanently delete documents from the RADD and its archive," but it does not explain the circumstances under which those people permanently delete records—another topic that a 30(b)(6) deposition would probe. ECF 72-1 at 13 n.8.

**B. The FDIC Should Produce Its Exemption 8 Denial Letters**

The Court also should authorize one document request. As explained in History Associates' contemporaneously filed opposition to the FDIC's motion to dismiss, the letters accompanying the FDIC's denial of the pause-letter request and the administrative appeal are strong evidence that the FDIC has a policy or practice of making categorical withholding determinations under Exemption 8—that is, withholding documents in full based on their description alone without analyzing them for segregable, harmless information. ECF 76-1 at 15-16. Letters accompanying the FDIC's invocations of Exemption 8 with respect to other FOIA requests may contain similar evidence that the FDIC is making categorical withholding determinations—and if so, could confirm that the FDIC reflexively uses the categorical approach when it applies Exemption 8 to certain classes of documents. Those letters therefore are highly relevant to History Associates' policy-or-practice claims.

Producing those letters will not be burdensome for the FDIC. The FDIC's declaration in support of its motion to dismiss shows that the agency already "track[s] the type and frequency of FOIA exemptions that the FDIC invokes each fiscal year" and asserts that the FDIC has invoked Exemption 8 102 times between 2020 and 2024. ECF 72-4 ¶ 6. It should be straightforward for the FDIC to produce those already-identified letters to History Associates. None of the letters should be privileged: All were sent to third parties in response to FOIA requests. And there is no other practicable way for History Associates to obtain the letters. The FDIC's FOIA Reading Room contains *records* the agency has produced in response to certain FOIA requests, but the Reading Room does not include the letters accompanying those productions, let alone letters accompanying outright *denials* of FOIA requests. *See FOIA Reading Room*, FDIC.gov (July 21, 2025), http://bit.ly/3UnbHlY. Nor do the FDIC's available FOIA logs contain the information contained in the letters. *See, e.g.*, FY 2025 FOIA Log, Quarter 1, http://bit.ly/4eYm1u4.

This Court declined to order the FDIC to produce additional denial letters at the May 29 hearing because the Court did not want "to get into sampling" or "how much is statistically significant." ECF 76-2 at 60. But the FDIC's subsequent revelation that there is a small universe of Exemption 8 letters, ECF 72-4 ¶ 6—all of which can be readily produced—obviates those concerns. Thus, this Court should order the FDIC to produce all of the letters (initial decisions and decisions on administrative appeals) accompanying the FDIC's invocations of Exemption 8 from 2020 to 2024. *See* ECF 72-4 ¶ 6.

## II. Discovery Is Appropriate Pending The FDIC's Motion To Dismiss The FOIA Policy-or-Practice Claims

Discovery is the norm in policy-or-practice FOIA cases. *See* ECF 53 at 5-6; ECF 56 at 1-3. That is because such discovery often is necessary to fully resolve factual disputes regarding the existence and nature of the agency's policies or practices that often necessarily are not fully reflected in the FOIA-request record. *See, e.g.*, *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 784 (D.C. Cir. 2018) (remanding for district court to consider "the appropriateness of discovery" in policy-or-practice case); *Swan View Coal. v. Dep't of Agric.*, 39 F. Supp. 2d 42, 45 (D.D.C. 1999) (authorizing "discovery" upon "policy claim"); *see also, e.g.*, *Gilmore v. Dep't of Energy*, 33 F. Supp. 2d 1184, 1190 (N.D. Cal. 1998) (permitting discovery in "policies and practices" suit); *Smith v. U.S. Immigr. & Customs Enf't*, 2018 WL 3069524, at *4 (D. Colo. June 21, 2018) (same).

Targeted additional discovery is appropriate now, notwithstanding the FDIC's motion to dismiss. Courts often order discovery while a motion to dismiss is pending, particularly when the motion is futile. *See, e.g.*, *IPOC Int'l Growth Fund Ltd. v. Diligence, LLC*, 2006 WL 8460103, at *2 (D.D.C. Oct. 13, 2006) ("[B]are assertions that discovery should be stayed pending dispositive motions that will probably be sustained, are insufficient to justify the entry of an order staying

discovery generally." (citation and ellipsis omitted)); *see also* ECF 76-2 at 45 (Court: "I'm very happy to have pre-motion discovery where I don't think the motion is going to succeed, because I don't like delaying things."). That is the case here.

As explained in History Associates' opposition to the FDIC's motion to dismiss (ECF 76-1), the agency's motion to dismiss is futile. It relies on a heightened, four-part pleading standard of the agency's own invention—a standard found nowhere in FOIA, Federal Rule 12, or D.C. Circuit precedent (and that the amended complaint satisfies in any event). *See* ECF 76-1 at 11-31. The motion also ignores that History Associates has obtained the FDIC's actual FOIA policies and training materials (under orders of this Court) since the filing of the amended complaint, which strongly corroborate its allegations. Thus, even if any of the policy-or-practice claims were dismissed, History Associates could amend its complaint to incorporate the subsequently gathered evidence. The end result would be the same: resolution of the case based on the facts, following the discovery needed to fully establish those facts. There is no sound reason to delay the inevitable.

Nor is there any reason for discovery to wait for the FDIC to move for summary judgment. The FDIC has suggested that any further discovery should wait for the FDIC to file a declaration along with its summary judgment motion. But that declaration is unlikely to obviate the need for further discovery. As this Court explained at the May 29 hearing, the Court is not likely to "just accept … as true" an FDIC declaration "without giving [History Associates] an opportunity to test that." ECF 76-2 at 65. And if the FDIC believes its declaration will avoid the need for the outlined discovery above, it can file the declaration along with its opposition to this motion.

**CONCLUSION**

The Court should order the FDIC to make an appropriate witness available for a 30(b)(6) deposition and permit History Associates to serve a request for production.

Date: July 30, 2025

Respectfully submitted,

*/s/ Jonathan C. Bond*
Eugene Scalia
Jonathan C. Bond
Nick Harper
Aaron Hauptman
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539
escalia@gibsondunn.com
jbond@gibsondunn.com
nharper@gibsondunn.com
ahauptman@gibsondunn.com

*Attorneys for Plaintiff*