# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HISTORY ASSOCIATES INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>Defendant. | Case No. 1:24-cv-1857-ACR |

## JOINT STATUS REPORT

Plaintiff History Associates Incorporated and Defendant the Federal Deposit Insurance Corporation ("FDIC") hereby submit this joint status report.

1. As explained in the joint status reports filed on January 16, January 26, and January 30, the parties have been conferring regarding: (1) the appropriate next steps to take in light of the declarations and information provided by the FDIC, and (2) an agreement to resolve the attorney's fees issue. *See* ECF 91; ECF 92.

2. As explained in more detail below, the parties have conferred and believe that a stipulated dismissal of this action is warranted based on additional information the FDIC has provided and the FDIC's agreement to pay in full History Associates' demand for $188,440 in attorney's fees for work related to Count I of the amended complaint. Once the FDIC remits payment, the parties will file a stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii).

### Count I of the Amended Complaint

3. On November 8, 2023, at the direction of Coinbase, Inc., History Associates submitted a Freedom of Information Act ("FOIA") request to the FDIC seeking "[c]opies of all 'pause letters' described in" a report the FDIC's Office of Inspector General published in October 2023.

1

ECF 37-2 at 1.  According to the OIG report, the FDIC issued these pause letters "to certain FDIC-supervised financial institutions asking them to pause, or not expand, planned or ongoing crypto-related activities."  ECF 72-5 at 8.  On January 22, 2024, the FDIC denied the request on the ground that "[b]y its very nature, the information . . . requested, if it exists and could be located, would be" exempt from disclosure.  ECF 37-2 (citing FOIA Exemptions 4 and 8).  Following an administrative appeal, the FDIC upheld the initial denial and categorically withheld the pause letters, asserting that "there is no question that the 'pause letters' would . . . fall entirely within the 'all-inclusive' scope of Exemption 8 and would not include any segregable, non-exempt material."  ECF 37-3 at 6.

4.     History Associates filed suit on June 27, 2024.  ECF 1.  During a September 2024 pre-motion conference, the Court instructed the FDIC to prepare a *Vaughn* index and "go through [a sample of] the [pause] letters . . . and determine whether any part of the letter can be sent over with the rest of it redacted" by October 18.  ECF 25-1 at 10:5, 14-18.

5.     On October 18, the FDIC produced only a *Vaughn* index.  *See* ECF 25 at 2.  On October 24, History Associates informed the FDIC that it was not satisfied with the FDIC's summary of the pause letters contained in the *Vaughn* index and that it intended to seek *in camera* review of the pause letters.  *See id.*  On November 4, at History Associates' request, ECF 25, the Court ordered the FDIC, "[p]ursuant to the Court's instructions at the September 18, 2024, hearing," to review all the pause letters and to "determine what portions should be redacted and to produce the redacted letters to Plaintiff by November 22," Nov. 4, 2024, Minute Order.

6.     On November 22, 2024, the FDIC produced redacted pause letters, and on December 6, 2024, History Associates sought *in camera* review of a sample of the unredacted letters.  ECF 26.

2

7. On December 12, following its *in camera* review of those letters, the Court issued an order expressing "concern[] with what appear[ed] to be FDICs lack of good-faith effort in making nuanced redactions" and ordered the FDIC to "make more thoughtful redactions, and provide the new redactions" by January 3, 2025. Dec. 12, 2024, Minute Order.

8. On January 3, 2025, the FDIC produced pause letters with fewer redactions. *See* ECF 27-2. The FDIC also informed History Associates that it had construed the FOIA request to seek only pause letters "shared with the OIG," as opposed to all pause letters "'described in'" the OIG's report. ECF 27 at 3-4. The Court determined that the FDIC had misconstrued History Associates' FOIA request and ordered the FDIC to search for and produce any remaining pause letters by February 7, 2025. Jan. 22, 2025, Minute Order.

9. On January 20, 2025, Travis Hill was designated as Acting Chairman of the FDIC. On January 21, 2025, then-Acting (now) Chairman Hill set forth his agenda, including to "[a]dopt a more open-minded approach to innovation and technology adoption" and to "[r]eevaluate [the FDIC's] disclosure practices, and expand transparency in areas that do not impact safety and soundness or financial stability." Press Release, *Statement from Acting Chairman Travis Hill* (Jan. 21, 2025), https://www.fdic.gov/news/press-releases/2025/statement-acting-chairman-travis-hill.

10. On February 5, 2025, the FDIC produced 790 pages of additional documents. *See* ECF 32. In a press release accompanying that production, the FDIC Chairman stated:

> Upon becoming Acting Chairman, I directed staff to conduct a comprehensive review of all supervisory communications with banks that sought to offer crypto-related products or services. While this review remains underway, we are releasing a large batch of documents today, in advance of a court-ordered deadline of Friday. Our decision to release these documents reflects a commitment to enhance transparency, beyond what is required by the Freedom of Information Act (FOIA), while also attempting to fulfill the spirit of the FOIA request.

3

> Previously, the FDIC released 25 so-called 'pause' letters sent to 24 institutions interested in pursuing crypto- or blockchain-related activities. The documents that we are releasing today show that requests from these banks were almost universally met with resistance, ranging from repeated requests for further information, to multi-month periods of silence as institutions waited for responses, to directives from supervisors to pause, suspend, or refrain from expanding all crypto- or blockchain-related activity. Both individually and collectively, these and other actions sent the message to banks that it would be extraordinarily difficult—if not impossible—to move forward. As a result, the vast majority of banks simply stopped trying. Press Release, *FDIC Releases Documents Related to Supervision of Crypto-Related Activities* (Feb. 5, 2025), https://tinyurl.com/3t7cmaa5.

11. The FDIC later supplemented its production on February 21, 2025, *see* ECF 48-2, and March 14, 2025, *see* ECF 48-3.

12. The parties cross-moved for summary judgment regarding whether the FDIC's continued redactions to the documents it had produced complied with FOIA. *See* ECF 72; ECF 76. The parties disputed whether the FDIC could redact two discrete categories of information: (1) the numerical percentage cap that banks imposed on deposits from crypto companies; and (2) the names of public blockchains the banks proposed to use. *See* ECF 76-1, at 38-40.

13. At a motions hearing on November 19, this Court declared that the FDIC had "violated FOIA" by initially categorically withholding the pause letters and "redacting information in the pause letters that is not subject to Exemption 8 or would not impair any interest protected by Exemption 8." Nov. 19, 2025, Hearing Tr. 16:16-19, 17:12. The Court also stated that the FDIC should consider issuing declarations that provide additional information about the two remaining contested categories of redactions. *See* Nov. 19 Hearing Tr. 8:10-20, 13:10-14.

14. On January 12, 2026, the FDIC produced to History Associates a declaration providing additional information about the deposit cap percentages and the nature of the redacted public blockchains. Ex. A at 2.

4

**Count II of the Amended Complaint**

15.     Count II of the amended complaint alleges that the FDIC maintained four unlawful FOIA policies or practices: (1) "applying a 'categorical approach' when it asserts that records are exempt from disclosure under Exemption 8"; (2) "construing FOIA requests narrowly"; (3) "regularly fail[ing] to conduct a search reasonably calculated to uncover all responsive records within the agency's possession or control"; and (4) "fail[ing] to take the steps necessary to ensure that records responsive to FOIA requests are properly preserved, including implementing litigation holds when a FOIA suit is brought." ECF 37 ¶¶ 120-23.

16.     At the motions hearing on November 19, 2025, the Court and the parties discussed possible resolutions of the policy-or-practice claims without further litigation, with the Court identifying steps that the FDIC might take to address the outstanding issues and ordering the parties to meet and confer.  The FDIC subsequently took further action, as follows:

    a.     ***Categorical Denials Under Exemption 8.***  The Court stated that the FDIC could produce a declaration stating that it "do[es] not categorically withhold all documents that invoke Exemption 8," Nov. 19, 2025, Hearing Tr. 72:1-5.  On January 12, the FDIC produced a declaration stating that "neither the FDIC nor any of its divisions or offices have a policy or practice of categorically withholding all responsive information every time the FDIC receives a FOIA request implicating FOIA Exemption 8 (including requests for bank supervisory documents)." Ex. B at 2.

    b.     ***Narrow Constructions of FOIA Requests.***  In addition to its existing guidance, the Court stated that the FDIC could consider incorporating express language to its FOIA training materials instructing FOIA reviewers to construe requests "liberally."  Nov. 19, 2025, Hearing Tr. 22:22-23:13.  On January 28, the FDIC agreed to add the following

language to a new policy document applicable to all FDIC divisions and groups: "The purpose of these procedures is to summarize the policies, procedures, practices, and responsibilities for FDIC personnel who coordinate, search for documents related to, evaluate, or process FOIA requests assigned to a Division/Office by the FDIC's FOIA and Privacy Act (FOIA-PA) Group, which is within the Legal Division.  This summary document is a resource for FDIC employees and does not alter the agency's adherence to FOIA's general requirement that a FOIA request be individually assessed and liberally construed and that any exemption(s) and foreseeable harm analysis be applied on a fact specific, case-by-case basis."

    c.    ***Inadequate Searches***.  The Court instructed the parties to meet and confer regarding whether the FDIC could supplement its FOIA training materials by providing additional guidance to employees on how to conduct searches and to meet and confer regarding others of History Associates' FOIA requests.  *See* Nov. 19, 2025, Hearing Tr. 24:20-25:17, 27:6-7.  On January 28, the FDIC agreed to elaborate on certain of its existing FOIA training materials to identify additional possible locations or databases from which potentially responsive records may be located during a search.  The FDIC, in its discretion, has also agreed to give expedited treatment to a new FOIA request History Associates may submit (namely, a request seeking records that it sought under a previous request).  Should History Associates submit such a request, the FDIC will negotiate in good faith regarding the search terms the agency will use to process that request.

    d.    ***Failure to Adequately Preserve Records.***  The Court directed the parties to discuss the FDIC's retention policy for the agency's database that houses bank supervisory communications (RADD).  Nov. 19, 2025, Hearing Tr. 39:20-40:12.  On December 16, the

FDIC provided additional information to History Associates regarding the RADD retention policy, including that the "workpapers exception" does not apply to the pause letters.

### Attorney's Fees

17. FOIA provides that a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).

18. During the hearing on November 19, 2025, this Court invited History Associates to file a motion for attorney's fees. Nov. 19, 2025, Hearing Tr. 18-19.

19. On January 12, at the FDIC's request, History Associates sent the FDIC a demand requesting the agency pay $188,440 in attorney's fees for work related to Count I of the amended complaint.

20. On January 23, the FDIC agreed to pay the full amount of the demanded fees on the conditions that History Associates dismiss its claims and that it agree not to seek additional fees.

21. Based on the Court's determination that the FDIC's original withholding of pause letters violated FOIA; the FDIC's subsequent production of the pause letters pursuant to the Court's orders; the additional documents, declarations, and information the FDIC has provided; the additional detail to its policies and training materials the FDIC has committed to include; and the attorney's fees the FDIC has agreed to pay, History Associates has agreed to voluntarily dismiss its amended complaint and not to seek additional fees against the FDIC in connection with this case.

22. Once the FDIC remits payment for the $188,440 in attorney's fees, the parties will file a stipulation of dismissal under Rule 41(a)(1)(A)(ii).

| | |
|---|---|
| Date: February 6, 2026 | Respectfully submitted, |
| */s/ Jonathan C. Bond* | Andrew J. Dober |
| Eugene Scalia | Senior Counsel |
| Jonathan C. Bond | |
| Nick Harper | */s/ Michael K. Morelli* |
| Aaron Hauptman | Michael K. Morelli, MA Bar # 696214 |
| GIBSON, DUNN & CRUTCHER LLP | Senior Attorney |
| 1700 M Street, N.W. | Lina Soni, D.C. Bar #503298 |
| Washington, D.C. 20036 | Counsel |
| Telephone: 202.955.8500 | Federal Deposit Insurance Corporation |
| Facsimile: 202.467.0539 | 3501 N. Fairfax Drive |
| escalia@gibsondunn.com | Arlington, VA 22226 |
| jbond@gibsondunn.com | Telephone: (571) 501-4021 |
| nharper@gibsondunn.com | mmorelli@fdic.gov |
| ahauptman@gibsondunn.com | |
| *Attorneys for Plaintiff* | *Attorneys for the FDIC* |